# <u>Exhibit A</u>

to Plaintiffs' Complaint
*United States, et al. v.*
*State of Minnesota, et al.*

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

# SENATE
## STATE OF MINNESOTA
### NINETY-FOURTH SESSION

# S.F. No. 4760

**(SENATE AUTHORS: LATZ)**

| DATE | D-PG | OFFICIAL STATUS |
|------|------|-----------------|
| 03/23/2026 | 6917 | Introduction and first reading |
| | | Referred to Judiciary and Public Safety |
| 04/07/2026 | 7537a | Comm report: To pass as amended |
| | 7904 | Second reading |
| 04/21/2026 | 8870a | Special Order: Amended |
| | 8922 | Laid on table |
| | 8930 | Taken from table |
| | | Amended |
| | 8935 | Third reading Passed as amended |
| 05/04/2026 | 9330a | Returned from House with amendment |
| | 9331 | Senate not concur, conference committee of 3 requested |
| | 9707 | Senate conferees Latz; Oumou Verbeten; Limmer |
| 05/06/2026 | 9940 | House conferees Novotny; Witte; Moller; Feist |
| 05/12/2026 | 10431c | Conference committee report, delete everything |
| | 10522 | Senate adopted CC report and repassed bill |
| | 10522 | Third Reading Repassed |
| 05/13/2026 | 10541 | House adopted SCC report and repassed bill |
| | | Presentment date 05/14/26 |
| | | Governor's action Approval 05/18/26 |

A bill for an act

relating to public safety; modifying data policies; making domestic violence policy and technical changes; modifying victim rights policy; including stalking as a violent crime; modifying impaired driving policies; modifying identity theft and fraud policy; providing corrections-related policies for facilities licensing, inmate medication, MINNCOR, supervision abatement, and a community supervision working group; making age deception a sentencing factor; recognizing certain orders for protection from other jurisdictions; prohibiting prediction markets-related activities; modifying criminal history policies; providing for grant extensions; providing personal information protections for judicial officials; prohibiting sale of law enforcement vehicles; modifying survivor benefits policies; establishing a task force; modifying Department of Human Rights hearings; requiring rulemaking; providing criminal penalties; requiring reports; amending Minnesota Statutes 2024, sections 8.16, subdivision 1; 13.69, subdivision 1; 13.6905, by adding subdivisions; 13.871, subdivision 5; 116L.362, subdivision 1; 119A.37, subdivision 4; 142G.12, subdivision 2; 142G.53; 171.12, subdivision 7c, by adding a subdivision; 171.177, subdivision 8; 203B.06, subdivision 3; 203B.11, subdivision 1; 241.021, subdivisions 1f, 1i; 241.27, subdivisions 6, 7, by adding subdivisions; 244.10, subdivision 5a; 256D.02, subdivision 12a; 256G.02, subdivision 6; 257.75, subdivision 6; 260E.02, subdivision 1; 299A.41, subdivisions 3, 4, by adding subdivisions; 299A.45, subdivision 2; 299A.85, subdivision 4; 299A.90, subdivision 3; 299L.03, subdivision 12; 363A.29, subdivision 1; 364.03, subdivision 3; 364.05; 518B.01, subdivision 6, as amended; 518B.02, subdivision 2; 609.133, subdivision 4; 609.19, subdivision 2; 609.3471; 609.527, subdivision 1; 609.605, subdivision 2; 609.748, by adding a subdivision; 609.7495, subdivision 1; 609.75, subdivision 3; 611A.03, subdivision 1, by adding a subdivision; 611A.0311, subdivision 1; 611A.036, subdivision 7; 611A.038; 611A.039, subdivision 1; 611A.31, subdivision 5; 629.341, subdivisions 1, 4; 629.72, subdivisions 1a, 2, 2a; Minnesota Statutes 2025 Supplement, sections 120B.22, subdivision 1; 171.12, subdivision 7; 171.178, subdivision 5; 171.306, subdivision 1; 201.061, subdivision 3; 241.021, subdivisions 1, 4f; 244.46, subdivision 1; 256G.03, subdivision 2; 299C.76, subdivision 1; 299C.80, subdivision 6; 388.23, subdivision 1; 480.40, subdivision 1; 480.50, subdivision 1; 609.101, subdivision 2; 628.26; Laws 2023, chapter 52, article 2, section 3, subdivision 8, as amended; Laws 2025, chapter 35, article 2, section 9; proposing coding for new law in Minnesota Statutes, chapters 169; 241; 299A; 518B; 609; 626; repealing Minnesota Statutes 2024, sections 169A.54, subdivision 6; 241.021, subdivisions 1g, 1h, 2a, 2b, 3, 6; 629.72, subdivision 3; Minnesota Statutes 2025 Supplement, section 241.021, subdivision 2.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

## ARTICLE 1
## PUBLIC SAFETY

Section 1. Minnesota Statutes 2024, section 13.69, subdivision 1, is amended to read:

Subdivision 1. **Classifications.** (a) The following government data of the Department of Public Safety are private data:

(1) medical data on driving instructors, licensed drivers, and applicants for parking certificates and special license plates issued to physically disabled persons;

(2) other data on holders of a disability certificate under section 169.345, except that (i) data that are not medical data may be released to law enforcement agencies, and (ii) data necessary for enforcement of sections 169.345 and 169.346 may be released to parking enforcement employees or parking enforcement agents of statutory or home rule charter cities and towns;

(3) Social Security numbers in driver's license and motor vehicle registration records, except that Social Security numbers must be provided to the Department of Revenue for purposes of tax administration, the Department of Labor and Industry for purposes of workers' compensation administration and enforcement, the judicial branch for purposes of debt collection, and the Department of Natural Resources for purposes of license application administration, and except that the last four digits of the Social Security number must be provided to the Department of Human Services for purposes of recovery of Minnesota health care program benefits paid;

(4) data on persons listed as standby or temporary custodians under section 171.07, subdivision 11, except that the data must be released to:

(i) law enforcement agencies for the purpose of verifying that an individual is a designated caregiver; or

(ii) law enforcement agencies who state that the license holder is unable to communicate at that time and that the information is necessary for notifying the designated caregiver of the need to care for a child of the license holder; ~~and~~

(5) race and ethnicity data on driver's license holders and identification card holders under section 171.06, subdivision 3. The Department of Public Safety Office of Traffic Safety is authorized to receive race and ethnicity data from Driver and Vehicle Services for only the purposes of research, evaluation, and public reports~~.~~; and

Article 1 Section 1.            2

(6) the following data on individuals created, collected, received, stored, used, or maintained by the Office of Justice Programs: the name, address, email address, telephone number, date of birth, or employer of a research participant; a unique identification number assigned to a research participant; and any other data that could reasonably identify a research participant.

The department may release the Social Security number only as provided in clause (3) and must not sell or otherwise provide individual Social Security numbers or lists of Social Security numbers for any other purpose.

(b) The following government data of the Department of Public Safety are confidential data: data concerning an individual's driving ability when that data is received from a member of the individual's family.

Sec. 2. Minnesota Statutes 2024, section 13.6905, is amended by adding a subdivision to read:

Subd. 39. **Office for Missing and Murdered Indigenous Relatives.** Data related to victim and family support are governed by section 299A.85, subdivision 4, paragraph (c).

Sec. 3. Minnesota Statutes 2024, section 13.6905, is amended by adding a subdivision to read:

Subd. 40. **Office for Missing and Murdered Black Women and Girls.** Data related to victim and family support are governed by section 299A.90, subdivision 3, paragraph (c).

Sec. 4. Minnesota Statutes 2024, section 13.871, subdivision 5, is amended to read:

Subd. 5. **Crime victims.** (a) **Crime victim notice of release.** Data on crime victims who request notice of an offender's release are classified under section 611A.06.

(b) **Sex offender HIV tests.** Results of HIV tests of sex offenders under section 611A.19, subdivision 2, are classified under that section.

(c) **Battered women.** Data on battered women maintained by grantees for emergency shelter and support services for battered women are governed by section 611A.32, subdivision 5.

(d) (c) **Victims of domestic abuse.** Data on battered women and victims of domestic abuse maintained by grantees and recipients of per diem payments for emergency shelter

Article 1 Sec. 4.                    3

for battered women and support services for battered women and victims of domestic abuse are governed by sections 611A.32, subdivision 5, and 611A.371, subdivision 3.

(e) (d) **Personal history; internal auditing.** Certain personal history and internal auditing data is classified by section 611A.46.

(f) (e) **Crime victim claims for reimbursement.** Claims and supporting documents filed by crime victims seeking reimbursement are classified under section 611A.57, subdivision 6.

(g) (f) **Crime Victim Oversight Act.** Data maintained by the commissioner of public safety under the Crime Victim Oversight Act are classified under section 611A.74, subdivision 2.

(h) (g) **Victim identity data.** Data relating to the identity of the victims of certain criminal sexual conduct is governed by section 609.3471.

(i) (h) **Victim notification.** Data on victims requesting a notice of release of an arrested or detained person are classified under sections 629.72 and 629.73.

(j) (i) **Immigration status certification.** Disclosure of the immigration status of a crime victim and the classification of that data is governed by section 611A.95, subdivision 4.

Sec. 5. Minnesota Statutes 2024, section 116L.362, subdivision 1, is amended to read:

Subdivision 1. **Generally.** (a) The commissioner shall make grants to eligible organizations for programs to provide education and training services to targeted youth. The purpose of these programs is to provide specialized training and work experience for targeted youth who have not been served effectively by the current educational system. The programs are to include a work experience component with work projects that result in the rehabilitation, improvement, or construction of (1) residential units for the homeless; (2) improvements to the energy efficiency and environmental health of residential units and other green jobs purposes; (3) facilities to support community garden projects; or (4) education, social service, or health facilities which are owned by a public agency or a private nonprofit organization.

(b) Eligible facilities must principally provide services to homeless or low income individuals and families, and include the following:

(1) Head Start or day care centers, including playhouses or similar incidental structures;

(2) homeless, battered women domestic abuse, or other shelters;

(3) transitional housing and tiny houses;

Article 1 Sec. 5.                    4

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(4) youth or senior citizen centers;

(5) community health centers; and

(6) community garden facilities.

Two or more eligible organizations may jointly apply for a grant. The commissioner shall administer the grant program.

Sec. 6. Minnesota Statutes 2024, section 119A.37, subdivision 4, is amended to read:

Subd. 4. **Additional services.** Each parenting time center may provide parenting and child development classes, and offer support groups to participating custodial parents and hold regular classes designed to assist children who have experienced domestic violence and abuse. Each parenting time center must have available an individual knowledgeable about or experienced in the provision of services to ~~battered women and~~ domestic abuse victims on its staff, its board of directors, or otherwise available to it for consultation.

Sec. 7. Minnesota Statutes 2025 Supplement, section 120B.22, subdivision 1, is amended to read:

Subdivision 1. **Violence prevention curriculum.** (a) The commissioner of education, in consultation with the commissioners of health and human services, state minority councils, ~~battered women's and~~ domestic abuse programs, ~~battered women's~~ and shelters, sexual assault centers, and representatives of religious communities, ~~and the assistant commissioner~~ ~~of the Office of Drug Policy and Violence Prevention,~~ shall assist districts on request in developing or implementing a violence prevention program for students in kindergarten to grade 12 that can be integrated into existing curriculum. The purpose of the program is to help students learn how to resolve conflicts within their families and communities in nonviolent, effective ways.

(b) Each district is encouraged to integrate into its existing curriculum a program for violence prevention that includes at least:

(1) a comprehensive, accurate, and age appropriate curriculum on violence prevention, nonviolent conflict resolution, sexual, racial, and cultural harassment, self-protection, and student hazing that promotes equality, respect, understanding, effective communication, individual responsibility, thoughtful decision making, positive conflict resolution, useful coping skills, critical thinking, listening and watching skills, and personal safety;

Article 1 Sec. 7.          5

(2) planning materials, guidelines, and other accurate information on preventing physical and emotional violence, identifying and reducing the incidence of sexual, racial, and cultural harassment, and reducing child abuse, including physical abuse, and neglect;

(3) a special parent education component of early childhood family education programs to prevent child abuse and neglect and to promote positive parenting skills, giving priority to services and outreach programs for at-risk families;

(4) involvement of parents and other community members, including the clergy, business representatives, civic leaders, local elected officials, law enforcement officials, and the county attorney;

(5) collaboration with local community services, agencies, and organizations that assist in violence intervention or prevention, including family-based services, crisis services, life management skills services, case coordination services, mental health services, and early intervention services;

(6) collaboration among districts and service cooperatives;

(7) targeting early adolescents for prevention efforts, especially early adolescents whose personal circumstances may lead to violent or harassing behavior;

(8) opportunities for teachers to receive in-service training or attend other programs on strategies or curriculum designed to assist students in intervening in or preventing violence in school and at home; and

(9) administrative policies that reflect, and a staff that models, nonviolent behaviors that do not display or condone sexual, racial, or cultural harassment or student hazing.

(c) The department may provide assistance at a neutral site to a nonpublic school participating in a district's program.

Sec. 8. Minnesota Statutes 2024, section 142G.12, subdivision 2, is amended to read:

Subd. 2. **30-day residency requirement.** An assistance unit is considered to have established residency in this state only when a child or caregiver has resided in this state for at least 30 consecutive days with the intention of making the person's home here and not for any temporary purpose. The birth of a child in Minnesota to a member of the assistance unit does not automatically establish the residency in this state under this subdivision of the other members of the assistance unit. Time spent in a shelter for ~~battered women~~ domestic abuse victims shall count toward satisfying the 30-day residency requirement.

SF4760    REVISOR    VH    S4760-3    3rd Engrossment

Sec. 9. Minnesota Statutes 2024, section 142G.53, is amended to read:

**142G.53 FAMILY VIOLENCE WAIVER CRITERIA.**

(a) In order to qualify for a family violence waiver, an individual must provide documentation of past or current family violence which may prevent the individual from participating in certain employment activities.

(b) The following items may be considered acceptable documentation or verification of family violence:

(1) police, government agency, or court records;

(2) a statement from ~~a battered women's~~ domestic abuse shelter staff with knowledge of the circumstances;

(3) a statement from a sexual assault or domestic violence advocate with knowledge of the circumstances; or

(4) a statement from professionals from whom the applicant or recipient has sought assistance for the abuse.

(c) A claim of family violence may also be documented by a sworn statement from the applicant or participant and a sworn statement from any other person with knowledge of the circumstances or credible evidence that supports the client's statement.

Sec. 10. Minnesota Statutes 2025 Supplement, section 201.061, subdivision 3, is amended to read:

Subd. 3. **Election day registration.** (a) An individual who is eligible to vote may register or update a registration on election day by appearing in person at the polling place for the precinct in which the individual maintains residence, by completing a registration application, making an oath in the form prescribed by the secretary of state and providing proof of residence. An individual may prove residence for purposes of registering or updating a registration by:

(1) presenting a driver's license or Minnesota identification card issued pursuant to section 171.07;

(2) presenting any document approved by the secretary of state as proper identification;

(3) presenting a current student fee statement that contains the student's valid address in the precinct together with a picture identification card; or

Article 1 Sec. 10.    7

(4) having a voter who is registered to vote in the precinct, or an employee who provides proof that they are employed by and working in a residential facility in the precinct and vouching for a resident in the facility, sign an oath in the presence of the election judge vouching that the voter or employee personally knows that the individual is a resident of the precinct. A voter who has been vouched for on election day may not sign a proof of residence oath vouching for any other individual on that election day. An election judge may not sign a proof of residence oath vouching for any individual who appears in the precinct where the election judge is working unless the election judge personally knows the individual is a resident of the precinct. A voter who is registered to vote in the precinct may sign up to eight proof-of-residence oaths on any election day. This limitation does not apply to an employee of a residential facility described in this clause. The secretary of state shall provide a form for election judges to use in recording the number of individuals for whom a voter signs proof-of-residence oaths on election day. The form must include space for the maximum number of individuals for whom a voter may sign proof-of-residence oaths. For each proof-of-residence oath, the form must include a statement that the individual: (i) is registered to vote in the precinct or is an employee of a residential facility in the precinct, (ii) personally knows that the voter is a resident of the precinct, and (iii) is making the statement on oath. The form must include a space for the voter's printed name, signature, telephone number, and address.

The oath required by this subdivision and Minnesota Rules, part 8200.9939, must be attached to the voter registration application.

(b) The secretary of state must publish guidance for residential facilities and residential facility employees on the vouching process and the requirements of this subdivision.

(c) "Residential facility" means transitional housing as defined in section 256K.48, subdivision 1; a supervised living facility licensed by the commissioner of health under section 144.50, subdivision 6; a nursing home as defined in section 144A.01, subdivision 5; an assisted living facility licensed by the commissioner of health under chapter 144G; a veterans home operated by the board of directors of the Minnesota Veterans Homes under chapter 198; a residence licensed by the commissioner of human services to provide a residential program as defined in section 245A.02, subdivision 14; a residential facility for persons with a developmental disability licensed by the commissioner of human services under section 252.28; setting authorized to provide housing support as defined in section 256I.03, subdivision 10a; ~~a shelter for battered women~~ emergency shelter services for domestic abuse victims as defined in section ~~611A.37, subdivision 4~~ 611A.31, subdivision 3; a supervised publicly or privately operated shelter or dwelling designed to provide

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

temporary living accommodations for the homeless; a facility where a provider operates a residential treatment program as defined in section 245.462, subdivision 23; or a facility where a provider operates an adult foster care program as defined in section 245A.02, subdivision 6c.

(d) For tribal band members, an individual may prove residence for purposes of registering or updating a registration by:

(1) presenting an identification card issued by the tribal government of a tribe recognized by the Bureau of Indian Affairs, United States Department of the Interior, that contains the name, address, signature, and picture of the individual; or

(2) presenting an identification card issued by the tribal government of a tribe recognized by the Bureau of Indian Affairs, United States Department of the Interior, that contains the name, signature, and picture of the individual and also presenting one of the documents listed in Minnesota Rules, part 8200.5100, subpart 2, item B.

(e) A county, school district, or municipality may require that an election judge responsible for election day registration initial each completed registration application.

Sec. 11. Minnesota Statutes 2024, section 203B.06, subdivision 3, is amended to read:

Subd. 3. **Delivery of ballots.** (a) The county auditor, municipal clerk, school district clerk, or full-time clerk of any city or town administering an election pursuant to section 203B.05, shall mail absentee ballots to voters on the permanent absentee ballot list pursuant to section 203B.04, subdivision 5, on the following timelines:

(1) except as otherwise provided by this section, at least 46 days before each regularly scheduled primary and general election and each special primary and special election;

(2) as soon as practicable for a special election held pursuant to section 204D.19, subdivisions 2 and 3; and

(3) at least 30 days before a town general election held in March.

(b) The commissioner of corrections must provide the secretary of state with a list of the names and mailing addresses of state adult correctional facilities. An application for an absentee ballot that provides an address included on the list provided by the commissioner of corrections must not be accepted and an absentee ballot must not be provided to the applicant. The county auditor or municipal clerk must promptly transmit a copy of the application to the county attorney. The Department of Corrections must implement procedures

Article 1 Sec. 11.                    9

to ensure that absentee ballots issued under this chapter are not received or mailed by offenders incarcerated at state adult correctional facilities.

(c) If an application for absentee ballots is accepted at a time when absentee ballots are not yet available for distribution, the county auditor, or municipal clerk accepting the application shall file it and as soon as absentee ballots are available for distribution shall mail them to the address specified in the application. If an application for absentee ballots is accepted when absentee ballots are available for distribution, the county auditor or municipal clerk accepting the application shall promptly:

(1) mail the ballots to the voter whose signature appears on the application if the application is submitted by mail and does not request commercial shipping under clause (2);

(2) ship the ballots to the voter using a commercial shipper requested by the voter at the voter's expense;

(3) deliver the absentee ballots directly to the voter if the application is submitted in person; or

(4) deliver the absentee ballots in a sealed transmittal envelope to an agent who has been designated to bring the ballots, as provided in section 203B.11, subdivision 4, to a voter who would have difficulty getting to the polls because of incapacitating health reasons, or who is disabled, or who is a patient in a health care facility, a resident of an assisted living facility licensed under chapter 144G, a participant in a residential program for adults licensed under section 245A.02, subdivision 14, or a resident of a shelter for ~~battered women~~ domestic abuse victims as defined in section ~~611A.37, subdivision 4~~ 611A.31, subdivision 2.

(d) If an application does not indicate the election for which absentee ballots are sought, the county auditor or municipal clerk shall mail or deliver only the ballots for the next election occurring after receipt of the application. Only one set of ballots may be mailed, shipped, or delivered to an applicant for any election, except as provided in section 203B.121, subdivision 2, or when a replacement ballot has been requested by the voter for a ballot that has been spoiled or lost in transit.

Sec. 12. Minnesota Statutes 2024, section 203B.11, subdivision 1, is amended to read:

Subdivision 1. **Generally.** (a) Each full-time municipal clerk or school district clerk who has authority under section 203B.05 to administer absentee voting laws must designate election judges to deliver absentee ballots in accordance with this section. The county auditor must also designate election judges to perform the duties in this section. A ballot may be

delivered only to an eligible voter who is a temporary or permanent resident or patient in one of the following facilities located in the municipality in which the voter maintains residence: a health care facility, hospital, or veterans home operated by the board of directors of the Minnesota veterans homes under chapter 198. The ballots must be delivered by two election judges, each of whom is affiliated with a different major political party. When the election judges deliver or return ballots as provided in this section, they must travel together in the same vehicle. Both election judges must be present when an applicant completes the certificate of eligibility and marks the absentee ballots, and may assist an applicant as provided in section 204C.15. The election judges must deposit the return envelopes containing the marked absentee ballots in a sealed container and return them to the clerk on the same day that they are delivered and marked.

(b) At the discretion of a full-time municipal clerk, school district clerk, or county auditor, absentee ballots may be delivered in the same manner as prescribed in paragraph (a) to a shelter for ~~battered women~~ domestic abuse victims as defined in section ~~611A.37, subdivision 4~~ 611A.31, subdivision 2, or to an assisted living facility licensed under chapter 144G.

Sec. 13. Minnesota Statutes 2024, section 256D.02, subdivision 12a, is amended to read:

Subd. 12a. **Resident.** (a) For purposes of eligibility for general assistance, a person must be a resident of this state.

(b) A "resident" is a person living in the state for at least 30 days with the intention of making the person's home here and not for any temporary purpose. Time spent in a shelter for ~~battered women~~ domestic abuse victims shall count toward satisfying the 30-day residency requirement. All applicants for these programs are required to demonstrate the requisite intent and can do so in any of the following ways:

(1) by showing that the applicant maintains a residence at a verified address, other than a place of public accommodation. An applicant may verify a residence address by presenting a valid state driver's license, a state identification card, a voter registration card, a rent receipt, a statement by the landlord, apartment manager, or homeowner verifying that the individual is residing at the address, or other form of verification approved by the commissioner; or

(2) by verifying residence according to Minnesota Rules, part 9500.1219, subpart 3, item C.

(c) For general assistance, a county shall waive the 30-day residency requirement where unusual hardship would result from denial of general assistance. For purposes of this

subdivision, "unusual hardship" means the applicant is without shelter or is without available resources for food.

The county agency must report to the commissioner within 30 days on any waiver granted under this section. The county shall not deny an application solely because the applicant does not meet at least one of the criteria in this subdivision, but shall continue to process the application and leave the application pending until the residency requirement is met or until eligibility or ineligibility is established.

(d) For purposes of paragraph (c), the following definitions apply (1) "metropolitan statistical area" is as defined by the United States Census Bureau; and (2) "shelter" includes any shelter that is located within the metropolitan statistical area containing the county and for which the applicant is eligible, provided the applicant does not have to travel more than 20 miles to reach the shelter and has access to transportation to the shelter. Clause (2) does not apply to counties in the Minneapolis-St. Paul metropolitan statistical area.

(e) Migrant workers as defined in section 142G.02 are exempt from the residency requirements of this section, provided the migrant worker provides verification that the migrant family worked in this state within the last 12 months and earned at least $1,000 in gross wages during the time the migrant worker worked in this state.

(f) For purposes of eligibility for emergency general assistance, the 30-day residency requirement under this section shall not be waived.

(g) If any provision of this subdivision is enjoined from implementation or found unconstitutional by any court of competent jurisdiction, the remaining provisions shall remain valid and shall be given full effect.

Sec. 14. Minnesota Statutes 2024, section 256G.02, subdivision 6, is amended to read:

Subd. 6. **Excluded time.** "Excluded time" means:

(1) any period an applicant spends in a hospital, sanitarium, nursing home, shelter other than an emergency shelter, halfway house, foster home, community residential setting licensed under chapter 245D, semi-independent living domicile or services program, residential facility offering care, board and lodging facility or other institution for the hospitalization or care of human beings, as defined in section 144.50, 144A.01, or 245A.02, subdivision 14; maternity home, ~~battered women's~~ shelter for domestic abuse victims, or correctional facility; or any facility based on an emergency hold under section 253B.05, subdivisions 1 and 2;

Article 1 Sec. 14.                    12

(2) any period an applicant spends on a placement basis in a training and habilitation program, including: a rehabilitation facility or work or employment program as defined in section 268A.01; semi-independent living services provided under section 252.275, and chapter 245D; or day training and habilitation programs;

(3) any period an applicant is receiving assisted living services, integrated community supports, or day support services; and

(4) any placement for a person with an indeterminate commitment, including independent living.

Sec. 15. Minnesota Statutes 2025 Supplement, section 256G.03, subdivision 2, is amended to read:

Subd. 2. **No durational test.** Except as otherwise provided in sections 142G.12; 142G.78; 256B.056, subdivision 1; and 256D.02, subdivision 12a, for purposes of this chapter, no waiting period is required before securing county or state residence. A person cannot, however, gain residence while physically present in an excluded time facility unless otherwise specified in this chapter or in a federal regulation controlling a federally funded human service; children, youth, and families; or direct care and treatment program. Interstate migrants who enter a shelter for ~~battered women~~ domestic abuse victims directly from another state can gain residency while in the facility provided the person can provide documentation that the person is a victim of domestic abuse and the county determines that the placement is appropriate.

Sec. 16. Minnesota Statutes 2024, section 257.75, subdivision 6, is amended to read:

Subd. 6. **Paternity educational materials.** The commissioner of children, youth, and families shall prepare educational materials for new and prospective parents that describe the benefits and effects of establishing paternity. The materials must include a description and comparison of the procedures for establishment of paternity through a recognition of parentage under this section and an adjudication of paternity under sections 257.51 to 257.74. The commissioner shall consider the use of innovative audio or visual approaches to the presentation of the materials to facilitate understanding and presentation. In preparing the materials, the commissioner shall consult with child advocates and support workers, ~~battered women's advocates and~~ advocates for domestic abuse victims, social service providers, educators, attorneys, hospital representatives, and people who work with parents in making decisions related to paternity. The commissioner shall consult with representatives of communities of color. On and after January 1, 1994, the commissioner shall make the

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

materials available without cost to hospitals, requesting agencies, and other persons for distribution to new parents.

Sec. 17. Minnesota Statutes 2024, section 260E.02, subdivision 1, is amended to read:

Subdivision 1. **Establishment of team.** A county shall establish a multidisciplinary child protection team that may include but is not limited to the director of the local welfare agency or designees, the county attorney or designees, the county sheriff or designees, representatives of health and education, representatives of mental health, representatives of agencies providing specialized services or responding to youth who experience or are at risk of experiencing sex or labor trafficking or sexual exploitation, or other appropriate human services, children's services, or community-based agencies, and parent groups. As used in this section, a "community-based agency" may include, but is not limited to, schools, social services agencies, family service and mental health collaboratives, children's advocacy centers, early childhood and family education programs, Head Start, or other agencies serving children and families. A member of the team must be designated as the lead person of the team responsible for the planning process to develop standards for the team's activities with ~~battered women's and~~ domestic abuse programs and services.

Sec. 18. Minnesota Statutes 2024, section 299A.85, subdivision 4, is amended to read:

Subd. 4. **Duties.** (a) The office has the following duties:

(1) advocate in the legislature for legislation that will facilitate the accomplishment of the mandates identified in the Missing and Murdered Indigenous Women Task Force report;

(2) advocate for state agencies to take actions to facilitate the accomplishment of the mandates identified in the Missing and Murdered Indigenous Women Task Force report;

(3) develop recommendations for legislative and agency actions to address injustice in the criminal justice system's response to the cases of missing and murdered Indigenous relatives;

(4) facilitate research to refine the mandates in the Missing and Murdered Indigenous Women Task Force report and to assess the potential efficacy, feasibility, and impact of the recommendations;

(5) develop tools and processes to evaluate the implementation and impact of the efforts of the office;

(6) track and collect Minnesota data on missing and murdered indigenous women, children, and relatives, and provide statistics upon public or legislative inquiry;

Article 1 Sec. 18.                    14

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

(7) facilitate technical assistance for local and Tribal law enforcement agencies during active missing and murdered Indigenous relatives cases;

(8) conduct case reviews and report on the results of case reviews for the following types of missing and murdered Indigenous relatives cases: cold cases for missing Indigenous people and death investigation review for cases of Indigenous people ruled as suicide or overdose under suspicious circumstances;

(9) conduct case reviews of the prosecution and sentencing for cases where a perpetrator committed a violent or exploitative crime against an Indigenous person. These case reviews should identify those cases where the perpetrator is a repeat offender;

(10) prepare draft legislation as necessary to allow the office access to the data required for the office to conduct the reviews required in this section and advocate for passage of that legislation;

(11) review sentencing guidelines for missing and murdered Indigenous women-related crimes, recommend changes if needed, and advocate for consistent implementation of the guidelines across Minnesota courts;

(12) develop and maintain communication with relevant divisions in the Department of Public Safety regarding any cases involving missing and murdered Indigenous relatives and on procedures for investigating cases involving missing and murdered Indigenous relatives; ~~and~~

(13) coordinate, as relevant, with the Bureau of Indian Affairs' Cold Case Office through Operation Lady Justice and other federal efforts, as well as efforts in neighboring states and Canada. This recommendation pertains to state efforts. Tribes are sovereign nations that have the right to determine if and how they will coordinate with these other efforts~~.~~; and

(14) provide case support to victims and families of missing or murdered Indigenous relatives or their designated family representative or the reporting person. Case support includes but is not limited to providing support and guidance during the law enforcement investigation; facilitating communication with criminal justice agencies and other government entities; compiling relevant information about ongoing cases; and providing information, referrals, and other types of support.

(b) As used in this subdivision:

(1) "reporting person" means the relative or nonrelative person who completed a case intake form with the office; and

(2) "victim" has the meaning given in section 611A.01.

Article 1 Sec. 18.                15

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(c) Data created, collected, received, stored, used, or maintained by the office related to paragraph (a), clause (14), are private data on individuals as defined in section 13.02, subdivision 12.

Sec. 19. Minnesota Statutes 2024, section 299A.90, subdivision 3, is amended to read:

Subd. 3. **Duties.** (a) The office has the following duties:

(1) advocate in the legislature for legislation that will facilitate the accomplishment of mandates identified in the report of the Task Force on Missing and Murdered African American Women;

(2) advocate for state agencies to take actions to facilitate the accomplishment of mandates identified in the report of the Task Force on Missing and Murdered African American Women;

(3) develop recommendations for legislative and agency actions to address injustice in the criminal justice system's response to cases of missing and murdered Black women and girls;

(4) facilitate research to refine the mandates in the report of the Task Force on Missing and Murdered African American Women and to assess the potential efficacy, feasibility, and impact of the recommendations;

(5) collect data on missing person and homicide cases involving Black women and girls, including the total number of cases, the rate at which the cases are solved, the length of time the cases remain open, and a comparison to similar cases involving different demographic groups;

(6) collect data on Amber Alerts, including the total number of Amber Alerts issued, the total number of Amber Alerts that involve Black girls, and the outcome of cases involving Amber Alerts disaggregated by the child's race and sex;

(7) collect data on reports of missing Black girls, including the number classified as voluntary runaways, and a comparison to similar cases involving different demographic groups;

(8) analyze and assess the intersection between cases involving missing and murdered Black women and girls and labor trafficking and sex trafficking;

(9) develop recommendations for legislative, agency, and community actions to address the intersection between cases involving missing and murdered Black women and girls and labor trafficking and sex trafficking;

(10) analyze and assess the intersection between cases involving murdered Black women and girls and domestic violence, including prior instances of domestic violence within the family or relationship, whether an offender had prior convictions for domestic assault or related offenses, and whether the offender used a firearm in the murder or any prior instances of domestic assault;

(11) develop recommendations for legislative, agency, and community actions to address the intersection between cases involving murdered Black women and girls and domestic violence;

(12) develop tools and processes to evaluate the implementation and impact of the efforts of the office;

(13) track and collect Minnesota data on missing and murdered Black women and girls, and provide statistics upon public or legislative inquiry;

(14) facilitate technical assistance for local and Tribal law enforcement agencies during active cases involving missing and murdered Black women and girls;

(15) conduct case reviews and report on the results of case reviews for the following types of cases involving missing and murdered Black women and girls: cold cases for missing Black women and girls and death investigation review for cases of Black women and girls ruled as suicide or overdose under suspicious circumstances;

(16) conduct case reviews of the prosecution and sentencing for cases where a perpetrator committed a violent or exploitative crime against a Black woman or girl. These case reviews must identify those cases where the perpetrator is a repeat offender;

(17) prepare draft legislation as necessary to allow the office access to the data necessary for the office to conduct the reviews required in this section and advocate for passage of that legislation;

(18) review sentencing guidelines for crimes related to missing and murdered Black women and girls, recommend changes if needed, and advocate for consistent implementation of the guidelines across Minnesota courts;

(19) develop and maintain communication with relevant divisions in the Department of Public Safety, including but not limited to the Bureau of Criminal Apprehension, regarding any cases involving missing and murdered Black women and girls and on procedures for investigating cases involving missing and murdered Black women and girls;

(20) consult with the Council for Minnesotans of African Heritage established in section 15.0145; and

Article 1 Sec. 19.                    17

(21) coordinate, as relevant, with federal efforts, and efforts in neighboring states and Canada.; and

(22) provide case support to victims and families of missing or murdered Black women and girls or their designated family representative or the reporting person. Case support includes but is not limited to providing support and guidance during the law enforcement investigation; facilitating communication with criminal justice agencies and other government entities; compiling relevant information about ongoing cases; and providing information, referrals, and other types of support.

(b) As used in this subdivision:

(1) "labor trafficking" has the meaning given in section 609.281, subdivision 5; and

(2) "reporting person" means the relative or nonrelative person who completed a case intake form with the office;

(2) (3) "sex trafficking" has the meaning given in section 609.321, subdivision 7a.; and

(4) "victim" has the meaning given in section 611A.01.

(c) Data created, collected, received, stored, used, or maintained by the office related to paragraph (a), clause (22), are private data on individuals as defined in section 13.02, subdivision 12.

Sec. 20. Minnesota Statutes 2024, section 518B.02, subdivision 2, is amended to read:

Subd. 2. **Standards for domestic abuse counseling programs and domestic abuse educational programs.** (a) Domestic abuse counseling or educational programs that provide group or class sessions for court-ordered domestic abuse offenders must provide documentation to the probation department or the court on program policies and how the program meets the criteria contained in paragraphs (b) to (l).

(b) Programs shall require offenders and abusing parties to attend a minimum of 24 sessions or 36 hours of programming, unless a probation agent has recommended fewer sessions. The documentation provided to the probation department or the court must specify the length of the program that offenders are required to complete.

(c) Programs must have a written policy requiring that counselors and facilitators report to the court and to the offender's probation or corrections officer any threats of violence made by the offender or abusing party, acts of violence by the offender or abusing party, violation of court orders by the offender or abusing party, and violation of program rules that resulted in the offender's or abusing party's termination from the program. Programs

SF4760            REVISOR            VH            S4760-3            3rd Engrossment

shall have written policies requiring that counselors and facilitators hold offenders and abusing parties solely responsible for their behavior.

Programs shall have written policies requiring that counselors and facilitators be violence free in their own lives.

(d) Each program shall conduct an intake process with each offender or abusing party. This intake process shall look for chemical dependency problems and possible risks the offender or abusing party might pose to self or others. The program must have policies regarding referral of a chemically dependent offender or abusing party to a chemical dependency treatment center. If the offender or abusing party poses a risk to self or others, the program shall report this information to the court, the probation or corrections officer, and the victim.

(e) If the offender or abusing party is reported back to the court or is terminated from the program, the program shall notify the victim of the circumstances unless the victim requests otherwise.

(f) Programs shall require court-ordered offenders and abusing parties to sign a release of information authorizing communication regarding the offender's or abusing party's progress in the program to the court, the offender's probation or corrections officer, other providers, and the victim. The offender or abusing party may not enter the program if the offender does not sign a release.

(g) If a counselor or facilitator contacts the victim, the counselor or facilitator must not elicit any information that the victim does not want to provide. A counselor or facilitator who contacts a victim shall (1) notify the victim of the right not to provide any information, (2) notify the victim of how any information provided will be used and with whom it will be shared, and (3) obtain the victim's permission before eliciting information from the victim or sharing information with anyone other than staff of the counseling program.

Programs shall have written policies requiring that counselors and facilitators inform victims of the confidentiality of information as provided by this subdivision. Programs must maintain separate files for information pertaining to the offender or abusing party and to the victim.

If a counselor or facilitator contacts a victim, the counselor or facilitator shall provide the victim with referral information for support services.

(h) Programs shall have written policies forbidding program staff from disclosing any confidential communication made by the offender or abusing party without the consent of

Article 1 Sec. 20.                              19

the offender or abusing party, except that programs must warn a potential victim of imminent danger based upon information provided by an offender or abusing party.

(i) The counseling program or educational program must provide services in a group setting, unless the offender or abusing party would be inappropriate in a group setting.

Programs must provide separate sessions for male and female offenders and abusing parties.

(j) Programs shall have written policies forbidding program staff from offering or referring marriage or couples counseling until the offender or abusing party has completed a domestic abuse counseling program or educational program for the minimum number of court-ordered sessions and the counselor or facilitator reasonably believes that the violence, intimidation, and coercion has ceased and the victim feels safe to participate.

(k) Programs must have written policies requiring that the counselor or facilitator report when the court-ordered offender or abusing party has completed the program to the court and the offender's probation or corrections officer.

(l) Programs must have written policies to coordinate with the court, probation and corrections officers, ~~battered women's and~~ domestic abuse programs, child protection services, and other providers on promotion of victim safety and offender accountability.

Sec. 21. Minnesota Statutes 2025 Supplement, section 609.101, subdivision 2, is amended to read:

Subd. 2. **Minimum fines.** Notwithstanding any other law, when a court sentences a person convicted of violating section 609.221, 609.222, 609.223, 609.2231, 609.224, 609.2242, 609.267, 609.2671, 609.2672, 609.342, 609.343, 609.344, or 609.345, it must impose a fine of not less than 30 percent of the maximum fine authorized by law nor more than the maximum fine authorized by law.

The court shall collect the portion of the fine mandated by this subdivision and forward 70 percent of it to a local victim assistance program that provides services locally in the county in which the crime was committed. The court shall forward the remaining 30 percent to the commissioner of management and budget to be credited to the general fund. If more than one victim assistance program serves the county in which the crime was committed, the court may designate on a case-by-case basis which program will receive the fine proceeds, giving consideration to the nature of the crime committed, the types of victims served by the program, and the funding needs of the program. If no victim assistance program serves that county, the court shall forward 100 percent of the fine proceeds to the commissioner

of management and budget to be credited to the general fund. Fine proceeds received by a local victim assistance program must be used to provide direct services to crime victims.

The minimum fine required by this subdivision is in addition to the surcharge or assessment required by section 357.021, subdivision 6, and is in addition to any sentence of imprisonment or restitution imposed or ordered by the court.

As used in this subdivision, "victim assistance program" means victim witness programs within county attorney offices or any of the following programs: crime victim crisis centers, victim-witness programs, domestic abuse ~~victim~~ shelters and nonshelter programs, sexual assault programs, and children's advocacy centers as defined in section 260E.02, subdivision 5.

Sec. 22. Minnesota Statutes 2024, section 609.133, subdivision 4, is amended to read:

Subd. 4. **Petition; contents; fee.** (a) A prosecutor's petition for sentence adjustment shall be filed in the district court where the individual was convicted and include the following:

(1) the full name of the individual on whose behalf the petition is being brought and, to the extent possible, all other legal names or aliases by which the individual has been known at any time;

(2) the individual's date of birth;

(3) the individual's address;

(4) a brief statement of the reason the prosecutor is seeking a sentence adjustment for the individual;

(5) the details of the offense for which an adjustment is sought, including:

(i) the date and jurisdiction of the occurrence;

(ii) ~~either the names of any victims or that there were no~~ the number of identifiable victims;

(iii) whether there is a current order for protection, restraining order, or other no contact order prohibiting the individual from contacting the victims or whether there has ever been a prior order for protection or restraining order prohibiting the individual from contacting the victims;

(iv) the court file number; and

(v) the date of conviction;

(6) what steps the individual has taken since the time of the offense toward personal rehabilitation, including treatment, work, good conduct within correctional facilities, or other personal history that demonstrates rehabilitation;

(7) the individual's criminal conviction record indicating all convictions for misdemeanors, gross misdemeanors, or felonies in this state, and for all comparable convictions in any other state, federal court, or foreign country, whether the convictions occurred before or after the conviction for which an adjustment is sought;

(8) the individual's criminal charges record indicating all prior and pending criminal charges against the individual in this state or another jurisdiction, including all criminal charges that have been continued for dismissal, stayed for adjudication, or were the subject of pretrial diversion; and

(9) to the extent known, all prior requests by the individual, whether for the present offense or for any other offenses in this state or any other state or federal court, for pardon, return of arrest records, or expungement or sealing of a criminal record, whether granted or not, and all stays of adjudication or imposition of sentence involving the petitioner.

(b) The filing fee for a petition brought under this section shall be waived.

(c) Notwithstanding chapter 13 or any other statute related to the classification of government data, a supervising agent or the commissioner of corrections may provide private or confidential data to a prosecutor for purposes of a petition for sentence adjustment.

Sec. 23. Minnesota Statutes 2024, section 609.3471, is amended to read:

**609.3471 RECORDS PERTAINING TO VICTIM IDENTITY CONFIDENTIAL.**

Notwithstanding any provision of law to the contrary, no data contained in records or reports relating to petitions, complaints, or indictments issued pursuant to section 609.322, 609.342, 609.343, 609.344, 609.345, 609.3453, or 609.3458, or 617.246, which specifically identifies a victim who is a minor shall be accessible to the public, except by order of the court. Nothing in this section authorizes denial of access to any other data contained in the records or reports, including the identity of the defendant.

Sec. 24. Minnesota Statutes 2024, section 609.605, subdivision 2, is amended to read:

Subd. 2. **Gross misdemeanor.** Whoever trespasses upon the grounds of a facility providing emergency shelter services for battered women domestic abuse victims, as defined under section 611A.31, subdivision 3, or providing comparable services for sex trafficking victims, as defined under section 609.321, subdivision 7b, or of a facility providing

Article 1 Sec. 24.                    22

transitional housing for ~~battered women~~ domestic abuse victims and their children or sex trafficking victims and their children, without claim of right or consent of one who has right to give consent, and refuses to depart from the grounds of the facility on demand of one who has right to give consent, is guilty of a gross misdemeanor.

Sec. 25. Minnesota Statutes 2024, section 609.7495, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** For the purposes of this section, the following terms have the meanings given ~~them~~.

(a) "Facility" means any of the following:

(1) a hospital or other health institution licensed under sections 144.50 to 144.56;

(2) a medical facility as defined in section 144.561;

(3) an agency, clinic, or office operated under the direction of or under contract with the commissioner of health or a community health board, as defined in section 145A.02;

(4) a facility providing counseling regarding options for medical services or recovery from an addiction;

(5) a facility providing emergency shelter services for ~~battered women~~ domestic abuse victims, as defined in section 611A.31, subdivision 3, or a facility providing transitional housing for ~~battered women~~ domestic abuse victims and their children;

(6) a facility as defined in section 260E.03, subdivision 6;

(7) a facility as defined in section 626.5572, subdivision 6, where the services described in that paragraph are provided;

(8) a place to or from which ambulance service, as defined in section 144E.001, is provided or sought to be provided; and

(9) a hospice provider licensed under section 144A.753.

(b) "Aggrieved party" means a person whose access to or egress from a facility is obstructed in violation of subdivision 2, or the facility.

Sec. 26. Minnesota Statutes 2024, section 611A.03, subdivision 1, is amended to read:

Subdivision 1. **Plea agreements; notification of victim.** Prior to the entry of the factual basis for a plea pursuant to a plea agreement recommendation, a prosecuting attorney shall make a reasonable and good faith effort to inform the victim of:

(1) the contents of the plea agreement recommendation, including the amount of time recommended for the defendant to serve in jail or prison if the court accepts the agreement;

(2) the right to be present at the sentencing hearing ~~and~~, to be present at the hearing during which the plea is presented to the court, and to express at the plea hearing orally or in writing, at the victim's option, any objection to the agreement or to the proposed disposition. If the victim is not present when the court considers the recommendation, but has communicated objections to the prosecuting attorney, the prosecuting attorney shall make these objections known to the court; and

(3) the eligibility ~~of the offense~~ for automatic expungement pursuant to section 609A.015 of any offense pleaded to or dismissed as part of the plea agreement.

Sec. 27. Minnesota Statutes 2024, section 611A.03, is amended by adding a subdivision to read:

Subd. 4. **Plea hearing.** At the hearing during which the plea is presented to the court, the court shall ask the prosecutor if the victim has been notified of the plea agreement recommendation pursuant to this section; has been notified of the plea hearing; and if the victim wishes to express their objections to the plea agreement orally, in writing, or through the prosecutor.

Sec. 28. Minnesota Statutes 2024, section 611A.036, subdivision 7, is amended to read:

Subd. 7. **Definition.** As used in this section, "violent crime" means a violation or attempt to violate any of the following: section 609.185 (murder in the first degree); 609.19 (murder in the second degree); 609.195 (murder in the third degree); 609.20 (manslaughter in the first degree); 609.205 (manslaughter in the second degree); 609.2112, 609.2113, or 609.2114 (criminal vehicular homicide or injury); 609.221 (assault in the first degree); 609.222 (assault in the second degree); 609.223 (assault in the third degree); 609.2231 (assault in the fourth degree); 609.2241 (knowing transfer of communicable disease); 609.2242 (domestic assault); 609.2245 (female genital mutilation); 609.2247 (domestic assault by strangulation); 609.228 (great bodily harm caused by distribution of drugs); 609.23 (mistreatment of persons confined); 609.231 (mistreatment of residents or patients); 609.2325 (criminal abuse); 609.233 (criminal neglect); 609.235 (use of drugs to injure or facilitate crime); 609.24 (simple robbery); 609.245 (aggravated robbery); 609.247 (carjacking); 609.25 (kidnapping); 609.255 (false imprisonment); 609.265 (abduction); 609.2661 (murder of an unborn child in the first degree); 609.2662 (murder of an unborn child in the second degree); 609.2663 (murder of an unborn child in the third degree); 609.2664 (manslaughter of an unborn child

in the first degree); 609.2665 (manslaughter of an unborn child in the second degree); 609.267 (assault of an unborn child in the first degree); 609.2671 (assault of an unborn child in the second degree); 609.2672 (assault of an unborn child in the third degree); 609.268 (injury or death of an unborn child in commission of a crime); 609.282 (labor trafficking); 609.322 (solicitation, inducement, and promotion of prostitution; sex trafficking); 609.342 (criminal sexual conduct in the first degree); 609.343 (criminal sexual conduct in the second degree); 609.344 (criminal sexual conduct in the third degree); 609.345 (criminal sexual conduct in the fourth degree); 609.3451 (criminal sexual conduct in the fifth degree); 609.3453 (criminal sexual predatory conduct); 609.3458 (sexual extortion); 609.352 (solicitation of children to engage in sexual conduct); 609.377 (malicious punishment of a child); 609.378 (neglect or endangerment of a child); 609.561, subdivision 1 (arson in the first degree; dwelling); 609.582, subdivision 1, paragraph (a) or (c) (burglary in the first degree; occupied dwelling or involving an assault); 609.66, subdivision 1e, paragraph (b) (drive-by shooting; firing at or toward a person, or an occupied building or motor vehicle); or 609.749, subdivision 2 (harassment); or 609.749, subdivision 5 (stalking); or Minnesota Statutes 2012, section 609.21.

Sec. 29. Minnesota Statutes 2024, section 611A.038, is amended to read:

**611A.038 RIGHT TO SUBMIT STATEMENT AT SENTENCING.**

(a) A victim has the right to submit an impact statement to the court at the time of sentencing or disposition hearing. The impact statement may be presented to the court orally or in writing, at the victim's option. If the victim requests, the prosecutor or the prosecutor's designee must orally present the statement to the court. Statements may include the following, subject to reasonable limitations as to time and length:

(1) a summary of the harm or trauma suffered by the victim as a result of the crime;

(2) a summary of the economic loss or damage suffered by the victim as a result of the crime; and

(3) a victim's reaction to the proposed sentence or disposition.

(b) At the sentencing or disposition hearing, the court shall ask the prosecutor if the victim has been notified of the hearing, if the victim is in court, and if the victim wishes to submit a victim impact statement orally, in writing, or through the prosecutor or the prosecutor's designee.

(b) (c) A representative of the community affected by the crime may submit an impact statement in the same manner that a victim may as provided in paragraph (a). This impact

statement shall describe the adverse social or economic effects the offense has had on persons residing and businesses operating in the community where the offense occurred.

(c) (d) If the court permits the defendant or anyone speaking on the defendant's behalf to present a statement to the court, the court shall limit the response to factual issues which are relevant to sentencing.

(d) (e) Nothing in this section shall be construed to extend the defendant's right to address the court under section 631.20.

Sec. 30. Minnesota Statutes 2024, section 611A.039, subdivision 1, is amended to read:

Subdivision 1. **Notice required.** (a) Except as otherwise provided in subdivision 2, within 15 working days after a conviction, acquittal, or dismissal in a criminal case in which there is an identifiable crime victim, the prosecutor shall make reasonable good faith efforts to provide to each affected crime victim oral or written notice of the final disposition of the case and, of the victim rights under section 611A.06, and of the eligibility of the offense for automatic expungement under section 609A.015 of any offense that was dismissed or for which the defendant was convicted or acquitted. When the court is considering modifying the sentence for a felony or a crime of violence or an attempted crime of violence, the prosecutor shall make a reasonable and good faith effort to notify the victim of the crime. The notice must include:

(1) the date and approximate time of the review;

(2) the location where the review will occur;

(3) the name and telephone number of a person to contact for additional information; and

(4) a statement that the victim may provide input to the court concerning the sentence modification.

(b) The Office of Justice Programs in the Department of Public Safety shall develop and update a model notice of postconviction rights under this subdivision and section 611A.06.

(c) As used in this section:

(1) "crime of violence" has the meaning given in section 624.712, subdivision 5, and also includes violations of section 609.3458, gross misdemeanor violations of section 609.224, and nonfelony violations of sections 518B.01, 609.2231, 609.3451, 609.748, and 609.749; and

(2) "victim" has the meaning given in section 611A.01, paragraph (b).

Article 1 Sec. 30.                    26

Sec. 31. Minnesota Statutes 2024, section 611A.31, subdivision 5, is amended to read:

Subd. 5. **Commissioner.** "Commissioner" means the commissioner of the Department of ~~Corrections~~ Public Safety or a designee.

Sec. 32. Minnesota Statutes 2024, section 629.72, subdivision 2a, is amended to read:

Subd. 2a. **Electronic monitoring; condition of pretrial release.** (a) Until the commissioner of corrections has adopted standards governing electronic monitoring devices used to protect victims of domestic abuse, the court, as a condition of release, may not order a person arrested for a crime described in section 609.135, subdivision 5a, paragraph (b), to use an electronic monitoring device to protect a victim's safety.

(b) Notwithstanding paragraph (a), the chief judge of a judicial district may appoint and convene an advisory group comprised of representatives from law enforcement, prosecutors, defense attorneys, corrections, court administrators, judges, and ~~battered women's~~ domestic abuse organizations to develop standards for the use of electronic monitoring and global positioning system devices to protect victims of domestic abuse and for evaluating the effectiveness of electronic monitoring. After the advisory group does this, the chief judge, in consultation with the advisory group, may conduct a pilot project for implementation of the electronic monitoring standards. A judicial district that conducts a pilot project shall report on the standards and the pilot project to the chairs and ranking minority members of the senate and house of representatives committees having jurisdiction over criminal justice policy and the state court administrator's office.

Sec. 33.  **REVISOR INSTRUCTION.**

The revisor of statutes must change the term "battered women" to "domestic abuse victims" or a similar term wherever the term or similar terms appear in Minnesota Statutes. The revisor must make any necessary grammatical changes or changes to sentence structure necessary to preserve the meaning of the text as a result of the changes.

Article 1 Sec. 33.                    27

## ARTICLE 2

## IMPAIRED DRIVING; DRIVER'S LICENSES

Section 1. Minnesota Statutes 2024, section 13.6905, is amended by adding a subdivision to read:

Subd. 41. **Credential identifier and designation data.** Data related to identifiers and designations on driver's licenses and Minnesota identification cards are governed by section 171.12, subdivision 7d.

Sec. 2. Minnesota Statutes 2025 Supplement, section 171.12, subdivision 7, is amended to read:

Subd. 7. **Privacy of data.** (a) Data on individuals provided to obtain a driver's license or Minnesota identification card shall must be treated as provided by United States Code, title 18, section 2721, as in effect on May 23, 2005, and shall must be disclosed as required or by that section, and may be disclosed as permitted by that section. The commissioner shall may disclose the data in bulk form upon request to an authorized recipient under United States Code, title 18, section 2721. For any disclosure of data on individuals related to a noncompliant driver's license or identification card, the commissioner must require a certification pursuant to subdivision 7b, paragraph (e).

(b) An applicant for a driver's license or a Minnesota identification card may consent, in writing, to the commissioner to disclose the applicant's personal information exempted by United States Code, title 18, section 2721, to any person who makes a request for the personal information. If the applicant so authorizes disclosures, the commissioner shall must implement the request and the information may be used.

(c) If authorized by an applicant for a driver's license or a Minnesota identification card, as indicated in paragraph (b), the applicant's personal information may be used, rented, or sold solely for bulk distribution by organizations for business purposes, including surveys, marketing, or solicitation.

(d) An applicant for a driver's license, instruction permit, or Minnesota identification card may request that the applicant's residence address be classified as "private data on individuals," as defined in section 13.02, subdivision 12. The commissioner shall must grant the classification on receipt of a signed statement by the individual that the classification is required for the safety of the applicant or the applicant's family, if the statement also provides a valid, existing address where the applicant consents to receive service of process. The commissioner shall must use the service for process mailing address in place of the

residence address in all documents and notices pertaining to the driver's license, instruction permit, or Minnesota identification card. The residence address and any information provided in the classification request, other than the mailing address, are private data on individuals and may be provided to requesting law enforcement agencies, probation and parole agencies, and public authorities, as defined in section 518A.26, subdivision 18.

Sec. 3. Minnesota Statutes 2024, section 171.12, subdivision 7c, is amended to read:

Subd. 7c. **Other data provisions.** (a) The commissioner must not share any data the department maintains under section 171.07, ~~subdivision~~ subdivisions 6a, 6b, or 13, with any federal agency, federal department, or federal entity for a use that would otherwise be permissible under United States Code, title 18, section 2721, or other law.

(b) Data collected by government entities under sections 624.712 to 624.719 are classified under section 13.87, subdivision 2.

Sec. 4. Minnesota Statutes 2024, section 171.12, is amended by adding a subdivision to read:

Subd. 7d. **Certain data on indicators and designations.** Data maintained by the commissioner under section 171.07, subdivisions 5 to 7, 11 to 13, 15, and 17 to 20 are private data on individuals, as defined in section 13.02, subdivision 12.

Sec. 5. Minnesota Statutes 2024, section 171.177, subdivision 8, is amended to read:

Subd. 8. **Test refusal; driving privilege lost.** (a) On behalf of the commissioner, a peace officer requiring a test or directing the administration of a chemical test pursuant to a search warrant shall serve immediate notice of intention to revoke and of revocation on a person who refuses to permit a test or on a person who submits to a test, the results of which indicate an alcohol concentration of 0.08 or more.

(b) On behalf of the commissioner, a peace officer requiring a test or directing the administration of a chemical test of a person driving, operating, or in physical control of a commercial motor vehicle pursuant to a search warrant shall serve immediate notice of intention to disqualify and of disqualification on a person who refuses to permit a test or on a person who submits to a test, the results of which indicate an alcohol concentration of 0.04 or more.

(c) The officer shall:

Article 2 Sec. 5.                29

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(1) invalidate the person's driver's license or permit card by clipping the upper corner of the card in such a way that no identifying information including the photo is destroyed, and immediately return the card to the person;

(2) issue the person a temporary license effective for only ~~seven~~ 14 days; and

(3) send the notification of this action to the commissioner along with the certificate required by subdivision 4 or 5.

Sec. 6. Minnesota Statutes 2025 Supplement, section 171.178, subdivision 5, is amended to read:

Subd. 5. **Driving while impaired conviction or adjudication; period of license revocation.** (a) Notwithstanding the periods specified in subdivisions 3 and 4 and except as provided in section 169A.54, subdivision 7, a revocation by the commissioner as required under section 169A.54, subdivision 1, or 171.17, subdivision 1, paragraph (a), clause (3) or (10), for conviction of an offense in another state that would be grounds for revocation in this state under section 169A.54, subdivision 1, must be for the following periods:

(1) if the person has no qualified prior impaired driving incidents within the past 20 years:

(i) not less than 30 days if the person is convicted of an offense under section 169A.20, subdivision 1 (driving while impaired);

(ii) not less than 90 days if the person is convicted of an offense under section 169A.20, subdivision 2 (refusal to submit to chemical test);

(iii) not less than 180 days if the person is under 21 years of age and the test results indicate an alcohol concentration of less than twice the legal limit; or

(iv) not less than one year if the test results indicate an alcohol concentration of twice the legal limit or more; or

(2) if the person has one qualified prior impaired driving incident within the past 20 years, or two or more qualified prior impaired driving incidents, until the commissioner determines that the person used an ignition interlock device in compliance with section 171.306 for the period of time described in subdivision 8.

(b) Whenever department records show that the violation involved personal injury or death to any person, at least 90 additional days must be added to the base periods provided in paragraph (a), clause (1), items (i) to (iv).

Article 2 Sec. 6.                    30

(c) A person whose license has been revoked as described in subdivision 3, clause (1), or subdivision 4, clause (1), as the result of the same incident for which the person was convicted is subject to the revocation periods specified in this subdivision, unless the violation under section 169A.20 (driving while impaired) was with an aggravating factor described in section 169A.03, subdivision 3, clause (3).

Sec. 7. Minnesota Statutes 2025 Supplement, section 171.306, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) For purposes of this section, the terms in this subdivision have the meanings given.

(b) "Ignition interlock device" or "device" means equipment that is designed to measure breath alcohol concentration and to prevent a motor vehicle's ignition from being started by a person whose breath alcohol concentration measures 0.02 or higher on the equipment.

(c) "Location tracking capabilities" means the ability of an electronic or wireless device to identify and transmit its geographic location through the operation of the device.

(d) "Program participant" means a person who has qualified to take part in the ignition interlock program under this section, and whose driver's license has been:

(1) revoked, canceled, or denied under section 169A.52; 169A.54; 171.04, subdivision 1, clause (10); ~~171.17, subdivision 1, paragraph (a), clause (10), for conviction of an offense in another state that would be grounds for revocation in this state under section 169A.54, subdivision 1; or~~ 171.177; or for a violation of the law of another state in conformity with any of these sections; or

(2) revoked under section 171.17, subdivision 1, paragraph (a), clause (2), or suspended under section 171.187, for a violation of section 609.2112, subdivision 1, paragraph (a), clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), (5), or (6); 609.2113, subdivision 1, clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), (5), or (6); subdivision 2, clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), (5), or (6); or subdivision 3, clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), (5), or (6); or 609.2114, subdivision 1, paragraph (a), clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), (5), or (6); or subdivision 2, clause (2), ~~item (i) or (iv),~~ (3), ~~or~~ (4), ~~resulting in bodily harm, substantial bodily harm, great bodily harm, or death~~ (5), or (6).

(e) "Qualified prior impaired driving incident" has the meaning given in section 169A.03, subdivision 22.

Article 2 Sec. 7.                    31

Sec. 8. **REPEALER.**

Minnesota Statutes 2024, section 169A.54, subdivision 6, is repealed.

## ARTICLE 3

## IDENTITY THEFT; FINANCIAL CRIMES

Section 1. Minnesota Statutes 2024, section 8.16, subdivision 1, is amended to read:

Subdivision 1. **Authority.** (a) The attorney general, or any deputy, assistant, or special assistant attorney general whom the attorney general authorizes in writing, has the authority in any county of the state to subpoena and require the production of:

(1) any records of:

(i) telephone companies, cellular phone companies, paging companies, subscribers of private computer networks including Internet service providers or computer bulletin board systems,;

(ii) electric companies, gas companies, and water utilities,;

(iii) chemical suppliers,;

(iv) hotels and motels,;

(v) pawn shops,;

(vi) airlines, buses, taxis, and other entities engaged in the business of transporting people,; and

(vii) freight companies, self-service storage facilities, warehousing companies, package delivery companies, and other entities engaged in the businesses of transport, storage, or delivery,;

(2) books, papers, correspondence, memoranda, agreements, and other documents or records related to a law enforcement investigation where there is probable cause to believe a crime has been committed involving a financial crime or fraud, including but not limited to fraud involving state funded or administered programs or services as defined in section 299C.061, subdivision 1, paragraph (b), and insurance fraud in violation of section 609.611; and

(3) records of the existence of safe deposit box account numbers and customer savings and checking account numbers maintained by financial institutions and safe deposit companies.

(b) Subpoenas may only be issued for records that are relevant to an ongoing legitimate law enforcement investigation.

Sec. 2. Minnesota Statutes 2025 Supplement, section 388.23, subdivision 1, is amended to read:

Subdivision 1. **Authority.** (a) The county attorney, or any deputy or assistant county attorney whom the county attorney authorizes in writing, has the authority to subpoena and require the production of:

(1) any records of:

(i) telephone companies, cellular phone companies, paging companies, and subscribers of private computer networks including Internet service providers or computer bulletin board systems;

(ii) electric companies, gas companies, and water utilities;

(iii) chemical suppliers;

(iv) hotels and motels;

(v) pawn shops;

(vi) airlines, buses, taxis, and other entities engaged in the business of transporting people; and

(vii) freight companies, warehousing companies, self-service storage facilities, package delivery companies, and other entities engaged in the businesses of transport, storage, or delivery;

(2) books, papers, correspondence, memoranda, agreements, and other documents or records related to a law enforcement investigation of financial crimes and fraud, including but not limited to fraud involving state funded or administered programs or services as defined in section 299C.061, subdivision 1, paragraph (b), and insurance fraud in violation of section 609.611;

(2) (3) records of the existence of safe deposit box account numbers and customer savings and checking account numbers maintained by financial institutions and safe deposit companies;

(3) (4) insurance records relating to the monetary payment or settlement of claims;

(4) (5) the banking, credit card, and financial records of a subject of an identity theft investigation or a vulnerable adult, whether held in the name of the vulnerable adult or a

Article 3 Sec. 2.                              33

third party, including but not limited to safe deposit, loan and account applications and agreements, signature cards, statements, checks, transfers, account authorizations, safe deposit access records and documentation of fraud;

(5) (6) wage and employment records of an applicant or recipient of public assistance who is the subject of a welfare fraud investigation relating to eligibility information for public assistance programs; and

(6) (7) any of the following records of an employer or business entity who is the subject of or has information related to a wage theft investigation:

(i) accounting and financial records such as books, registers, payrolls, banking records, credit card records, securities records, and records of money transfers;

(ii) records required to be kept pursuant to section 177.30, paragraph (a); and

(iii) other records that in any way relate to wages or other income paid, hours worked, and other conditions of employment of any employee or of work performed by persons identified as independent contractors, and records of any payments to contractors, and records of workers' compensation insurance.

(b) Subpoenas may only be issued for records that are relevant to an ongoing legitimate law enforcement investigation. Administrative subpoenas may only be issued in wage theft, welfare fraud, and identity theft cases, and cases related to a law enforcement investigation of financial crimes and fraud if there is probable cause to believe a crime has been committed.

(c) This subdivision applies only to the records of business entities and does not extend to private individuals or their dwellings.

(d) As used in this subdivision, "business entity" has the meaning given in section 308B.005.

Sec. 3. Minnesota Statutes 2024, section 609.527, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) As used in this section, the following terms have the meanings given them in this subdivision.

(b) "Direct victim" means any person or entity described in section 611A.01, paragraph (b), whose identity has been transferred, used, or possessed in violation of this section.

(c) "False pretense" means any false, fictitious, misleading, or fraudulent information or pretense or pretext depicting or including or deceptively similar to the name, logo, website address, email address, postal address, telephone number, or any other identifying information

Article 3 Sec. 3.                    34

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

of a for-profit or not-for-profit business or organization or of a government agency, to which the user has no legitimate claim of right.

(d) "Financial institution" has the meaning given in section 13A.01, subdivision 2.

(e) "Forged digital likeness" means any video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct substantially derivative thereof that:

(1) was created, adapted, altered, or modified in a manner that was substantially dependent upon technical means;

(2) misrepresents the appearance, speech, or conduct of the individual; and

(3) is so realistic that a reasonable person would believe it depicts the image or speech of an actual individual.

(e) (f) "Identity" means any name, voice or likeness, number, or data transmission that may be used, alone or in conjunction with any other information, to identify a specific individual or entity, including any of the following:

(1) a name, Social Security number, date of birth, official government-issued driver's license or identification number, government passport number, or employer or taxpayer identification number;

(2) a forged digital likeness;

(2) (3) a unique electronic identification number, address, account number, or routing code; or

(3) (4) a telecommunication identification information or access device.

(f) (g) "Indirect victim" means any person or entity described in section 611A.01, paragraph (b), other than a direct victim.

(g) (h) "Loss" means value obtained, as defined in section 609.52, subdivision 1, clause (3), and expenses incurred by a direct or indirect victim as a result of a violation of this section.

(h) (i) "Unlawful activity" means:

(1) any felony violation of the laws of this state or any felony violation of a similar law of another state or the United States; and

Article 3 Sec. 3.                                35

(2) any nonfelony violation of the laws of this state involving theft, theft by swindle, forgery, fraud, or giving false information to a public official, or any nonfelony violation of a similar law of another state or the United States.

~~(i)~~ (j) "Scanning device" means a scanner, reader, or any other electronic device that is used to access, read, scan, obtain, memorize, or store, temporarily or permanently, information encoded on a computer chip or magnetic strip or stripe of a payment card, driver's license, or state-issued identification card.

~~(j)~~ (k) "Reencoder" means an electronic device that places encoded information from the computer chip or magnetic strip or stripe of a payment card, driver's license, or state-issued identification card, onto the computer chip or magnetic strip or stripe of a different payment card, driver's license, or state-issued identification card, or any electronic medium that allows an authorized transaction to occur.

~~(k)~~ (l) "Payment card" means a credit card, charge card, debit card, or any other card that:

(1) is issued to an authorized card user; and

(2) allows the user to obtain, purchase, or receive credit, money, a good, a service, or anything of value.

Sec. 4. Minnesota Statutes 2025 Supplement, section 628.26, is amended to read:

**628.26 LIMITATIONS.**

(a) Indictments or complaints for any crime resulting in the death of the victim may be found or made at any time after the death of the person killed.

(b) Indictments or complaints for a violation of section 609.25 may be found or made at any time after the commission of the offense.

(c) Indictments or complaints for violation of section 609.282 may be found or made at any time after the commission of the offense if the victim was under the age of 18 at the time of the offense.

(d) Indictments or complaints for violation of section 609.282 where the victim was 18 years of age or older at the time of the offense, or 609.42, subdivision 1, clause (1) or (2), shall be found or made and filed in the proper court within six years after the commission of the offense.

(e) Indictments or complaints for violation of sections 609.322, 609.342 to 609.345, and 609.3458 may be found or made at any time after the commission of the offense.

Article 3 Sec. 4.                    36

(f) Indictments or complaints for a violation of section 609.561 shall be found or made and filed in the proper court within ten years after the commission of the offense.

(g) Indictments or complaints for violation of chapter 80A, or a rule adopted or order issued under that chapter, made as provided in section 80A.75 or for violation of section 508.80; 609.465; 609.52, subdivision 2, paragraph (a), clause (4); 609.53; or 609.645 shall be found or made and filed in the proper court within seven years after the commission of the offense.

(g) (h) Indictments or complaints for violation of sections 609.466 and 609.52, subdivision 2, paragraph (a), clause (3), item (iii), shall be found or made and filed in the proper court within six years after the commission of the offense.

(h) (i) Indictments or complaints for violation of section 609.2335, 609.52, subdivision 2, paragraph (a), clause (3), items (i) and (ii), (4), (15), or (16), 609.631, or 609.821, where the value of the property or services stolen is more than $35,000, or for violation of section 609.527 where the offense involves eight or more direct victims or the total combined loss to the direct and indirect victims is more than $35,000, shall be found or made and filed in the proper court within five years after the commission of the offense.

(i) (j) Except for violations relating to false material statements, representations or omissions, indictments or complaints for violations of section 609.671 shall be found or made and filed in the proper court within five years after the commission of the offense.

(j) (k) Indictments or complaints for violation of sections 609.562 and 609.563, shall be found or made and filed in the proper court within five years after the commission of the offense.

(k) (l) Indictments or complaints for violation of section 609.746 shall be found or made and filed in the proper court within the later of three years after the commission of the offense or three years after the offense was reported to law enforcement authorities.

(l) (m) In all other cases, indictments or complaints shall be found or made and filed in the proper court within three years after the commission of the offense.

(m) (n) The limitations periods contained in this section shall exclude any period of time during which the defendant was not an inhabitant of or usually resident within this state.

(n) (o) The limitations periods contained in this section for an offense shall not include any period during which the alleged offender participated under a written agreement in a pretrial diversion program relating to that offense.

Article 3 Sec. 4.                              37

(o) (p) The limitations periods contained in this section shall not include any period of time during which physical evidence relating to the offense was undergoing DNA analysis, as defined in section 299C.155, unless the defendant demonstrates that the prosecuting or law enforcement agency purposefully delayed the DNA analysis process in order to gain an unfair advantage.

**EFFECTIVE DATE.** This section is effective August 1, 2026, and applies to crimes committed on or after that date and to crimes committed before that date if the limitations period for the crime did not expire before August 1, 2026.

**ARTICLE 4**

**CORRECTIONS**

Section 1. Minnesota Statutes 2025 Supplement, section 241.021, subdivision 4f, is amended to read:

Subd. 4f. **Provision of medications in correctional facilities.** (a) Correctional facilities licensed by the commissioner shall administer to confined and incarcerated persons the same medications prescribed to those individuals prior to their confinement or incarceration upon such prescriptions being verified as current and valid by the correctional facility based on information reasonably available to the facility's staff at the time of intake and documented in the person's medical records. A facility must make a reasonable attempt to verify a prescription as current and valid and staff must document their efforts to verify the prescription. A reasonable attempt will be considered to have been made if a licensed health care professional or facility staff seeks to confirm the prescription through one or more reliable sources, including but not limited to the confined or incarcerated person, prescription records, pharmacies, health care providers, or prescription monitoring programs.

(b) Unless a confined or incarcerated person is subject to a Jarvis order, which is an order issued under section 253B.092, subdivision 8, that dictates otherwise, paragraph (a) does not apply when:

(1) a licensed health care professional determines, after consulting making reasonable efforts to consult with the licensed health care professional who prescribed the medication, that the prescribed medication is not medically appropriate for the person based on the person's current medical condition or status;

(2) a licensed health care professional determines a that the medication should be changed to a different medication available to treat the condition that is at least as effective as the current medication the person is prescribed is available to treat the condition and the licensed

health care professional who prescribed the current medication approves the change in medications and reasonable attempts were made to consult the health care professional who prescribed the medication; or

(3) the physical or mental condition of the person creates a medical or mental health emergency that requires an immediate medication change based on circumstances that either exist or would be caused by the continuation of current medications when those circumstances are identified and documented by a licensed health care professional; or

(4) the person provides written notice to informs the licensed health care professional who is responsible for inmate health care at the correctional facility or the licensed health care professional's designee that the person no longer desires to take the medication and the decision is documented in the person's medical records.

(c) As used in this subdivision, "licensed health care professional" means a physician licensed under chapter 147, physician assistant licensed under chapter 147A, or advanced practice registered nurse as defined in section 148.171, subdivision 3.

Sec. 2. Minnesota Statutes 2024, section 241.27, is amended by adding a subdivision to read:

Subd. 1b. **Definition.** "Private business" means an entity organized under the laws of this state or a foreign jurisdiction, but does not include a governmental unit.

Sec. 3. Minnesota Statutes 2024, section 241.27, subdivision 6, is amended to read:

Subd. 6. **Reports and financial statements.** (a) MINNCOR shall include its full costs for inmate wages and the money it receives from the department for inmate confinement costs in its annual financial statements and reports. In addition, MINNCOR shall disclose in its annual report:

(1) how the money it receives from the department for inmate confinement costs affects its profitability; and

(2) a calculation of the profitability of each contract MINNCOR has with private businesses consistent with the requirements set forth in subdivision 7, paragraph (a).

(b) MINNCOR must post on the agency's public-facing website the Prison Industry Enhancement Certification Program wage for each region of the state where MINNCOR is contracting with a private business.

Article 4 Sec. 3.                              39

Sec. 4. Minnesota Statutes 2024, section 241.27, subdivision 7, is amended to read:

Subd. 7. **Interactions with private businesses.** (a) MINNCOR must participate in the United States Bureau of Justice Assistance's Prison Industry Enhancement Certification Program (PIECP). When implementing the PIECP, MINNCOR must:

(1) calculate the PIECP wage, which is the prevailing wage rate for each region of the state where MINNCOR is contracting with a private business based on the Department of Employment and Economic Development's wage survey, and set the rate at the 50th percentile for each region;

(2) separately track wages paid to inmates at either the PIECP wage or the non-PIECP wage, which is a wage rate that is exempt from the PIECP's prevailing wage requirement;

(3) not use a blended wage rate that combines PIECP wages and non-PIECP wages when assessing and evaluating contract costs, profitability, and potential partnerships with private businesses; and

(4) classify and document each inmate's MINNCOR position as either a PIECP wage position or a non-PIECP wage position.

(b) MINNCOR must not subsidize private businesses, including but not limited to using the costs of confinement to offset contract costs, to manipulate a contract's profitability calculation, or to otherwise reduce a private business' operating expenses.

(c) MINNCOR must account for all labor, manufacturing, general, and administrative costs when establishing standard contract rates.

(d) MINNCOR must recapture the fair market value for use of Department of Corrections floor space and storage that is dedicated to a private business.

(e) When entering into a contract and calculating labor costs, MINNCOR must use the prevailing wage rate for the industry in which the inmates are working as determined by the Department of Employment and Economic Development.

(f) Before entering a contract with MINNCOR, a private business must disclose to MINNCOR the total number of full-time equivalent positions the private business employs and must update that number at least quarterly during the contract term. The number of positions filled by incarcerated persons under a contract with the private business may not exceed four incarcerated persons for every one full-time equivalent employee of the private business.

(a) (g) MINNCOR shall use revenue contracts or purchase orders on forms approved by the Department of Administration whenever it allows private businesses to use inmate labor. MINNCOR shall determine whether to use a revenue contract or a purchase order according to criteria that the Department of Corrections has approved having taken into account the recommendations of the legislative auditor contained in its 2009 report on MINNCOR.

(b) (h) MINNCOR shall develop a uniform method to report sales and expenditure data related to individual labor arrangements with private businesses. MINNCOR shall review the data annually to assess how the arrangements, both individually and collectively, affect MINNCOR achieving its goals of high inmate participation in industry and profitability.

Sec. 5. Minnesota Statutes 2024, section 241.27, is amended by adding a subdivision to read:

Subd. 9. **Displacement of private sector workers; verification.** The commissioner of employment and economic development must verify that each PIECP contract MINNCOR enters will not result in the displacement of employed private sector workers in the geographic region where MINNCOR facilities are located and the geographic region where the private business is located.

Sec. 6. Minnesota Statutes 2025 Supplement, section 244.46, subdivision 1, is amended to read:

Subdivision 1. **Adopting policy for earned compliance credit; supervision abatement status.** (a) The commissioner must adopt a policy providing for earned compliance credit and supervision abatement status, including the circumstances under which an individual may receive earned compliance credits and transition to supervision abatement status. The policy must include consideration of an individual's effort to pay restitution, to the extent known to the supervising agency, and must provide that an individual who has the ability to pay restitution but engages in willful nonpayment is not eligible to transition to supervision abatement status.

(b) Except as otherwise provided in the act, once the time served on active supervision plus earned compliance credits equals the total length of the supervised release term or, if applicable, the aggregate length of the supervised release term and conditional release term, the individual is eligible for supervision abatement status. However, the commissioner must not place the individual on supervision abatement status for the remainder of the supervised or conditional release term if the commissioner determines that doing so would present a

risk to public safety, after weighing factors including the individual's stability, behavior, or overall adjustment while on supervision. For individuals with lifetime terms of conditional release, the commissioner shall not place the individual on supervision abatement status unless the time served on active supervision plus earned compliance credits equals at least ten years.

**EFFECTIVE DATE.** This section is effective September 1, 2026.

Sec. 7. **COMMUNITY SUPERVISION WORKING GROUP.**

Subdivision 1. **Establishment.** A working group is established to study and make recommendations on statutory changes needed to provide clarity regarding the roles, responsibilities, and obligations of supervision delivery systems when a county transitions between state-operated and county-operated community supervision systems.

Subd. 2. **Membership.** (a) The working group shall consist of the following members:

(1) four representatives appointed by the Association of Minnesota Counties, at least two of whom must be county administrators from counties that have experienced a transition between supervision delivery systems; and

(2) four representatives appointed by the commissioner of corrections, with expertise in human resources, finance, compensation plans, and agency administration.

(b) Members of the working group serve without compensation.

Subd. 3. **Meetings.** (a) The commissioner of corrections shall convene the first meeting of the working group no later than August 1, 2026, and shall provide meeting space and administrative assistance as necessary for the working group to conduct its work. The working group shall meet sufficiently enough to accomplish the tasks identified in this section.

(b) Meetings of the working group are subject to Minnesota Statutes, chapter 13D.

Subd. 4. **Duties.** The working group shall study and develop recommendations on the following:

(1) the respective roles, responsibilities, and obligations of the sending and receiving entities when a transition occurs;

(2) the treatment of employee compensation, including but not limited to salary placement, benefits, and accrued leave;

(3) the allocation of financial responsibility between entities, including timing and method of payment for employee-related costs;

(4) differences between state and county employment systems, including compensation structures, leave systems, and benefit administration, and how those differences affect transitions;

(5) operations and administrative considerations, including timelines, fiscal year start dates, staffing transitions, data transfers, training needs, policy development, and continuity of supervision services;

(6) budgetary and fiscal impacts associated with transitions, including impacts on resources and positions shared between counties;

(7) any statutory ambiguities or gaps that create uncertainty or disputes during transitions; and

(8) any other issues identified by the working group that are necessary to ensure clear, consistent, and fair transition processes.

Subd. 5. **Consultation.** In carrying out its duties, the working group must consult with:

(1) the Minnesota Association of Community Corrections Act Counties;

(2) the Minnesota Association of Community Probation Officers;

(3) the Department of Corrections Field Services director and the director's leadership team; and

(4) labor organizations representing affected employees.

Subd. 6. **Report.** By December 15, 2026, the working group shall submit a report to the chairs and ranking minority members of the legislative committees with jurisdiction over public safety and judiciary policy and finance. The report must include recommended statutory changes to address the issues identified in subdivision 4. The report must also include recommendations to address any delivery system transitions that occurred after July 1, 2023, to ensure that they align with the proposed statutory changes, including whether the county or the Department of Corrections should be reimbursed for transition expenses by legislative appropriation.

Subd. 7. **Expiration.** The working group expires upon submission of the report required under subdivision 6.

Sec. 8. **EFFECTIVE DATE.**

Sections 2 to 5 are effective July 1, 2026. The requirements of sections 2 to 5 apply to contracts entered into or renewed on or after that date. Contracts entered into before July 1, 2026, are not subject to sections 2 to 5 and may continue under existing terms until expiration.

## ARTICLE 5

## DEPARTMENT OF CORRECTIONS LICENSING

Section 1. **[241.011] LICENSING AND INSPECTING JUVENILE AND ADULT COMMUNITY-BASED RESIDENTIAL CORRECTIONAL FACILITIES.**

Subdivision 1. **Scope.** Except as provided under section 241.021, sections 241.011 to 241.013 apply to juvenile and adult community-based residential correctional facilities licensed by the commissioner of corrections. For the purposes of sections 241.011 to 241.013, juvenile and adult community-based residential correctional facilities are defined as local correctional facilities.

Subd. 2. **Definitions.** (a) For purposes of sections 241.011 to 241.021, the following terms have the meanings given.

(b) "Commissioner" means the commissioner of corrections.

(c) "Critical incident" has the meaning given in Minnesota Rules, part 2960.0020, subpart 24.

(d) "Department" means the Department of Corrections.

(e) "Emergency or unusual occurrence" means an incident that must be reported to the commissioner through the department's detention information system.

(f) "Facility administrator" means the officer in charge of a local correctional facility.

(g) "Local correctional facility" includes:

(1) a facility licensed to house or serve primarily adults under section 241.31; and

(2) a facility licensed to detain or serve juveniles, including a group home having a residential component or foster care facility placements under chapter 260C, for the primary purpose of:

(i) residential care and treatment;

(ii) detention; or

SF4760            REVISOR            VH            S4760-3            3rd Engrossment

(iii) foster care services for children in need of out-of-home placement.

(h) "State correctional facility" means a correctional facility under the commissioner's control.

Subd. 3. **Local correctional facilities; inspection and licensing.** The commissioner must inspect and license all local correctional facilities throughout the state established and operated:

(1) for serving or housing individuals in the facilities; or

(2) consistent with section 241.013, subdivision 4, paragraph (a), for detaining or serving juveniles placed in the facilities by a correctional or noncorrectional agency.

Subd. 4. **Inspecting facilities for compliance; publishing inspection reports.** (a) Unless the commissioner determines otherwise, the commissioner must inspect all local correctional facilities at least once every two years to determine compliance with the minimum standards established according to sections 241.011 to 241.013 or any other law related to minimum standards and conditions of confinement, not including section 241.021, subdivisions 1 to 1e.

(b) The commissioner must have access to a facility's buildings, grounds, books, records, and staff and to individuals detained or housed in or served by the facility. The commissioner may require facility administrators to furnish all information and statistics that the commissioner deems necessary at a time and place designated by the commissioner.

(c) The commissioner must post each facility inspection report publicly on the department's website within 30 days after completing an inspection.

Subd. 5. **Granting license; expiration.** (a) The commissioner must grant a license for up to two years to:

(1) any facility found to conform to minimum standards; or

(2) any facility that the commissioner determines is making satisfactory progress toward substantial conformity and any minimum standards not being met do not impact the interests and well-being of the individuals detained or housed in or served by the facility.

(b) A limited license may be issued to effectuate a facility closure.

(c) Unless otherwise provided by law, all licenses issued under sections 241.011 to 241.013 expire 12:01 a.m. on the day after the expiration date stated on the license.

Article 5 Section 1.                        45

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

Subd. 6. **Providing and accessing facility data.** (a) The commissioner may require that any information under sections 241.011 to 241.013 be provided through the department's detention information system.

(b) Notwithstanding chapter 13 or any other state law classifying or restricting access to data, a facility administrator must furnish to the commissioner all data available to a facility that the commissioner deems necessary for reviewing any critical incident or emergency or unusual occurrence at the facility.

(c) The commissioner may take action against a facility's license according to section 241.012 if a facility administrator fails to provide or grant access to relevant information or statistics requested by the commissioner that are necessary to conduct or complete:

(1) inspections;

(2) reviews of emergency or unusual occurrences; or

(3) reviews of critical incidents.

Subd. 7. **Reporting; deaths, emergencies or unusual occurrences, and critical incidents.** (a) A facility administrator must report a death to the commissioner when:

(1) an individual detained or housed in the facility dies at the facility; or

(2) an individual dies while receiving medical care stemming from an incident or need for medical care at the facility that occurred while the individual was detained or housed in the facility.

(b) Paragraph (a), clause (2), applies regardless of whether the individual was subject to the facility's authority while requiring or receiving the medical care.

(c) A facility administrator must:

(1) report a death under this subdivision as soon as practicable, but no later than 24 hours of receiving knowledge of the death; and

(2) include any demographic information required by the commissioner.

(d) Except for deaths under paragraphs (a) to (c), all facility administrators must report all critical incidents or emergency or unusual occurrences to the commissioner within ten days of the incident or occurrence, including any demographic information required by the commissioner.

Subd. 8. **Death review teams.** (a) If a local correctional facility under subdivision 2, paragraph (g), clause (2), receives notice of the death of an individual who died under

Article 5 Section 1.                46

circumstances described in subdivision 7, paragraph (a), within 90 days of the death, the following individuals must review the circumstances of the death and assess for preventable mortality and morbidity, including but not limited to recommending policy or procedure change:

(1) the facility administrator;

(2) a medical expert of the facility's choosing who did not provide medical services to the individual and who is licensed as a physician or physician assistant by the Board of Medical Practice under chapter 147 or 147A; and

(3) if appropriate, a mental health expert.

(b) The investigating law enforcement agency may provide documentation for, participate in, or provide documentation for and participate in the review if criminal charges are not brought. A preliminary autopsy report must be provided as part of the review and any subsequent autopsy findings as available.

(c) The facility administrator must notify the commissioner via the department's detention information system that the facility has conducted a review and identify any recommendations for changes in policy, procedure, or training that will be implemented.

(d) Any report or other documentation created for purposes of a facility death review is confidential data on individuals under section 13.02, subdivision 3. Nothing in this section relieves the facility administrator from complying with the notice of death to the commissioner required under subdivision 7.

Subd. 9. **Rulemaking.** (a) The commissioner must adopt rules establishing minimum standards for local correctional facilities for the management, operation, and physical condition of the facilities and the security, safety, health, treatment, and discipline of individuals detained or housed in or served by the facilities.

(b) The time limit to adopt rules under section 14.125 does not apply to amendments to rule chapters in effect on the effective date of this section.

Sec. 2. **[241.012] LICENSING ACTIONS AGAINST JUVENILE AND ADULT COMMUNITY-BASED RESIDENTIAL CORRECTIONAL FACILITIES.**

Subdivision 1. **Correction order; conditional license.** (a) For any local correctional facility under section 241.011, subdivision 2, paragraph (g), the commissioner must:

(1) promptly notify the facility administrator and the facility's governing board of a deficiency if the commissioner finds that:

Article 5 Sec. 2.                    47

(i) the facility does not substantially conform to the minimum standards established by the commissioner and is not making satisfactory progress toward substantial conformance; and

(ii) the nonconformance does not present an imminent risk of life-threatening harm or serious physical injury to the individuals detained or housed in or served by the facility; and

(2) issue a correction order or a conditional license order requiring that the deficiency be remedied within a reasonable and specified period.

(b) A conditional license order may restrict the use of any facility that does not substantially conform to minimum standards, including by:

(1) imposing conditions limiting operation of the facility or parts of the facility;

(2) reducing facility capacity;

(3) limiting intake;

(4) limiting length of detention or placement for individuals; or

(5) imposing detention or placement limitations based on the needs of the detained or housed individuals or individuals served by the facility.

(c) A correction order or conditional license order must clearly state:

(1) the specific minimum standards violated, noting the implicated rule or statute;

(2) the findings that constitute a violation of minimum standards;

(3) the corrective action needed;

(4) the time allowed to correct each violation; and

(5) if a license is made conditional:

(i) the length and terms of the conditional license;

(ii) any conditions limiting operation of the facility or parts of the facility; and

(iii) the reasons for making the license conditional.

(d) Nothing in this section prohibits the commissioner from ordering a revocation under subdivision 3 before issuing a correction order or conditional license order.

Subd. 2. **Requesting review of conditional license order.** (a) A facility administrator may request that the commissioner review the findings in a conditional license order under subdivision 1 on the grounds that satisfactory progress toward substantial compliance with

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

minimum standards has been made, supported by evidence of correction. If appropriate, the request may include a written schedule for compliance.

(b) Within ten business days of receiving a request, the commissioner must review the evidence of correction and the progress made toward substantial compliance with minimum standards.

(c) When the commissioner has assurance that satisfactory progress toward substantial compliance with minimum standards is being made, the commissioner must:

(1) modify or lift any conditions limiting operation of the facility or parts of the facility; or

(2) remove the conditional license order.

Subd. 3. **License revocation order.** (a) After due notice to a facility administrator of the commissioner's intent to issue a revocation order, the commissioner may issue an order revoking a facility's license if the commissioner finds that:

(1) the facility does not conform to minimum standards or is not making satisfactory progress toward substantial compliance with minimum standards; and

(2) the nonconformance does not present an imminent risk of life-threatening harm or serious physical injury to the individuals detained or housed in or served by the facility.

(b) The notice of intent to issue a revocation order must include:

(1) the citation to minimum standards that have been violated;

(2) the nature and severity of each violation;

(3) whether the violation is recurring or nonrecurring;

(4) the effect of the violation on individuals detained or housed in or served by the facility;

(5) an evaluation of the risk of harm to individuals detained or housed in or served by the facility; and

(6) relevant facts, conditions, and circumstances related to the facility's operation, including, at a minimum:

(i) specific facility deficiencies that endanger the health or safety of individuals detained or housed in or served by the facility;

(ii) substantiated complaints relating to the facility; or

Article 5 Sec. 2.                                    49

SF4760                REVISOR             VH              S4760-3              3rd Engrossment

(iii) any other evidence that the facility is not in compliance with minimum standards.

(c) Within 30 days of receiving a notice under paragraph (b), the facility administrator must submit a written response with:

(1) any information related to errors in the notice and the facility's ability to conform to minimum standards within a set period, including but not limited to a written schedule for compliance and any other information that the facility administrator deems relevant for the commissioner's consideration; and

(2) a written plan:

(i) indicating how the facility will ensure the transfer of individuals detained or housed in or served by the facility and records if the facility closes; and

(ii) specifying arrangements that the facility will make to transfer individuals detained or housed in or served by the facility to another licensed local correctional facility for continuation of detention.

(d) When revoking a license, the commissioner must consider:

(1) the nature, chronicity, or severity of the statute or rule violation; and

(2) the effect of the violation on the health, safety, or rights of individuals detained or housed in or served by the facility.

(e) The commissioner must issue a revocation order if the facility administrator does not respond within 30 days to the notice or if the commissioner does not have assurance that satisfactory progress toward substantial compliance with minimum standards will be made. The revocation order must be sent to the facility administrator and the facility's governing board, clearly stating:

(1) the specific minimum standards violated, noting the implicated rule or statute;

(2) the findings that constitute a violation of minimum standards and the nature, chronicity, or severity of the violations;

(3) the corrective action needed;

(4) any prior correction order or conditional license order issued to correct a violation; and

(5) the date on which the license revocation will occur.

(f) A revocation order may authorize facility use until a certain date, not to exceed the duration of the active license:

Article 5 Sec. 2.                    50

(1) unless a limited license is issued by the commissioner to effectuate a facility closure; and

(2) if continued operation does not present an imminent risk of life-threatening harm or is not likely to result in serious physical injury to the individuals detained or housed in or served by the facility.

(g) After a facility's license is revoked, the facility must not be used until the license is reinstated. When the commissioner is assured that satisfactory progress toward substantial compliance with minimum standards is being made, the commissioner may, at the request of the facility administrator supported by a written schedule for compliance, reinstate the license.

Subd. 4. **Reconsideration orders.** (a) If a facility administrator believes that a correction order, conditional license order, or revocation order is in error, the facility administrator may ask the commissioner to reconsider the parts of the order or action that are alleged to be in error. The request for reconsideration must:

(1) be made in writing;

(2) be postmarked and sent to the commissioner within 30 calendar days after receiving the order;

(3) specify the parts of the order or the action that is alleged to be in error;

(4) explain why the order or action is in error; and

(5) include documentation to support the allegation of error.

(b) The commissioner must issue a disposition within 60 days of receiving the facility administrator's response under paragraph (a). A request for reconsideration does not stay any provisions or requirements of the order.

Subd. 5. **Temporary immediate license suspension.** (a) The commissioner must act immediately to temporarily suspend a license issued under sections 241.011 to 241.013 if:

(1) the facility's failure to comply with applicable minimum standards or the conditions in the facility pose an imminent risk of life-threatening harm or serious physical injury to individuals detained or housed in or served by the facility, staff, law enforcement, visitors, or the public and:

(i) if the imminent risk of life-threatening harm or serious physical injury cannot be promptly corrected through a different type of order under this section; and

(ii) the facility cannot or has not corrected the violation giving rise to the imminent risk of life-threatening harm or serious physical injury; or

(2) while the facility continues to operate pending due notice and opportunity for written response to the commissioner's notice of intent to issue a revocation order under subdivision 3, the commissioner identifies one or more subsequent violations of minimum standards that may adversely affect the health or safety of individuals detained or housed in or served by the facility, staff, law enforcement, visitors, or the public.

(b) A notice stating the reasons for the temporary immediate suspension must be delivered by personal service to the facility administrator and the facility's governing board.

(c) A facility administrator and the facility's governing board must discontinue operating the facility upon receiving the commissioner's order to immediately suspend the license.

Subd. 6. **Requesting reconsideration of temporary immediate suspension.** (a) A facility administrator may request reconsideration of an order immediately suspending a license. The request for reconsideration must be made in writing and sent by certified mail or personal service as follows:

(1) if mailed, the request for reconsideration must be postmarked and sent to the commissioner within five business days after the facility administrator receives notice that the license has been immediately suspended; and

(2) if a request is made by personal service, the request must be received by the commissioner within five business days after the facility administrator received the order.

(b) The request for reconsideration must:

(1) specify the parts of the order that are alleged to be in error;

(2) explain why they are in error; and

(3) include documentation to support the allegation of error.

(c) Within five business days of receiving the facility administrator's timely request for reconsideration, the commissioner must review the request. For a review under subdivision 5, paragraph (a), clause (2), the review must be limited solely to whether the temporary immediate suspension order should remain in effect pending the written response to the commissioner's notice of intent to issue a revocation order.

Subd. 7. **Appealing commissioner's reconsideration request.** (a) The commissioner's disposition of a request for reconsideration of a correction, conditional license, temporary immediate suspension, or revocation order is final and subject to appeal. Before a facility

administrator may request an appeal under paragraph (b), the facility administrator must request reconsideration according to this section of any correction, conditional license, temporary immediate suspension, or revocation order.

(b) Within 60 days after the postmark date of the mailed notice of the commissioner's decision on a request for reconsideration, the facility administrator may appeal the decision by filing for a writ of certiorari with the court of appeals under section 606.01 and Minnesota Rules of Civil Appellate Procedure, Rule 115.

Subd. 8. **Public notice of restriction, revocation, or suspension.** If a facility's license is revoked or suspended under this section, a facility's use is restricted for any reason under a conditional license order, or a correction order is issued to a facility, the commissioner must publicly post the following information on the department's website:

(1) the facility name;

(2) the status of the facility's license;

(3) the reason for the correction order, restriction, revocation, or suspension; and

(4) any subsequent findings by the commissioner identifying satisfactory progress toward substantial compliance with minimum standards.

Sec. 3. **[241.013] LICENSING AND INSPECTING LOCAL JUVENILE CORRECTIONAL FACILITIES.**

Subdivision 1. **Scope.** This section applies to local juvenile correctional facilities under section 241.011, subdivision 2, paragraph (g), licensed by the commissioner of corrections to detain or serve juveniles, including those providing residential or foster care facility placements under chapter 260C.

Subd. 2. **Facilities for children and youth; inspection and licensing.** (a) Notwithstanding any provisions in sections 245A.03; 245A.04; and 256.01, subdivision 2, paragraph (a), clause (2); and chapter 245C to the contrary, the commissioner must inspect all local juvenile correctional facilities under section 241.011, subdivision 3, except as provided under paragraph (c).

(b) The commissioner must grant a license for up to two years to a county, municipality, or facility:

(1) according to section 241.011, subdivision 5; and

(2) if the commissioner is satisfied that the interests and well-being of children and youth are protected.

(c) For local juvenile correctional facilities licensed by the commissioner of human services, the commissioner of corrections may inspect and certify programs based on certification standards under Minnesota Rules. For purposes of this paragraph, "certification" has the meaning given in section 245A.02.

Subd. 3. **Commissioner consultation.** Local juvenile correctional facilities must consult with the commissioner as needed to strengthen services to children and youth.

Subd. 4. **Affected municipality; notice.** (a) The commissioner must not grant a license to a local juvenile correctional facility without giving 30 calendar days' written notice to any affected municipality or other political subdivision unless the facility:

(1) has a licensed capacity of six or fewer individuals; and

(2) is occupied by either the licensee or a group foster home parent.

(b) The notification must be given before the license is first granted and annually thereafter if annual notification is requested in writing by the affected municipality or other political subdivision.

(c) State funds must not be made available to or be spent by an agency or department of state, county, or municipal government for payment to a foster care facility licensed under this section until the requirements under this subdivision have been met.

Subd. 5. **Licensing with juveniles from outside state.** The commissioner must not issue or renew a license to a facility under this section to operate a local juvenile correctional facility if:

(1) the facility accepts juveniles who reside outside Minnesota; and

(2) there is no agreement with the entity placing the juvenile at the facility that obligates the entity to pay the juvenile's educational expenses.

Subd. 6. **Licensing actions.** The licensing actions under section 241.012 apply to a facility licensed under this section.

Subd. 7. **Education for juveniles.** Notwithstanding subdivision 1, the education program offered in a state or local correctional facility for the placement, confinement, or incarceration of juveniles must be approved by the commissioner of education before the commissioner of corrections may grant a license to the facility.

Subd. 8. **Rulemaking.** (a) The commissioner must adopt rules for local juvenile correctional facilities according to Laws 1995, chapter 226, article 3, sections 50, 51, and 60, as amended.

Article 5 Sec. 3.                    54

(b) The time limit to adopt rules under section 14.125 does not apply to amendments to Minnesota Rules, chapter 2960, in effect on the effective date of this section.

Sec. 4. **[241.014] SECURITY AUDITS FOR STATE CORRECTIONAL FACILITIES.**

Subdivision 1. **Purpose.** This section applies to state correctional facilities.

Subd. 2. **Definitions.** (a) For purposes of this section, the following terms have the meanings given.

(b) "Audit group" means the state correctional facilities security audit group under subdivision 5.

(c) "Corrections and detention confidential data" has the meaning given in section 13.85, subdivision 3.

(d) "Security information" has the meaning given in section 13.37, subdivision 1.

Subd. 3. **Biennial report and audit of security practices.** The department's inspection unit must conduct biennial security audits of each state correctional facility using the standards established by the audit group. The inspection unit must:

(1) prepare a report for each audit; and

(2) submit the report to the audit group within 30 days of completing the audit.

Subd. 4. **Data.** (a) Corrections and detention confidential data and security information contained in reports and records of the audit group:

(1) must maintain that classification, regardless of the data's classification in the hands of the person who provided the data; and

(2) are not subject to discovery or introduction into evidence in a civil or criminal action against the state arising out of any matter that the audit group is reviewing.

(b) Information, documents, and records otherwise available from other sources are not immune from discovery or use in a civil or criminal action solely because the information, documents, and records were acquired during an audit.

(c) Nothing in this subdivision limits a person who presented information to the audit group or who is an audit group member from testifying about matters within the person's knowledge. In a civil or criminal proceeding, a person must not be questioned about the person's good faith presentation of information to the audit group or opinions formed by the person as a result of an audit.

Subd. 5. **State correctional facilities security audit group.** (a) The commissioner must form a state correctional facilities security audit group. The audit group must consist of the following members:

(1) a department employee who is not assigned to the correctional institutions division, appointed by the commissioner;

(2) the ombudsperson for corrections or a designee;

(3) an elected sheriff or designee nominated by the Minnesota Sheriffs' Association, appointed by the commissioner;

(4) an individual with expertise in security related to infrastructure and operational logistics of correctional facilities who is not required to reside in Minnesota, appointed by the governor;

(5) the commissioner of health or a designee;

(6) the commissioner of administration or a designee;

(7) two senators, one appointed by the senate majority leader and one appointed by the senate minority leader; and

(8) two representatives, one appointed by the speaker of the house and one appointed by the minority leader of the house of representatives.

(b) The ombudsperson chairs the audit group. The audit group must establish security audit standards for state correctional facilities. In developing the standards, the audit group, or individual members of the audit group, may gather information from state correctional facilities and state correctional staff and inmates. The audit group must:

(1) periodically review and modify the standards as needed; and

(2) report the standards to the chairs and ranking minority members of the house of representatives and senate committees with jurisdiction over public safety policy and finance when the standards are modified.

(c) The audit group must meet twice annually to review facility audit reports submitted to the audit group by the department's inspection unit. Notwithstanding any law to the contrary, the audit group may review the full audit reports, including but not limited to corrections and detention confidential data and security information.

(d) Within 60 days of meeting to review an audit report from the department's inspection unit, the audit group must make recommendations to the commissioner. Within 45 days of

Article 5 Sec. 4.                    56

receiving the audit group's recommendations, the commissioner must respond in writing to the audit group's findings and recommendations. The commissioner's response must explain:

(1) whether the commissioner will implement the audit group's recommendations;

(2) the timeline for implementing the recommendations; and

(3) if the commissioner will not implement the recommendations, why the commissioner will not or cannot implement the recommendations.

(e) The commissioner must include a written aggregate of the audit group's recommendations based on each security audit and assessment of a state correctional facility and the commissioner's responses to the recommendations in the biennial report under section 241.016, subdivision 1. The commissioner must not include corrections and detention confidential data and security information in the commissioner's report.

(f) The commissioner must provide staffing and administrative support to the audit group.

Subd. 6. **Compensation.** Except as otherwise provided in this subdivision, the terms, compensation, and removal of audit group members are governed by section 15.059. Audit group members serve without compensation but may receive expense reimbursement.

Subd. 7. **Expiration.** Notwithstanding section 15.059, subdivision 6, the audit group does not expire.

Subd. 8. **Open meeting law.** The audit group is not subject to chapter 13D.

Sec. 5. Minnesota Statutes 2025 Supplement, section 241.021, subdivision 1, is amended to read:

Subdivision 1. **Correctional facilities; inspection; licensing.** (a) Except as provided in paragraph (b), The commissioner of corrections shall inspect and license all correctional facilities, as defined in subdivision 1i, throughout the state, whether public or private, established and operated for the detention and confinement of persons confined or incarcerated therein according to law except to the extent that they are inspected or licensed by other state regulating agencies. The commissioner shall promulgate pursuant to chapter 14, rules establishing minimum standards for these facilities with respect to their management, operation, physical condition, and the security, safety, health, treatment, and discipline of persons confined or incarcerated therein. These minimum standards shall include but are not limited to specific guidance pertaining to:

SF4760                 REVISOR                 VH                 S4760-3                 3rd Engrossment

(1) screening, appraisal, assessment, and treatment for persons confined or incarcerated in correctional facilities with mental illness or substance use disorders;

(2) a policy on the involuntary administration of medications, including a process for determining on intake whether a Jarvis Order is in place and ensuring it will be followed during the confinement or incarceration;

(3) suicide prevention plans and training;

(4) verification of medications in a timely manner;

(5) well-being checks;

(6) discharge planning, including providing prescribed medications to persons confined or incarcerated in correctional facilities upon release;

(7) a policy on referrals or transfers to medical or mental health care in a noncorrectional institution;

(8) use of segregation and mental health checks;

(9) critical incident debriefings;

(10) clinical management of substance use disorders and opioid overdose emergency procedures;

(11) a policy regarding identification of persons with special needs confined or incarcerated in correctional facilities;

(12) a policy regarding the use of telehealth;

(13) self-auditing of compliance with minimum standards;

(14) information sharing with medical personnel and when medical assessment must be facilitated;

(15) a code of conduct policy for facility staff and annual training;

(16) a policy on death review of all circumstances surrounding the death of an individual committed to the custody of the facility; and

(17) dissemination of a rights statement made available to persons confined or incarcerated in licensed correctional facilities.

No individual, corporation, partnership, voluntary association, or other private organization legally responsible for the operation of a correctional facility may operate the facility unless it possesses a current license from the commissioner of corrections. Private

Article 5 Sec. 5.                 58

adult correctional facilities shall have the authority of section 624.714, subdivision 13, if the Department of Corrections licenses the facility with the authority and the facility meets requirements of section 243.52.

The commissioner shall review the correctional facilities described in this subdivision at least once every two years, except as otherwise provided, to determine compliance with the minimum standards established according to this subdivision or other Minnesota statute related to minimum standards and conditions of confinement.

The commissioner shall grant a license to any facility found to conform to minimum standards or to any facility which, in the commissioner's judgment, is making satisfactory progress toward substantial conformity and the standards not being met do not impact the interests and well-being of the persons confined or incarcerated in the facility. A limited license under subdivision 1a may be issued for purposes of effectuating a facility closure. The commissioner may grant licensure up to two years. Unless otherwise specified by statute, all licenses issued under this chapter expire at 12:01 a.m. on the day after the expiration date stated on the license.

The commissioner shall have access to the buildings, grounds, books, records, staff, and to persons confined or incarcerated in these facilities. The commissioner may require the officers in charge of these facilities to furnish all information and statistics the commissioner deems necessary, at a time and place designated by the commissioner. Notwithstanding chapter 13 or any other state law classifying or restricting access to data, the officers in charge of these facilities must furnish all data available to the facility that the commissioner deems necessary to conduct a review of any emergency or unusual occurrence at the facility. Failure to provide or grant access to relevant information or statistics necessary to fulfill inspection or emergency or unusual occurrence reviews, as requested by the commissioner, may be grounds for the commissioner to take action against a correctional facility's license under subdivision 1a, 1b, or 1c.

All facility administrators of correctional facilities are required to report all deaths of individuals who died while committed to the custody of the facility, regardless of whether the death occurred at the facility or after removal from the facility for medical care stemming from an incident or need for medical care at the correctional facility, as soon as practicable, but no later than 24 hours of receiving knowledge of the death, including any demographic information as required by the commissioner.

All facility administrators of correctional facilities are required to report all other emergency or unusual occurrences as defined by rule, including uses of force by facility

Article 5 Sec. 5.                    59

staff that result in substantial bodily harm or suicide attempts, to the commissioner of corrections within ten days from the occurrence, including any demographic information as required by the commissioner. The commissioner of corrections shall consult with the Minnesota Sheriffs' Association and a representative from the Minnesota Association of Community Corrections Act Counties who is responsible for the operations of an adult correctional facility to define "use of force" that results in substantial bodily harm for reporting purposes.

The commissioner may require that any or all such information be provided through the Department of Corrections detention information system. The commissioner shall post each inspection report publicly and on the department's website within 30 days of completing the inspection. The education program offered in a correctional facility for the confinement or incarceration of juvenile offenders must be approved by the commissioner of education before the commissioner of corrections may grant a license to the facility.

(b) For juvenile facilities licensed by the commissioner of human services, the commissioner may inspect and certify programs based on certification standards set forth in Minnesota Rules. For the purpose of this paragraph, "certification" has the meaning given it in section 245A.02.

(c) (b) Any state agency which regulates, inspects, or licenses certain aspects of correctional facilities shall, insofar as is possible, ensure that the minimum standards it requires are substantially the same as those required by other state agencies which regulate, inspect, or license the same aspects of similar types of correctional facilities, although at different correctional facilities.

(d) (c) Nothing in this section shall be construed to limit the commissioner of corrections' authority to promulgate rules establishing standards of eligibility for counties to receive funds under chapter 401, or to require counties to comply with operating standards the commissioner establishes as a condition precedent for counties to receive that funding.

(e) (d) The department's inspection unit must report directly to a division head outside of the correctional institutions division.

Sec. 6. Minnesota Statutes 2024, section 241.021, subdivision 1f, is amended to read:

Subd. 1f. **Report.** By February 15, 2022, and by February 15 each year thereafter, the commissioner of corrections shall report to the chairs and ranking minority members of the house of representatives and senate committees and divisions with jurisdiction over public safety and judiciary on the status of the implementation of the provisions in this section

sections 241.011 to 241.021 over the prior year, particularly the health and safety of individuals confined or incarcerated in a local adult correctional facilities under this section, local correctional facilities under section 241.011, and state correctional facility and a facility licensed by the commissioner facilities. This report shall include but not be limited to data regarding:

(1) the number of confined or incarcerated persons who died while committed to the custody of the facility, regardless of whether the death occurred at the facility or after removal from the facility for medical care stemming from an incident or need for medical care at the correctional facility, including aggregated demographic information and the correctional facilities' most recent inspection reports and any corrective orders or conditional licenses issued, revocations, or temporary immediate suspensions;

(2) the aggregated results of the death reviews by facility as required by subdivision 8 or section 241.011, subdivision 8, including any implemented policy changes;

(3) the number of uses of force by facility staff on persons confined or incarcerated in the correctional facility, including but not limited to whether those uses of force were determined to be justified by the facility, for which the commissioner of corrections shall consult with the Minnesota Sheriffs' Association and a representative from the Minnesota Association of Community Corrections Act Counties who is responsible for the operations of an adult correctional facility to develop criteria for reporting and define reportable uses of force;

(4) the number of suicide attempts, number of people transported to a medical facility, and number of people placed in segregation;

(5) the number of persons committed to the commissioner of corrections' custody that the commissioner is housing in facilities licensed under subdivision 1 and section 241.011, including but not limited to:

(i) aggregated demographic data of those individuals;

(ii) length of time spent housed in a licensed correctional facility; and

(iii) any contracts the Department of Corrections has with correctional facilities to provide housing; and

(6) summary data from state correctional facilities regarding complaints involving alleged on-duty staff misconduct, including but not limited to the:

(i) total number of misconduct complaints and investigations;

(ii) total number of complaints by each category of misconduct, as defined by the commissioner of corrections;

(iii) number of allegations dismissed as unfounded;

(iv) number of allegations dismissed on grounds that the allegation was unsubstantiated; and

(v) number of allegations substantiated, any resulting disciplinary action, and the nature of the discipline.

Sec. 7. Minnesota Statutes 2024, section 241.021, subdivision 1i, is amended to read:

Subd. 1i. **Definition.** As used in this section, "correctional facility" means any facility, including a ~~group home, having a residential component, the primary purpose of which is to serve persons placed in facilities by a court, court services department, parole authority, or other correctional agency having dispositional power over persons charged with, convicted, or adjudicated guilty or delinquent~~ jail, lockup, workhouse, or work farm under chapter 641, 642, or 643.

Sec. 8. **RULEMAKING; DEPARTMENT OF CORRECTIONS; LICENSED JUVENILE FACILITIES.**

Subdivision 1. **Administrative and medical separation.** (a) The notification requirements in this subdivision apply to juvenile facilities licensed by the commissioner of corrections under Minnesota Statutes, sections 241.011 to 241.013.

(b) A facility's chief administrator must notify the commissioner according to Minnesota Rules, part 2960.0270, subpart 12, if a resident is expected to be, or has been, in administrative or medical separation for more than seven days.

(c) The notification under paragraph (b) must be within ten days of the resident's placement, or expected placement, in administrative separation or medical separation for more than seven days.

(d) This subdivision expires when the rules adopted under subdivision 2 are effective.

Subd. 2. **Rulemaking.** (a) The commissioner of corrections must amend Minnesota Rules, parts 2960.0740, subpart 3, and 2960.0750, subpart 3, to require notification according to subdivision 1, paragraphs (b) and (c).

(b) The commissioner may use the good cause exemption under Minnesota Statutes, section 14.388, subdivision 1, clause (3), to adopt rules under this subdivision.

(c) Notwithstanding Minnesota Laws 1995, chapter 226, article 3, sections 50, 51, and 60, or any other law to the contrary, the joint rulemaking authority with the commissioners of the Department of Human Services and other state agencies does not apply to rules adopted under this subdivision.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 9. **REVISOR INSTRUCTION.**

(a) The revisor of statutes must renumber each section of Minnesota Statutes listed in column A with the number listed in column B.

| Column A | Column B |
|---|---|
| 241.021, subdivision 4 | 241.74, subdivision 1 |
| 241.021, subdivision 4a | 241.39 |
| 241.021, subdivision 4b | 241.74, subdivision 2, paragraph (a) |
| 241.021, subdivision 4c | 241.74, subdivision 2, paragraph (b) |
| 241.021, subdivision 4d | 241.74, subdivision 3 |
| 241.021, subdivision 4e | 241.254 |

(b) As a result of amendments to Minnesota Statutes, sections 241.011 to 241.021, the revisor of statutes must work with the Department of Corrections to correct cross-references in Minnesota Statutes and Minnesota Rules and make other necessary grammatical and technical changes.

Sec. 10. **REPEALER.**

(a) Minnesota Statutes 2024, section 241.021, subdivisions 1g, 1h, 2a, 2b, 3, and 6, are repealed.

(b) Minnesota Statutes 2025 Supplement, section 241.021, subdivision 2, is repealed.

**ARTICLE 6**

**CRIMINAL LAW**

Section 1. Minnesota Statutes 2024, section 244.10, subdivision 5a, is amended to read:

Subd. 5a. **Aggravating factors.** (a) As used in this section, "aggravating factors" include, but are not limited to, situations where:

(1) the victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender;

(2) the victim was treated with particular cruelty for which the offender should be held responsible;

(3) the current conviction is for a criminal sexual conduct offense or an offense in which the victim was otherwise injured and there is a prior felony conviction for a criminal sexual conduct offense or an offense in which the victim was otherwise injured;

(4) the offense was a major economic offense, identified as an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(i) the offense involved multiple victims or multiple incidents per victim;

(ii) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(iii) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(iv) the offender used the offender's position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(v) the offender had been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions;

(5) the offense was a major controlled substance offense, identified as an offense or series of offenses related to trafficking in controlled substances under circumstances more onerous than the usual offense. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(i) the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so;

(ii) the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use;

(iii) the offense involved the manufacture of controlled substances for use by other parties;

(iv) the offender knowingly possessed a firearm during the commission of the offense;

Article 6 Section 1.                    64

(v) the circumstances of the offense reveal the offender to have occupied a high position in the drug distribution hierarchy;

(vi) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographic area of disbursement; or

(vii) the offender used the offender's position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships;

(6) the offender committed, for hire, a crime against the person;

(7) the offender is sentenced according to section 609.3455, subdivision 3a;

(8) the offender is a dangerous offender who committed a third violent crime, as described in section 609.1095, subdivision 2;

(9) the offender is a career offender as described in section 609.1095, subdivision 4;

(10) the offender committed the crime as part of a group of three or more persons who all actively participated in the crime;

(11) the offender intentionally selected the victim or the property against which the offense was committed, in whole or in part, because of the victim's, the property owner's, or another's actual or perceived race, color, religion, sex, sexual orientation, disability, age, or national origin;

(12) the offender used another's identity without authorization to commit a crime. This aggravating factor may not be used when the use of another's identity is an element of the offense;

(13) the offense was committed in the presence of a child; and

(14) an adult offender intentionally deceived a minor victim into believing the offender was also a minor in order to facilitate the commission of the offense; and

(14) (15) the offense was committed in a location in which the victim had an expectation of privacy.

(b) Notwithstanding section 609.04 or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based on any aggravating factor arising from the same course of conduct.

(c) Nothing in this section limits a court from ordering an aggravated sentence based on an aggravating factor not described in paragraph (a).

**EFFECTIVE DATE.** This section is effective August 1, 2026, and applies to crimes committed on or after that date.

Sec. 2. **[609.099] DECEPTION REGARDING AGE AS SENTENCING FACTOR.**

When determining an appropriate sentence for a crime, a judge may consider as a relevant factor whether an adult offender intentionally deceived a minor victim into believing the offender was also a minor in order to facilitate the commission of the crime.

**EFFECTIVE DATE.** This section is effective August 1, 2026, and applies to crimes committed on or after that date.

Sec. 3. Minnesota Statutes 2024, section 609.19, subdivision 2, is amended to read:

Subd. 2. **Unintentional murders.** Whoever does either of the following is guilty of unintentional murder in the second degree and may be sentenced to imprisonment for not more than 40 years:

(1) causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting; or

(2) causes the death of a human being without intent to effect the death of any person, while intentionally inflicting or attempting to inflict bodily harm upon the victim, when the perpetrator is restrained under an order for protection and the victim is a person designated to receive protection under the order. As used in this clause, "order for protection" includes an order for protection issued under chapter 518B; a harassment restraining order issued under section 609.748; a court order setting conditions of pretrial release or conditions of a criminal sentence or juvenile court disposition; a restraining order issued in a marriage dissolution action; and any order issued by a court of another state ~~or of~~, the United States, the District of Columbia, Tribal lands, United States territories, Canada, or a Canadian province that is similar to any of these orders.

**EFFECTIVE DATE.** This section is effective August 1, 2026, and applies to crimes committed on or after that date.

Sec. 4. Minnesota Statutes 2024, section 609.748, is amended by adding a subdivision to read:

Subd. 5d. **Notice to petitioner.** Upon a petitioner's request, a sheriff, law enforcement officer, or designee must make reasonable efforts to notify the petitioner before or

immediately after service that the respondent will be or has been served with the order. For purposes of this subdivision, "reasonable efforts" include but are not limited to texting, calling, or emailing the petitioner if the petitioner's contact information is available to the sheriff, law enforcement officer, or designee.

## ARTICLE 7
## DOMESTIC VIOLENCE

Section 1. Minnesota Statutes 2025 Supplement, section 299C.80, subdivision 6, is amended to read:

Subd. 6. **Reporting.** (a) As provided for in chapter 13, the superintendent must make all inactive investigative data for officer-involved death investigations that are public under section 13.82, subdivision 7, or other applicable law available on the bureau's website within 30 days of the case becoming inactive as defined in section 13.82, subdivision 7, except any video that does not record, describe, or otherwise document actions and circumstances surrounding the officer-involved death.

(b) By February 1 of each year, the superintendent shall report to the commissioner, the governor, and the chairs and ranking minority members of the legislative committees with jurisdiction over public safety finance and policy the following information about the unit: the number of investigations initiated; the number of incidents that began with a law enforcement response to a situation involving suspected or alleged domestic abuse, as defined in section 626.5537, subdivision 1; the number of incidents investigated; the outcomes or current status of each investigation; the charging decisions made by the prosecuting authority of incidents investigated by the unit; the number of plea agreements reached in incidents investigated by the unit; and any other information relevant to the unit's mission.

(c) Nothing in this subdivision modifies the requirements of chapter 13 or the classification of data.

Sec. 2. Minnesota Statutes 2024, section 518B.01, subdivision 6, as amended by Laws 2026, chapter 75, section 4, is amended to read:

Subd. 6. **Relief by court.** (a) Upon notice and hearing, the court may provide relief as follows:

(1) restrain the abusing party from committing acts of domestic abuse;

Article 7 Sec. 2.                    67

(2) exclude the abusing party from the dwelling which the parties share or from the residence of the petitioner;

(3) exclude the abusing party from a reasonable area surrounding the dwelling or residence, which area shall be described specifically in the order;

(4) award temporary custody or establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children. In addition to the primary safety considerations, the court may consider particular best interest factors that are found to be relevant to the temporary custody and parenting time award. Findings under section 257.025, 518.17, or 518.175 are not required with respect to the particular best interest factors not considered by the court. If the court finds that the safety of the victim or the children will be jeopardized by unsupervised or unrestricted parenting time, the court shall condition or restrict parenting time as to time, place, duration, or supervision, or deny parenting time entirely, as needed to guard the safety of the victim and the children. The court's decision on custody and parenting time shall in no way delay the issuance of an order for protection granting other relief provided for in this section. The court must not enter a parenting plan under section 518.1705 as part of an action for an order for protection;

(5) on the same basis as is provided in chapter 518 or 518A, establish temporary support for minor children or a spouse, and order the withholding of support from the income of the person obligated to pay the support according to chapter 518A;

(6) provide upon request of the petitioner counseling or other social services for the parties, if married, or if there are minor children;

(7) order the abusing party to participate in treatment or counseling services, including requiring the abusing party to successfully complete a domestic abuse counseling program or educational program under section 518B.02;

(8) award temporary use and possession of property and restrain one or both parties from transferring, encumbering, concealing, or disposing of property except in the usual course of business or for the necessities of life, and to account to the court for all such transfers, encumbrances, dispositions, and expenditures made after the order is served or communicated to the party restrained in open court;

(9) exclude the abusing party from the place of employment of the petitioner, or otherwise limit access to the petitioner by the abusing party at the petitioner's place of employment;

Article 7 Sec. 2.                    68

(10) order the abusing party to have no contact with the petitioner whether in person, by telephone, mail, or electronic mail or messaging, through a third party, or by any other means;

(11) order the abusing party to pay restitution to the petitioner;

(12) order the continuance of all currently available insurance coverage without change in coverage or beneficiary designation;

(13) order, in its discretion, other relief as it deems necessary for the protection of a family or household member, including orders or directives to the sheriff or other law enforcement or corrections officer as provided by this section;

(14) direct the care, possession, or control of a pet or companion animal owned, possessed, or kept by the petitioner or respondent or a child of the petitioner or respondent; and

(15) direct the respondent to refrain from physically abusing or injuring any pet or companion animal, without legal justification, known to be owned, possessed, kept, or held by either party or a minor child residing in the residence or household of either party as an indirect means of intentionally threatening the safety of such person; and

(16) if requested by the petitioner, issue a separate order under section 518B.04.

(b) Any relief granted by the order for protection shall be for a period not to exceed two years, except when the court determines a longer period is appropriate. When a referee presides at the hearing on the petition, the order granting relief becomes effective upon the referee's signature.

(c) An order granting the relief authorized in paragraph (a), clause (1), may not be vacated or modified in a proceeding for dissolution of marriage or legal separation, except that the court may hear a motion for modification of an order for protection concurrently with a proceeding for dissolution of marriage upon notice of motion and motion. The notice required by court rule shall not be waived. If the proceedings are consolidated and the motion to modify is granted, a separate order for modification of an order for protection shall be issued.

(d) An order granting the relief authorized in paragraph (a), clause (2) or (3), is not voided by the admittance of the abusing party into the dwelling from which the abusing party is excluded.

(e) If a proceeding for dissolution of marriage or legal separation is pending between the parties, the court shall provide a copy of the order for protection to the court with jurisdiction over the dissolution or separation proceeding for inclusion in its file.

Article 7 Sec. 2.                    69

(f) An order for restitution issued under this subdivision is enforceable as civil judgment.

(g) An order granting relief shall prohibit the abusing party from possessing firearms for the length the order is in effect if the order (1) restrains the abusing party from harassing, stalking, or threatening the petitioner or restrains the abusing party from engaging in other conduct that would place the petitioner in reasonable fear of bodily injury, and (2) includes a finding that the abusing party represents a credible threat to the physical safety of the petitioner or prohibits the abusing party from using, attempting to use, or threatening to use physical force against the petitioner. The order shall inform the abusing party of that party's prohibited status. Except as provided in paragraph (h), the court shall order the abusing party to transfer any firearms that the person possesses as provided for in section 518B.03 and direct the person to surrender all permits to carry and purchase firearms to the court. If the court does not take immediate possession of an abusing party's permit to carry or permit to purchase, the abusing party must surrender the permits to the chief law enforcement officer who issued the permit as required under sections 624.714, subdivision 8, and 624.7131, subdivision 7. If the abusing party surrenders their permits to the chief law enforcement officer, the person must declare that in the proof of transfer or declaration of nonpossession required under section 518B.03, subdivision 3.

(h) When a court issues an order containing a firearms restriction provided for in paragraph (g), the court shall determine by a preponderance of evidence if an abusing party poses an imminent risk of causing another person substantial bodily harm. Upon a finding of imminent risk, the court shall order that the local law enforcement agency take immediate possession of all firearms in the abusing party's possession.

Sec. 3. **[518B.04] TRANSFER OR RELEASE OF DOMESTIC ABUSE VICTIMS FROM SHARED WIRELESS PLANS.**

Subdivision 1. **Application.** The remedy in this section applies if the respondent and petitioner or a protected party subject to an order for protection under section 518B.01 share a wireless plan and the respondent is the account holder.

Subd. 2. **Definitions.** (a) For purposes of this section the following terms have the meanings given.

(b) "Wireless telecommunications service" has the same meaning as "commercial mobile radio service" as defined in Code of Federal Regulations, title 47, section 20.3.

(c) "Wireless telecommunications service provider" means a provider of wireless telecommunications service.

Subd. 3. **Court order; account transfer or release.** (a) If the petitioner is the protected party named in an order for protection granted under this chapter, a court may issue an order requiring a wireless telecommunications service provider, without charge, penalty, or fee, to:

(1) transfer the billing authority and all rights to the wireless telephone number or numbers of a shared wireless plan to the petitioner; or

(2) remove or release the petitioner from a shared wireless plan and assign a substitute telephone number or numbers.

(b) If the petitioner is not the protected party named in an order for protection granted under this chapter, a court may issue an order requiring a wireless telecommunications service provider, without charge, penalty, or fee, to:

(1) transfer the billing authority and rights to the wireless telephone number or numbers of a shared wireless plan:

(i) if the protected party is a minor, to a parent or legal guardian of the minor other than the respondent; or

(ii) if the protected party is not a minor, to another person who shall serve as the account holder with the protected party's approval; or

(2) remove or release the protected party from a shared wireless plan and assign a substitute telephone number or numbers and:

(i) if the protected party is a minor, order the parent or legal guardian of the minor, other than the respondent, to be the account holder for the substitute telephone number or numbers; or

(ii) if the protected party is not a minor, order another person, with the protected party's approval, to be the account holder for the substitute telephone number or numbers.

(c) At a protected party's request, the court may order a wireless telecommunications service provider to transfer without charge, penalty, or fee any and all devices associated with the petitioner or protected party's phone number to a substitute telephone number or numbers.

Subd. 4. **Separate order; content.** (a) The order issued pursuant to subdivision 3 must be a separate order from one issued under section 518B.01 that is directed to the wireless telecommunications service provider, but may be addressed in the same proceeding for an

order under section 518B.01 or in a separate proceeding after an order under section 518B.01 is issued.

(b) The order shall list the name and billing telephone number of the account holder, the name of the person to whom the telephone number or numbers are to be transferred, and each telephone number to be transferred.

Subd. 5. **Filing fee.** The filing fees for an order under this section are waived.

Subd. 6. **Hearing.** A hearing for an order under this section is not required unless the court declines to issue the requested relief or the petitioner requests a hearing. A hearing may be held concurrently with a hearing under section 518B.01 upon the petitioner's request and if the court deems it appropriate.

Subd. 7. **Deadline to transfer.** Upon receipt of an order issued under this section, a wireless telecommunications service provider must abide by the terms of the order by the end of the following billing cycle.

Subd. 8. **Confidentiality.** A wireless telecommunications service provider must treat an order and any supporting information received under this section as confidential and must not disclose the order or the information, except to the extent necessary to comply with the order.

Subd. 9. **Unpaid balance.** (a) A person who is the account holder before an order is issued under this section remains liable for an unpaid balance incurred before an account is transferred pursuant to an order issued under this section.

(b) A wireless telecommunications service provider must provide the petitioner or protected party with a partitioned telephone line and additional time to pay off the outstanding balance.

Subd. 10. **Immunity.** A cause of action shall not lie against a wireless telecommunications service provider or its officers, employees, or agents for the actions taken that are related to the transfer of the billing authority and rights to the wireless telephone number or numbers in accordance with the terms of a court order issued pursuant to this section.

Subd. 11. **Other remedies.** Nothing in this section supersedes or limits other remedies available to a petitioner, including any provision of Public Law 117-223, the Safe Connections Act of 2022, and the Federal Communications Commission's Safe Connections Act Order, FCC 23-96.

Sec. 4. Minnesota Statutes 2024, section 611A.0311, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) "Domestic abuse" has the meaning given in section 518B.01, subdivision 2.

(b) "Domestic abuse case" means a prosecution for:

(1) a crime that involves domestic abuse;

(2) violation of a condition of release following an arrest for a crime that involves domestic abuse; ~~or~~

(3) violation of a domestic abuse order for protection issued pursuant to section 518B.01;

(4) violation of a harassment restraining order issued pursuant to section 609.748 committed against a family or household member by a family or household member;

(5) harassment or stalking within the meaning of section 609.749 committed against a family or household member by a family or household member; or

(6) violation of a domestic abuse no contact order issued pursuant to section 629.75.

Sec. 5. **[626.5537] DOMESTIC ABUSE; REPORTING.**

Subdivision 1. **Definitions.** (a) For purposes of this section, the following terms have the meanings given.

(b) "Domestic abuse" has the meaning given in section 518B.01, subdivision 2, paragraph (a), and also includes the following, if committed against a family or household member by a family or household member:

(1) violation of an order for protection within the meaning of section 518B.01, subdivision 14;

(2) violation of a harassment restraining order within the meaning of section 609.748, subdivision 6;

(3) harassment or stalking within the meaning of section 609.749; and

(4) violation of a domestic abuse no contact order within the meaning of section 629.75, subdivision 2.

(c) "Family or household member" has the meaning given in section 518B.01, subdivision 2, paragraph (b).

Subd. 2. **Collection of information; reporting.** The head of a local law enforcement agency or state law enforcement department that employs peace officers, as defined in

Article 7 Sec. 5.          73

section 626.84, subdivision 1, paragraph (c), must report every incident a peace officer reasonably believes, or a victim alleges, constitutes an act of domestic abuse to the commissioner of public safety by January 15 each year. The superintendent of the Bureau of Criminal Apprehension must adopt a reporting form to be used by law enforcement agencies in making the reports required under this section. The reports must include all of the following for each incident:

(1) the date of the incident;

(2) the location of the incident;

(3) the crime suspected to have been committed;

(4) whether the response began as a call for service alleging an act of domestic abuse;

(5) the perceived gender of the alleged victim and suspect;

(6) the perceived race of the alleged victim and suspect;

(7) whether a suspect was arrested at the time of the incident;

(8) whether a suspect was arrested at a later date and, if so, the time between the incident and the arrest;

(9) whether the alleged victim was arrested at the time of the incident and, if so, any alleged crime that formed the basis for the arrest;

(10) whether the alleged offender possessed, or was reported to possess, a firearm at the time of the incident;

(11) whether the case was referred for prosecution;

(12) whether the determination that the incident constituted an act of domestic abuse was based on an officer's reasonable belief, the victim's allegation, or both; and

(13) any additional information the superintendent deems necessary for the acquisition of accurate and relevant data.

Subd. 3. **Annual report.** The commissioner of public safety must summarize and analyze the information received under subdivision 2 and provide an annual report to the chairs and ranking minority members of the legislative committees with jurisdiction over public safety. The annual report may be included in the department's annual uniform crime report.

**EFFECTIVE DATE.** This section is effective January 1, 2028.

Article 7 Sec. 5.                    74

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

Sec. 6. Minnesota Statutes 2024, section 629.341, subdivision 1, is amended to read:

Subdivision 1. **Arrest; referral for prosecution.** (a) Notwithstanding section 629.34 or any other law or rule, a peace officer may arrest a person anywhere without a warrant, including at the person's residence, if the peace officer has probable cause to believe that within the preceding ~~72 hours~~ 14 days, exclusive of the day probable cause was established, the person has committed nonfelony domestic abuse, as defined in section 518B.01, subdivision 2. The arrest may be made even though the assault did not take place in the presence of the peace officer.

(b) If a peace officer has probable cause to believe that a person has committed any act that constitutes harassing or stalking any person in violation of section 609.749; domestic abuse as defined in section 518B.01, subdivision 2; violation of an order for protection as described in section 518B.01, subdivision 14; or violation of a domestic abuse no contact order as described in section 629.75 and the person was not arrested, the peace officer should seek a warrant from a judge for the person's arrest without undue delay. A warrant issued under this paragraph is not subject to the limitations described in section 629.31.

Sec. 7. Minnesota Statutes 2024, section 629.341, subdivision 4, is amended to read:

Subd. 4. **Report required.** (a) Whenever a peace officer investigates an allegation that ~~an incident described in subdivision 1 has occurred, whether or not an arrest is made,~~ a person has committed a qualified domestic violence-related offense and the victim is a family or household member, the officer shall make a written police report of the alleged incident regardless of whether an arrest is made. The report must contain at least the following information: the name, address and telephone number of the victim, if provided by the victim, a statement as to whether an arrest occurred, the name of the arrested person, and a brief summary of the incident. Data that identify a victim who has made a request under section 13.82, subdivision 17, paragraph (d), and that are private data under that subdivision, shall be private in the report required by this section. A copy of this report must be provided upon request, at no cost, to the victim of domestic abuse, the victim's attorney, or organizations designated by the Office of Justice Programs in the Department of Public Safety that are providing services to victims of domestic abuse. The officer shall submit the report to the officer's supervisor or other person to whom the employer's rules or policies require reports of similar allegations of criminal activity to be made.

(b) As used in this subdivision:

(1) "qualified domestic violence-related offense" has the meaning given in section 609.02, subdivision 16; and

Article 7 Sec. 7.                    75

SF4760                REVISOR              VH                S4760-3                3rd Engrossment

(2) "family or household member" has the meaning given in section 518B.01, subdivision 2, paragraph (b).

Sec. 8. Minnesota Statutes 2024, section 629.72, subdivision 1a, is amended to read:

Subd. 1a. **Detention in lieu of citation; release.** (a) Notwithstanding any other law or rule, an arresting officer may not issue a citation in lieu of arrest and detention to an individual charged with harassing or stalking, domestic abuse, violation of an order for protection, or violation of a domestic abuse no contact order.

(b) Notwithstanding any other law or rule, an individual who is arrested on a charge of harassing or stalking any person, domestic abuse, violation of an order for protection, or violation of a domestic abuse no contact order, must be brought to the police station or county jail. An individual who is arrested on a charge of violation of an order for protection or violation of a domestic abuse no contact order is subject to the provisions of sections 518B.01, subdivision 14, paragraph (e), and 629.75, subdivision 3. The officer in charge of the police station or the county sheriff in charge of the jail shall issue a citation in lieu of continued detention for a charge of harassing or stalking any person or for domestic abuse unless it reasonably appears to the officer or sheriff that release of the person (1) poses a threat to the alleged victim or another family or household member, (2) poses a threat to public safety, or (3) involves a substantial likelihood the arrested person will fail to appear at subsequent proceedings. In determining if the person poses a threat to the alleged victim or another family or household member, the officer in charge of the police station or the county sheriff in charge of the jail must consider the person's history of domestic violence, including but not limited to:

(i) any previous arrest or conviction for harassing or stalking any person, domestic abuse, violation of an order for protection, or violation of a domestic abuse no contact order;

(ii) any order for protection, harassment restraining order, or domestic abuse no contact order in which the person was identified as the subject of the order; and

(iii) any pending petitions for an order for protection or a harassment restraining order in which the person is a respondent.

(c) If the arrested person is not issued a citation by the officer in charge of the police station or the county sheriff, the arrested person must be brought before the nearest available judge of the district court in the county in which the alleged harassing or stalking, domestic abuse, violation of an order for protection, or violation of a domestic abuse no contact order took place without unnecessary delay as provided by court rule.

Article 7 Sec. 8.                76

Sec. 9. Minnesota Statutes 2024, section 629.72, subdivision 2, is amended to read:

Subd. 2. **Judicial review; release; bail.** (a) The judge before whom the arrested person is brought shall review the facts surrounding the arrest and detention of a person arrested for domestic abuse, harassing or stalking, violation of an order for protection, or violation of a domestic abuse no contact order. The prosecutor or prosecutor's designee shall present relevant information involving the victim's or the victim's family's account of the alleged crime to the judge to be considered in determining the arrested person's release. If the person was arrested for violation of an order for protection or violation of a domestic abuse no contact order, the prosecutor or prosecutor's designee must describe the allegations in the underlying petition or criminal case. The prosecutor or prosecutor's designee may present information and bail recommendations in person or by filing it with the court through the appropriate electronic filing system. In making a decision concerning pretrial release conditions of a person arrested for domestic abuse, harassing or stalking, violation of an order for protection, or violation of a domestic abuse no contact order, the judge shall review the facts of the arrest and detention of the person and the relevant information presented or filed by the prosecutor or prosecutor's designee and determine whether: (1) release of the person poses a threat to the alleged victim, another family or household member, or public safety; or (2) there is a substantial likelihood the person will fail to appear at subsequent proceedings. Before releasing a person arrested for or charged with a crime of domestic abuse, harassing or stalking, violation of an order for protection, or violation of a domestic abuse no contact order, the judge shall make findings on the record, to the extent possible, concerning the determination made in accordance with the factors specified in clauses (1) and (2). The findings should describe whether the person:

(i) was previously arrested for, or convicted of, harassing or stalking any person, domestic abuse, violation of an order for protection, or violation of a domestic abuse no contact order;

(ii) has ever been the subject of an order for protection, harassment restraining order, or domestic abuse no contact order and, if so, the nature of the allegations or charges that gave rise to the order; and

(iii) is the respondent in any pending petition for an order for protection or harassment restraining order and, if so, the nature of the allegations in any petition.

(b) The judge may impose conditions of release or bail, or both, on the person to protect the alleged victim or other family or household members and to ensure the appearance of the person at subsequent proceedings. These conditions may include an order:

(1) enjoining the person from threatening to commit or committing acts of domestic abuse or harassing or stalking against the alleged victim or other family or household members or from violating an order for protection or a domestic abuse no contact order;

(2) prohibiting the person from harassing, annoying, telephoning, contacting, or otherwise communicating with the alleged victim, either directly or indirectly;

(3) directing the person to vacate or stay away from the home of the alleged victim and to stay away from any other location where the alleged victim is likely to be;

(4) prohibiting the person from possessing a firearm or other weapon specified by the court;

(5) prohibiting the person from possessing or consuming alcohol or controlled substances; and

(6) specifying any other matter required to protect the safety of the alleged victim and to ensure the appearance of the person at subsequent proceedings.

(c) If conditions of release are imposed, the judge shall issue a written order for conditional release. The court administrator shall immediately distribute a copy of the order for conditional release to the agency having custody of the arrested person and shall provide the agency having custody of the arrested person with any available information on the location of the victim in a manner that protects the victim's safety. Either the court or its designee or the agency having custody of the arrested person shall serve upon the defendant a copy of the order. Failure to serve the arrested person with a copy of the order for conditional release does not invalidate the conditions of release.

(d) If the judge imposes as a condition of release a requirement that the person have no contact with the alleged victim, the judge may also, on its own motion or that of the prosecutor or on request of the victim, issue an ex parte temporary restraining order under section 609.748, subdivision 4, or an ex parte temporary order for protection under section 518B.01, subdivision 7. Notwithstanding section 518B.01, subdivision 7, paragraph (b), or 609.748, subdivision 4, paragraph (c), the temporary order is effective until the defendant is convicted or acquitted, or the charge is dismissed, provided that upon request the defendant is entitled to a full hearing on the restraining order under section 609.748, subdivision 5, or on the order for protection under section 518B.01. The hearing must be held within seven days of the defendant's request.

Sec. 10. **REPEALER.**

Minnesota Statutes 2024, section 629.72, subdivision 3, is repealed.

Article 7 Sec. 10.                    78

# ARTICLE 8

## PREDICTION MARKETS

Section 1. Minnesota Statutes 2024, section 299L.03, subdivision 12, is amended to read:

Subd. 12. **Cease and desist orders.** (a) When it appears to the director that any person has engaged in or is about to engage in any act or practice constituting a violation of this chapter, ~~or~~ any rule or order issued under this chapter, or section 609.7615, the director may issue and cause to be served on the person an order requiring the person to cease and desist from the violations ~~of this chapter, or any rule or order issued under this chapter~~. The order must give reasonable notice of the rights of the person to request a hearing and must state the reason for the entry of the order. Unless otherwise agreed between the parties, a hearing must be held not later than seven days after receiving the request for a hearing. Within 20 days of receiving the administrative law judge's report and subsequent exceptions and argument, the director shall issue an order vacating the cease and desist order, modifying the order, or making it permanent, as the facts require. If no hearing is requested within 30 days of service of the order, the order becomes final and remains in effect until modified or vacated by the commissioner. All hearings under this subdivision must be conducted in accordance with sections 14.57 to 14.69 of the Administrative Procedure Act. If the person to whom a cease and desist order has been issued under this subdivision fails to appear at a hearing after being notified of the hearing, the person is deemed in default and the proceeding may be determined against the person on consideration of the cease and desist order, the allegations of which are deemed to be true.

(b) When it appears to the director that any person has engaged in or is about to engage in any act or practice constituting a violation of this chapter, ~~or~~ any rule adopted or subpoena or order issued under this chapter, or section 609.7615, the director may bring an action in the district court in the appropriate county to enjoin the acts or practices and to enforce compliance ~~with this chapter or any rule, subpoena, or order issued or adopted under this chapter~~, and may refer the matter to the attorney general. On a proper showing, the court shall grant a permanent or temporary injunction, restraining order, or writ of mandamus. The court may not require the director to post a bond.

Sec. 2. Minnesota Statutes 2024, section 609.75, subdivision 3, is amended to read:

Subd. 3. **What are not bets.** The following are not bets:

(1) a contract to insure, indemnify, guarantee or otherwise compensate another for a harm or loss sustained, even though the loss depends upon chance;

(2) a contract for the purchase or sale at a future date of securities or other commodities, except as provided in section 609.7615;

(3) offers of purses, prizes or premiums to the actual contestants in any bona fide contest for the determination of skill, speed, strength, endurance, or quality or to the bona fide owners of animals or other property entered in such a contest;

(4) the game of bingo when conducted in compliance with sections 349.11 to 349.23;

(5) a private social bet not part of or incidental to organized, commercialized, or systematic gambling;

(6) the operation of equipment or the conduct of a raffle under sections 349.11 to 349.22, by an organization licensed by the Gambling Control Board or an organization exempt from licensing under section 349.166;

(7) pari-mutuel betting on horse racing when the betting is conducted under chapter 240; and

(8) the purchase and sale of State Lottery tickets under chapter 349A.

**EFFECTIVE DATE.** This section is effective August 1, 2026.

Sec. 3. **[609.7615] PREDICTION MARKETS.**

Subdivision 1. **Definitions.** (a) As used in this section, the following terms have the meanings given.

(b) "Athletic event" means a sports game, match, or activity, or series of games, matches, activities, or tournaments involving the physical proficiency of one or more players or participants. Athletic event includes horse racing as defined in section 240.01, subdivision 8.

(c) "Esports event" means a competition between individuals or teams using video games in a game, match, contest, or series of games, matches, or contests or a tournament, or by a person or team against a specified measure of performance which is hosted at a physical location or online.

(d) "Game of skill" means a game, match, or tournament, or a series of games, matches, and tournaments involving the dexterity or mental skill of one or more players or participants. Game of skill includes an esports event.

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

(e) "Prediction market" means a system that allows consumers to place a wager on the future outcome of a specified event that is not determined or affected by the performance of the parties to the contract, including but not limited to:

(1) an athletic event or game of skill, or portions thereof or individual performance statistics therein;

(2) any game played with cards, dice, equipment, or any mechanical or electronic device or machine;

(3) war, state or national emergencies, natural or human-made disasters, mass shootings, acts of terrorism, or public health crises, or the ancillary effects thereof;

(4) any event or events happening to a natural person or group of people;

(5) a federal, state, or local election, or the actions or conduct of the federal, state, or local government and the government's agencies, employees, and officers;

(6) legal actions, including but not limited to a civil or criminal suit, grand jury action, jury trial, settlement, plea, or conviction;

(7) the death, assassination, or attempted killing of a person or group of persons, or mass casualty events;

(8) short-term weather events or conditions;

(9) events in popular culture, including but not limited to awards and the date a piece of entertainment will be released; and

(10) whether a person will make a particular statement.

(f) "Wager" means a contract, including a prediction market contract, whereby the parties to the contract agree to a gain or loss by one to the other of money, property, or benefit.

Subd. 2. **Prediction markets; hosting prohibited.** A person is guilty of a felony if the person, for consideration and as part of a business:

(1) creates a prediction market;

(2) operates, manages, or controls a platform or system intending that consumers will use the platform or system to make wagers in a prediction market;

(3) intentionally facilitates the operation of a prediction market by:

(i) identifying or listing events knowing the events will be used by consumers to make wagers;

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(ii) accepting, holding, or directing the disposition of money or other things of value for the purpose of allowing consumers to make wagers or to settle wagers made by consumers;

(iii) determining, administering, or enforcing the terms, pricing, or settlement of wagers made by consumers;

(iv) regularly or continuously acting as a counterparty to wagers made by consumers by entering into a wager, offering to enter into a wager, or taking a temporary position in a wager that may be replaced by a different consumer; or

(v) setting or adjusting the prices, odds, or terms that apply to wagers entered into by consumers;

(4) provides data, information, or verification services, including the provision of event outcomes, directly to a prediction market knowing that the data, information, or verification services will be used to allow consumers to make wagers or to settle wagers made by consumers in violation of this section; or

(5) provides supportive services to a prediction market or consumer knowing that the services will be used to identify a consumer's location, transfer money, or make or process payments for the purpose of allowing consumers to make wagers or to settle wagers made by consumers in violation of this section.

Subd. 3. **Prediction markets; advertising prohibited.** Whoever advertises or markets financial or technological products that promote transactions prohibited under this section is guilty of a felony.

Subd. 4. **Exceptions.** Subdivision 2 does not apply to:

(1) activities that are not bets under section 609.75, subdivision 3; and

(2) contracts authorized and regulated under chapters 59A to 79A.

**EFFECTIVE DATE.** This section is effective August 1, 2026, and applies to crimes committed on or after that date.

## ARTICLE 9

## CRIMINAL HISTORY

Section 1. Minnesota Statutes 2025 Supplement, section 299C.76, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) For the purposes of this section, the following definitions apply.

Article 9 Section 1.                    82

(b) "Federal tax information" means federal tax returns and return information or information derived or created from federal tax returns, in possession of or control by the requesting agency, that is covered by the safeguarding provisions of section 6103(p)(4) of the Internal Revenue Code.

(c) "IRS Publication 1075" means Internal Revenue Service Publication 1075 that provides guidance and requirements for the protection and confidentiality of federal tax information as required in section 6103(p)(4) of the Internal Revenue Code.

(d) "National criminal history record information" means the Federal Bureau of Investigation identification records as defined in Code of Federal Regulations, title 28, section 20.3(d).

(e) "Requesting agency" means the Department of Revenue; Department of Employment and Economic Development; Department of Human Services; Department of Children, Youth, and Families; board of directors of MNsure; Department of Information Technology Services; attorney general; Office of the Legislative Auditor; and counties.

Sec. 2. Minnesota Statutes 2024, section 364.03, subdivision 3, is amended to read:

Subd. 3. **Evidence of rehabilitation.** (a) A person who has been convicted of a crime or crimes which directly relate to the public employment sought or to the occupation for which a license is sought shall not may be disqualified from the employment or occupation if unless the person can show both:

(1) competent evidence of sufficient rehabilitation; and

(2) present fitness to perform the duties of the public employment sought or the occupation for which the license is sought.

(b) In determining whether the person has demonstrated both competent evidence of sufficient rehabilitation and present fitness to perform the relevant duties, the hiring or licensing authority may be established by the production of consider:

(1) the person's most recent certified copy of a United States Department of Defense form DD-214 showing the person's honorable discharge, or separation under honorable conditions, from the United States armed forces for military service rendered following conviction for any crime that would otherwise disqualify the person from the public employment sought or the occupation for which the license is sought, or:;

(1) (2) a copy of the local, state, or federal release order;, and

(2) evidence showing that at least one year has elapsed since release from any local, state, or federal correctional institution without subsequent conviction of a crime;, and evidence showing compliance with all terms and conditions of probation or parole; or

(3) a copy of the relevant Department of Corrections discharge order or other documents showing completion of probation or parole supervision.;

(b) In addition to the documentary evidence presented, the licensing or hiring authority shall consider any evidence presented by the applicant regarding:

(1) (4) evidence regarding the nature and seriousness of the crime or crimes for which the person was convicted;

(2) (5) all circumstances relative to the crime or crimes, including mitigating circumstances or social conditions surrounding the commission of the crime or crimes;

(3) (6) the age of the person at the time the crime or crimes were committed;

(4) (7) the length of time elapsed since the crime or crimes were committed; and

(5) (8) all other competent evidence of rehabilitation and present fitness presented, including, but not limited to, proof that the person has completed a treatment program and letters of reference by persons who have been in contact with the applicant since the applicant's release from any local, state, or federal correctional institution.

(c) The certified copy of a person's United States Department of Defense form DD-214 showing the person's honorable discharge or separation under honorable conditions from the United States armed forces ceases to qualify as competent evidence of sufficient rehabilitation for purposes of this section upon the person's conviction for any gross misdemeanor or felony committed by the person subsequent to the effective date of that honorable discharge or separation from military service.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 3. Minnesota Statutes 2024, section 364.05, is amended to read:

**364.05 NOTIFICATION UPON DENIAL OF EMPLOYMENT OR DISQUALIFICATION FROM OCCUPATION.**

If a hiring or licensing authority denies an individual a position of public employment or disqualifies the individual from pursuing, practicing, or engaging in any occupation for which a license is required, solely or in part because of the individual's prior conviction of a crime, the hiring or licensing authority shall notify the individual in writing of the following:

(1) the grounds and reasons for the denial or disqualification;

(2) the applicable complaint and grievance procedure as set forth in section 364.06;

(3) the earliest date on which the person may reapply for a position of public employment or a license with a hiring or licensing authority; and

(4) that the hiring or licensing authority will consider all competent evidence of rehabilitation presented will be considered upon reapplication.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

## ARTICLE 10

## PROTECTIONS FOR JUDICIAL OFFICIALS

Section 1. Minnesota Statutes 2025 Supplement, section 480.40, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) For purposes of this section and section 480.45, the following terms have the meanings given.

(b) "Judicial official" means:

(1) every Minnesota district court judge, senior judge, retired judge, and every judge of the Minnesota Court of Appeals and every active, senior, recalled, or retired federal judge who resides in Minnesota;

(2) a current or retired justice of the Minnesota Supreme Court;

(3) employees of the Minnesota judicial branch;

(4) judicial referees and magistrate judges; and

(5) current and retired judges and current employees of the Office of Administrative Hearings, Department of Employment and Economic Development Unemployment Insurance and Paid Leave Appeals Divisions, Department of Human Services Appeals Division, Workers' Compensation Court of Appeals, and Tax Court.

(c) "Personal information" does not include publicly available information. Personal information means:

(1) a residential address of a judicial official;

(2) a residential address of the spouse, domestic partner, or children of a judicial official;

(3) a nonjudicial branch issued telephone number or email address of a judicial official;

Article 10 Section 1.                    85

(4) the name of any child of a judicial official; and

(5) the name of any child care facility or school that is attended by a child of a judicial official if combined with an assertion that the named facility or school is attended by the child of a judicial official.

(d) "Publicly available information" means information that is lawfully made available through federal, state, or local government records or information that a business has a reasonable basis to believe is lawfully made available to the general public through widely distributed media, by a judicial official, or by a person to whom the judicial official has disclosed the information, unless the judicial official has restricted the information to a specific audience.

(e) "Law enforcement support organizations" do not include charitable organizations.

(f) "Real property records" has the meaning given in section 480.50, subdivision 1, paragraph (f).

Sec. 2. Minnesota Statutes 2025 Supplement, section 480.50, subdivision 1, is amended to read:

Subdivision 1. **Definitions.** (a) For the purposes of this section, the following terms have the meanings given.

(b) "County recorder" has the meaning given in section 13.045, subdivision 1, clause (4).

(c) "Government entity" has the meaning given in section 13.02, subdivision 7a.

(d) "Judicial official" has the meaning given in section 480.40, subdivision 1, paragraph (b), except that it does not include: (1) employees of the Minnesota judicial branch, the Office of Administrative Hearings, the Workers' Compensation Court of Appeals, or the Tax Court; ~~or~~ (2) judges or employees in the Department of Human Services Appeals Division; or (3) judges or employees in the Unemployment Insurance and Paid Leave Appeals Divisions.

(e) "Personal information" has the meaning given in section 480.40, subdivision 1, paragraph (c).

(f) "Real property records" means any of the following:

(1) real property records as defined in section 13.045, subdivision 1, clause (5);

Article 10 Sec. 2.                    86

(2) Uniform Commercial Code filings and tax liens maintained by the Secretary of State; and

(3) any other records maintained by a county recorder or other government entity evidencing title to, or any lien, judgment, or other encumbrance on, real or personal property.

(g) "Responsible authority" has the meaning given in section 13.02, subdivision 16.

# ARTICLE 11
# GRANT EXTENSIONS

Section 1. Laws 2023, chapter 52, article 2, section 3, subdivision 8, as amended by Laws 2023, chapter 69, section 12, Laws 2024, chapter 123, article 1, section 11, Laws 2024, chapter 123, article 9, section 3, and Laws 2025, chapter 35, article 2, section 24, is amended to read:

| Subd. 8. **Office of Justice Programs** | | | 94,758,000 | 80,434,000 |
|---|---|---|---|---|
| Appropriations by Fund | | | | |
| General | 94,662,000 | 80,338,000 | | |
| State Government Special Revenue | 96,000 | 96,000 | | |

(a) **Domestic and Sexual Violence Housing**

$1,500,000 each year is to establish a Domestic Violence Housing First grant program to provide resources for survivors of violence to access safe and stable housing and for staff to provide mobile advocacy and expertise in housing resources in their community and a Minnesota Domestic and Sexual Violence Transitional Housing program to develop and support medium to long term transitional housing for survivors of domestic and sexual violence with supportive services. The base for this appropriation is $1,000,000 beginning in fiscal year 2026.

(b) **Federal Victims of Crime Funding Gap**

$11,000,000 each year is to fund services for victims of domestic violence, sexual assault, child abuse, and other crimes. This is a onetime appropriation.

(c) **Office for Missing and Murdered Black Women and Girls**

$1,248,000 each year is to establish and maintain the Minnesota Office for Missing and Murdered Black Women and Girls.

(d) **Increased Staffing**

$667,000 the first year and $1,334,000 the second year are to increase staffing in the Office of Justice Programs for grant monitoring and compliance; provide training and technical assistance to grantees and potential grantees; conduct community outreach and engagement to improve the experiences and outcomes of applicants, grant recipients, and crime victims throughout Minnesota; expand the Minnesota Statistical Analysis Center; and increase staffing for the crime victim reimbursement program and the Crime Victim Justice Unit.

(e) **Office of Restorative Practices**

$500,000 each year is to establish and maintain the Office of Restorative Practices.

(f) **Crossover and Dual-Status Youth Model Grants**

$1,000,000 each year is to provide grants to local units of government to initiate or expand crossover youth practices model and dual-status youth programs that provide services for youth who are involved with or

Article 11 Section 1.        88

at risk of becoming involved with both the child welfare and juvenile justice systems, in accordance with the Robert F. Kennedy National Resource Center for Juvenile Justice model. This is a onetime appropriation. This appropriation is available until December 15, 2026.

(g) **Restorative Practices Initiatives Grants**

$4,000,000 each year is for grants to establish and support restorative practices initiatives pursuant to Minnesota Statutes, section 299A.95, subdivision 6, and for a restitution grant program under Minnesota Statutes, section 299A.955. This appropriation is available until June 30, 2026. The base for this appropriation is $2,500,000 beginning in fiscal year 2026.

(h) **Ramsey County Youth Treatment Homes Acquisition and Betterment**

$5,000,000 the first year is for a grant to Ramsey County to establish, with input from community stakeholders, including impacted youth and families, up to seven intensive trauma-informed therapeutic treatment homes in Ramsey County that are licensed by the Department of Human Services, that are culturally specific, that are community-based, and that can be secured. These residential spaces must provide intensive treatment and intentional healing for youth as ordered by the court as part of the disposition of a case in juvenile court. This appropriation is available through June 30, 2027.

(i) **Ramsey County Violence Prevention**

Article 11 Section 1.                    89

$5,000,000 the first year is for a grant to Ramsey County to award grants to develop new and further enhance existing community-based organizational support through violence prevention and community wellness grants. Grantees must use the money to create family support groups and resources to support families during the time a young person is placed out of home following a juvenile delinquency adjudication and support the family through the period of postplacement reentry; create community-based respite options for conflict or crisis de-escalation to prevent incarceration or further systems involvement for families; or establish additional meaningful employment opportunities for systems-involved youth. This appropriation is available through June 30, 2027.

(j) **Office for Missing and Murdered Indigenous Relatives**

$274,000 each year is for increased staff and operating costs of the Office for Missing and Murdered Indigenous Relatives, the Missing and Murdered Indigenous Relatives Advisory Board, and the Gaagige-Mikwendaagoziwag reward advisory group.

(k) **Youth Intervention Programs**

$3,525,000 the first year and $3,526,000 the second year are for youth intervention programs under Minnesota Statutes, section 299A.73. The base for this appropriation is $3,526,000 in fiscal year 2026 and $3,525,000 in fiscal year 2027.

(l) **Community Crime Intervention and Prevention Grants**

$750,000 each year is for community crime intervention and prevention program grants, authorized under Minnesota Statutes, section 299A.296. This is a onetime appropriation.

(m) **Resources for Victims of Crime**

$1,000,000 each year is for general crime victim grants to meet the needs of victims of crime not covered by domestic violence, sexual assault, or child abuse services. This is a onetime appropriation.

(n) **Prosecutor Training**

$100,000 each year is for a grant to the Minnesota County Attorneys Association to be used for prosecutorial and law enforcement training, including trial school training and train-the-trainer courses. All training funded with grant proceeds must contain blocks of instruction on racial disparities in the criminal justice system, collateral consequences to criminal convictions, and trauma-informed responses to victims. This is a onetime appropriation.

The Minnesota County Attorneys Association must report to the chairs and ranking minority members of the legislative committees with jurisdiction over public safety policy and finance on the training provided with grant proceeds, including a description of each training and the number of prosecutors and law enforcement officers who received training. The report is due by February 15, 2025. The report may include trainings

Article 11 Section 1.                    91

SF4760         REVISOR         VH         S4760-3         3rd Engrossment

scheduled to be completed after the date of submission with an estimate of expected participants.

(o) **Minnesota Heals**

$500,000 each year is for the Minnesota Heals grant program. This is a onetime appropriation.

(p) **Sexual Assault Exam Costs**

$3,967,000 the first year and $3,767,000 the second year are to reimburse qualified health care providers for the expenses associated with medical examinations administered to victims of criminal sexual conduct as required under Minnesota Statutes, section 609.35, and for costs to administer the program. The base for this appropriation is $3,771,000 in fiscal year 2026 and $3,776,000 in fiscal year 2027.

(q) **First Responder Mental Health Curriculum**

$75,000 each year is for a grant to the Adler graduate school. The grantee must use the grant to develop a curriculum for a 24-week certificate to train licensed therapists to understand the nuances, culture, and stressors of the work environments of first responders to allow those therapists to provide effective treatment to first responders in distress. The grantee must collaborate with first responders who are familiar with the psychological, cultural, and professional issues of their field to develop the curriculum and promote it upon completion.

The grantee may provide the program online.

Article 11 Section 1.                    92

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

The grantee must seek to recruit additional participants from outside the 11-county metropolitan area.

The grantee must create a resource directory to provide law enforcement agencies with names of counselors who complete the program and other resources to support law enforcement professionals with overall wellness. The grantee shall collaborate with the Department of Public Safety and law enforcement organizations to promote the directory. This is a onetime appropriation.

(r) **Pathways to Policing**

$400,000 each year is for reimbursement grants to state and local law enforcement agencies that operate pathway to policing programs. Applicants for reimbursement grants may receive up to 50 percent of the cost of compensating and training program participants. Reimbursement grants shall be proportionally allocated based on the number of grant applications approved by the commissioner. This is a onetime appropriation.

(s) **Direct Assistance to Crime Victim Survivors**

$5,000,000 each year is to provide grants for direct services and advocacy for victims of sexual assault, general crime, domestic violence, and child abuse. Funding must support the direct needs of organizations serving victims of crime by providing: direct client assistance to crime victims; competitive wages for direct service staff; hotel stays and other housing-related supports and services;

Article 11 Section 1.                              93

culturally responsive programming; prevention programming, including domestic abuse transformation and restorative justice programming; and for other needs of organizations and crime victim survivors. Services funded must include services for victims of crime in underserved communities most impacted by violence and reflect the ethnic, racial, economic, cultural, and geographic diversity of the state. The office shall prioritize culturally specific programs, or organizations led and staffed by persons of color that primarily serve communities of color, when allocating funds.

(t) **Racially Diverse Youth**

$250,000 each year is for grants to organizations to address racial disparity of youth using shelter services in the Rochester and St. Cloud regional areas. Of this amount, $125,000 each year is to address this issue in the Rochester area and $125,000 each year is to address this issue in the St. Cloud area. A grant recipient shall establish and operate a pilot program connected to shelter services to engage in community intervention outreach, mobile case management, family reunification, aftercare, and follow up when family members are released from shelter services. A pilot program must specifically address the high number of racially diverse youth that enter shelters in the regions. This is a onetime appropriation.

(u) **Violence Prevention Project Research Center**

Article 11 Section 1.                    94

SF4760             REVISOR             VH             S4760-3             3rd Engrossment

$500,000 each year is for a grant to the Violence Prevention Project Research Center, operating as a 501(c)(3) organization, for research focused on reducing violence in society that uses data and analysis to improve criminal justice-related policy and practice in Minnesota. Research must place an emphasis on issues related to deaths and injuries involving firearms. This is a onetime appropriation.

Beginning January 15, 2025, the Violence Prevention Project Research Center must submit an annual report to the chairs and ranking minority members of the legislative committees with jurisdiction over public safety policy and finance on its work and findings. The report must include a description of the data reviewed, an analysis of that data, and recommendations to improve criminal justice-related policy and practice in Minnesota with specific recommendations to address deaths and injuries involving firearms.

(v) **Report on Approaches to Address Illicit Drug Use in Minnesota**

$118,000 each year is to enter into an agreement with Rise Research LLC for a study and set of reports on illicit drug use in Minnesota describing current responses to that use, reviewing alternative approaches utilized in other jurisdictions, and making policy and funding recommendations for a holistic and effective response to illicit drug use and the illicit drug trade. The agreement must establish a budget and schedule with clear deliverables. This appropriation is onetime.

Article 11 Section 1.                    95

The study must include a review of current policies, practices, and funding; identification of alternative approaches utilized effectively in other jurisdictions; and policy and funding recommendations for a response to illicit drug use and the illicit drug trade that reduces and, where possible, prevents harm and expands individual and community health, safety, and autonomy. Recommendations must consider impacts on public safety, racial equity, accessibility of health and ancillary supportive social services, and the intersections between drug policy and mental health, housing and homelessness, overdose and infectious disease, child welfare, and employment.

Rise Research may subcontract and coordinate with other organizations or individuals to conduct research, provide analysis, and prepare the reports required by this section.

Rise Research shall submit reports to the chairs and ranking minority members of the legislative committees with jurisdiction over public safety finance and policy, human services finance and policy, health finance and policy, and judiciary finance and policy. Rise Research shall submit an initial report by February 15, 2024, and a final report by March 1, 2025.

(w) **Legal Representation for Children**

$150,000 each year is for a grant to an organization that provides legal representation for children in need of protection or services and children in out-of-home placement. The grant is contingent upon a match in an equal amount from nonstate funds. The match may

Article 11 Section 1.                          96

be in kind, including the value of volunteer attorney time, in cash, or a combination of the two. These appropriations are in addition to any other appropriations for the legal representation of children. This appropriation is onetime.

(x) **Pretrial Release Study and Report**

$250,000 each year are for a grant to the Minnesota Justice Research Center to study and report on pretrial release practices in Minnesota and other jurisdictions, including but not limited to the use of bail as a condition of pretrial release. This appropriation is onetime.

(y) **Intensive Comprehensive Peace Officer Education and Training Program**

$5,000,000 the first year is to implement the intensive comprehensive peace officer education and training program described in Minnesota Statutes, section 626.8516. This appropriation is available through June 30, 2027.

(z) **Youth Services Office**

$250,000 each year is to operate the Youth Services Office.

   **EFFECTIVE DATE.** This section is effective the day following final enactment.

   Sec. 2. Laws 2025, chapter 35, article 2, section 9, is amended to read:

Sec. 9. **OFFICE OF HIGHER EDUCATION**     $          250,000  $                    -0-

**Use of Force Training**

$250,000 the first year is to provide reimbursement grants to eligible postsecondary schools certified to provide

Article 11 Sec. 2.                    97

programs of professional peace officer education for providing in-service training programs on the use of force, including deadly force, by peace officers. Of this amount, up to 2.5 percent is for administration and monitoring of the program. This appropriation is available until June 30, 2027.

To be eligible for reimbursement, training offered by a postsecondary school must:

(1) satisfy the requirements of Minnesota Statutes, section 626.8452, and be approved by the Board of Peace Officer Standards and Training;

(2) utilize scenario-based training that simulates real-world situations and involves the use of real firearms that fire nonlethal ammunition;

(3) include a block of instruction on the physical and psychological effects of stress before, during, and after a high-risk or traumatic incident and the cumulative impact of stress on the health of officers;

(4) include blocks of instruction on de-escalation methods and tactics, bias motivation, unknown risk training, defensive tactics, and force-on-force training; and

(5) be offered to peace officers at no charge to the peace officer or law enforcement agency.

An eligible postsecondary school may apply for reimbursement for the costs of offering the training. Reimbursement shall be made at a rate of $450 for each officer who completes the training. The postsecondary school must

Article 11 Sec. 2.                    98

submit the name and peace officer license

number of the peace officer who received the

training to the Office of Higher Education.

As used in this section:

(1) "law enforcement agency" has the meaning

given in Minnesota Statutes, section 626.84,

subdivision 1, paragraph (f); and

(2) "peace officer" has the meaning given in

Minnesota Statutes, section 626.84,

subdivision 1, paragraph (c).

**EFFECTIVE DATE.** This section is effective the day following final enactment.

# ARTICLE 12
# FIRST RESPONDERS

Section 1. **[169.981] SALE OR TRANSFER OF LAW ENFORCEMENT VEHICLE.**

Subdivision 1. **Definition.** As used in this section, "law enforcement vehicle" means a vehicle owned or leased by a state or local law enforcement agency.

Subd. 2. **Prohibition.** (a) A person must not sell or transfer a law enforcement vehicle to the public unless the person first removes any equipment or insignia that could mislead a reasonable person to believe that the vehicle is a law enforcement vehicle, including any:

(1) emergency lights;

(2) sirens;

(3) amber warning lights;

(4) grill lights;

(5) emblems; or

(6) outlines of emblems.

(b) The requirements in paragraph (a) do not apply to a sale or transfer to the federal government, a state, or a political subdivision.

Subd. 3. **Certificate of compliance.** (a) Before consummating a sale or transfer of a law enforcement vehicle that is subject to subdivision 2, paragraph (a), the vehicle owner must

provide a certificate of compliance to the buyer or transferee confirming that the vehicle has had the law enforcement equipment and insignia removed.

(b) The commissioner of public safety must design a standard certificate of compliance form and make the form publicly available without fee on the department's publicly accessible website using existing appropriations.

Subd. 4. **Violations.** (a) A person who sells or transfers a law enforcement vehicle to the public in violation of this section is liable for:

(1) damages proximately caused by the use of that vehicle during the commission of a crime; and

(2) a civil penalty of $2,500.

(b) Civil penalties collected under this subdivision must be deposited in the Minnesota victims of crime account created in section 299A.708.

Subd. 5. **Enforcement.** A county or city attorney may bring an action to recover the civil penalty established under subdivision 4.

Subd. 6. **Exemption.** Sales or transfers of law enforcement vehicles to members of the public for the purpose of collection or display are exempt from the requirements of this section if the vehicle is owned and operated solely as a collector's item and not for general transportation purposes and is registered under section 168.10, subdivision 1a, 1b, 1c, 1d, 1g, or 1h.

**EFFECTIVE DATE.** This section is effective October 1, 2026.

Sec. 2. Minnesota Statutes 2024, section 299A.41, is amended by adding a subdivision to read:

Subd. 1a. **Carcinogen.** "Carcinogen" means an agent that is: (1) classified by the International Agency for Research on Cancer under Group 1 or Group 2A; and (2) reasonably linked to an exposure-related cancer.

Sec. 3. Minnesota Statutes 2024, section 299A.41, is amended by adding a subdivision to read:

Subd. 2a. **Exposure-related cancer.** "Exposure-related cancer" means only the following:

(1) bladder cancer;

(2) brain cancer;

Article 12 Sec. 3.        100

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(3) breast cancer;

(4) cervical cancer;

(5) colon cancer;

(6) colorectal cancer;

(7) esophageal cancer;

(8) kidney cancer;

(9) leukemia;

(10) lung cancer;

(11) malignant melanoma;

(12) mesothelioma;

(13) multiple myeloma;

(14) non-Hodgkin lymphoma;

(15) ovarian cancer;

(16) prostate cancer;

(17) skin cancer;

(18) stomach cancer;

(19) testicular cancer; and

(20) thyroid cancer.

Sec. 4. Minnesota Statutes 2024, section 299A.41, subdivision 3, is amended to read:

Subd. 3. **Killed in the line of duty.** (a) "Killed in the line of duty" does not include deaths from natural causes, except as expressly provided in this subdivision. In the case of a public safety officer, killed in the line of duty includes the death of a public safety officer caused by accidental means while the public safety officer is acting in the course and scope of duties as a public safety officer. Killed in the line of duty also means if a public safety officer dies as the direct and proximate result of a heart attack, stroke, or vascular rupture, that officer shall be presumed to have died as the direct and proximate result of a personal injury sustained in the line of duty if:

(1) that officer, while on duty:

Article 12 Sec. 4.                    101

SF4760          REVISOR          VH          S4760-3          3rd Engrossment

(i) engaged in a situation, and that engagement involved nonroutine stressful or strenuous physical activity in law enforcement, fire suppression, rescue, hazardous material response, emergency medical services, prison security, disaster relief, or other emergency response activity; or

(ii) participated in a training exercise, and that participation involved nonroutine stressful or strenuous physical activity;

(2) that officer died as a result of a heart attack, stroke, or vascular rupture suffered:

(i) while engaging or participating under clause (1);

(ii) while still on duty after engaging or participating under clause (1); or

(iii) not later than 24 hours after engaging or participating under clause (1); and

(3) the presumption is not overcome by competent medical evidence to the contrary.

(b) "Killed in the line of duty" also means that the officer includes a public safety officer who died due to suicide:

(1) secondary to a diagnosis of posttraumatic stress disorder as described in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association; or

(2) within 45 days of the end of exposure, while on duty, to a traumatic event.

(c) Killed in the line of duty also includes the death of a public safety officer as a result of complications caused by exposure sustained in the line of duty to any of the following infectious diseases, viruses, or bacteria, if medical records identify the disease, virus, or bacteria as a cause of or contributing factor to the death: COVID-19, influenza, hepatitis B, hepatitis C, tuberculosis, HIV/AIDS, meningitis, MRSA, whooping cough, or streptococcus pneumoniae.

(d) Killed in the line of duty also means a public safety officer shall be presumed to have been killed in the line of duty if the officer died from an exposure-related cancer that was a result of exposure to a carcinogen when:

(1) the exposure occurred while the public safety officer was acting in the course and scope of duties as a public safety officer;

(2) the public safety officer began serving as a public safety officer not less than five years before the date of the public safety officer's diagnosis of exposure-related cancer;

Article 12 Sec. 4.                    102

(3) the public safety officer was diagnosed with exposure-related cancer not more than 15 years after the public safety officer's last date of active service as a public safety officer; and

(4) the exposure-related cancer directly and proximately results in the death of the public safety officer.

(e) The presumption under paragraph (d) does not apply if competent medical evidence establishes that the exposure of the public safety officer to the carcinogen was not a substantial contributing factor in the death of the public safety officer.

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 5. Minnesota Statutes 2024, section 299A.41, is amended by adding a subdivision to read:

Subd. 3a. **Nonroutine strenuous physical activity.** "Nonroutine strenuous physical activity" means line of duty activity that:

(1) is not an action of a clerical, administrative, or nonmanual nature;

(2) is not performed as a matter of routine; and

(3) entails an unusually high level of physical exertion.

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 6. Minnesota Statutes 2024, section 299A.41, is amended by adding a subdivision to read:

Subd. 3b. **Nonroutine stressful or strenuous physical activity.** "Nonroutine stressful or strenuous physical activity" means nonroutine stressful physical activity or nonroutine strenuous physical activity.

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 7. Minnesota Statutes 2024, section 299A.41, is amended by adding a subdivision to read:

Subd. 3c. **Nonroutine stressful physical activity.** "Nonroutine stressful physical activity" means line of duty activity that:

(1) is not an action of a clerical, administrative, or nonmanual nature;

(2) is not performed as a matter of routine;

(3) entails nonnegligible physical exertion; and

(4) occurs:

(i) with respect to a situation in which a public safety officer is engaged under circumstances that objectively and reasonably:

(A) pose or appear to pose significant dangers, threats, or hazards, or reasonably foreseeable risks thereof, not faced by similarly situated members of the public in the ordinary course; and

(B) provoke, cause, or occasion an unusually high level of alarm, fear, or anxiety; or

(ii) with respect to a training exercise in which a public safety officer participates under circumstances that objectively and reasonably:

(A) simulate in realistic fashion situations that pose significant dangers, threats, or hazards; and

(B) provoke, cause, or occasion an unusually high level of alarm, fear, or anxiety.

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 8. Minnesota Statutes 2024, section 299A.41, subdivision 4, is amended to read:

Subd. 4. **Public safety officer.** "Public safety officer" includes:

(1) a peace officer defined in section 626.84, subdivision 1, paragraph (c) or (d);

(2) a correction officer employed at a correctional facility and charged with maintaining the safety, security, discipline, and custody of inmates at the facility;

(3) a corrections staff person working in a public agency and supervising offenders in the community as defined in sections 243.05, subdivision 6; 244.19, subdivision 1; and 401.01, subdivision 2;

(4) an individual employed on a full-time or part-time basis by the state or by a fire department of a governmental subdivision of the state, who is engaged in any of the following duties:

(i) firefighting;

(ii) emergency motor vehicle operation;

SF4760                REVISOR                VH                S4760-3                3rd Engrossment

(iii) investigation into the cause and origin of fires;

(iv) the provision of emergency medical services; or

(v) hazardous material responder;

(5) a legally enrolled member of a volunteer or paid on-call fire department or member of an independent nonprofit firefighting corporation who is engaged in the hazards of firefighting;

(6) a good samaritan while complying with the request or direction of a public safety officer to assist the officer;

(7) a reserve police officer or a reserve deputy sheriff while acting under the supervision and authority of a political subdivision;

(8) a driver or attendant with a licensed basic or advanced life-support transportation service who is engaged in providing emergency care;

(9) a first responder who is certified by the director of the Office of Emergency Medical Services to perform basic emergency skills before the arrival of a licensed ambulance service and who is a member of an organized service recognized by a local political subdivision to respond to medical emergencies to provide initial medical care before the arrival of an ambulance; and

(10) a person, other than a state trooper, employed by the commissioner of public safety and assigned to the State Patrol, whose primary employment duty is either Capitol security or the enforcement of commercial motor vehicle laws and regulations.; and

(11) a person formerly employed as a public safety officer under clauses (1) to (5) or (7) to (10) if the person separated from service due to a duty disability, as defined in section 353.01, subdivision 41.

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 9. **[299A.412] DETERMINING WHAT IS ROUTINE.**

Neither of the following is dispositive in determining whether an activity or action is understood to have been performed as a matter of routine under section 299A.41:

(1) being generally described by the public safety agency as routine or ordinary; or

(2) the frequency with which the activity or action may be performed.

Article 12 Sec. 9.                105

**EFFECTIVE DATE; APPLICATION.** This section is effective the day following final enactment and applies retroactively from February 1, 2020.

Sec. 10. **[299A.413] EXPOSURE-RELATED CANCER CLAIMS.**

(a) An individual may file a claim that is predicated upon a public safety officer's line of duty death that is the direct and proximate result of an exposure-related cancer if the death occurred on or after January 1, 2020.

(b) Notwithstanding any law to the contrary, a person eligible to file a claim for an exposure-related cancer line of duty death of a public safety officer that occurred after January 1, 2020, but before final enactment of this act, has three years from the date of final enactment of this act to file the claim.

Sec. 11. Minnesota Statutes 2024, section 299A.45, subdivision 2, is amended to read:

Subd. 2. **Award amount.** (a) The amount of the award is the lesser of:

(1) the average tuition and fees charged by the institution; or

(2) the tuition maximums established by law for the state grant program under section 136A.121. The tuition maximum for graduate study is the maximum established by law for the state grant program for four-year programs.

(b) An award under this subdivision must not affect a recipient's eligibility for a state grant under section 136A.121.

(c) For the purposes of this subdivision, "fees" include only those fees that are mandatory and charged to all students attending the institution.

(d) For the purpose of benefits awarded under this section, "full time" for a graduate program is eight or more credits per term or the equivalent.

(e) If there are insufficient funds appropriated for this purpose, the commissioner shall determine the award amounts for each eligible applicant from available resources.

Sec. 12. **TASK FORCE TO ESTABLISH A STATEWIDE NETWORK FUNDING FOR PUBLIC SAFETY RADIO COMMUNICATIONS INFRASTRUCTURE.**

Subdivision 1. **Establishment.** The Task Force to Establish a Statewide Network Funding for Public Safety Radio Communications Infrastructure is established to evaluate and make recommendations regarding transitioning the Allied Radio Matrix for Emergency Response

(ARMER) network and related interoperable communications to a statewide, state-funded framework.

Subd. 2. **Membership.** (a) The task force consists of the following members:

(1) one member of the house of representatives, appointed by the speaker of the house;

(2) one member of the house of representatives, appointed by the leader of the Democratic-Farmer-Labor caucus;

(3) one member of the senate, appointed by the senate majority leader;

(4) one member of the senate, appointed by the senate minority leader;

(5) two county commissioners appointed by the Association of Minnesota Counties;

(6) one member from a greater Minnesota county with ARMER expertise, appointed by the Association of Minnesota Counties;

(7) one member from a metro Minnesota county with ARMER expertise, appointed by the Association of Minnesota Counties;

(8) three members from the telecommunications industry representing wireless, cable, and telephone; appointed by the respective trade organizations;

(9) one representative from the city of Minneapolis, appointed by the Minneapolis City Council;

(10) one representative from the city of St. Cloud, appointed by the St. Cloud City Council;

(11) one peace officer, as defined in Minnesota Statutes, section 626.84, subdivision 1, paragraph (c), appointed by the Minnesota Sheriffs' Association;

(12) one peace officer, as defined in Minnesota Statutes, section 626.84, subdivision 1, paragraph (c), appointed by the Minnesota Chiefs of Police Association;

(13) the commissioner of public safety, or designee;

(14) the commissioner of transportation, or designee;

(15) a member from the Department of Transportation Office of Statewide Radio;

(16) the executive director of the Metropolitan Emergency Services Board;

(17) the executive director of the Statewide Emergency Communications Board;

(18) the Statewide Interoperability Coordinator (SWIC) for the State of Minnesota as designated by the commissioner of public safety; and

(19) a representative from the Minnesota State Fire Chiefs Association, appointed by the president of the association's board of directors.

(b) Appointments must be made by July 1, 2026. Appointments made by an agency or commissioner may also be made by a designee.

(c) Members of the task force serve without compensation.

(d) Members of the task force serve at the pleasure of the appointing authority or until the task force expires. Vacancies shall be filled by the appointing authority consistent with the qualifications of the vacating member required by this subdivision.

Subd. 3. **Officers; meetings.** (a) The commissioner of public safety shall convene the first meeting of the task force no later than August 1, 2026, and shall provide meeting space and administrative assistance as necessary for the task force to conduct its work.

(b) At its first meeting the task force must elect a chair from the members listed in subdivision 2, paragraph (a), clauses (5) to (18). The task force may elect a vice-chair and other officers as necessary.

(c) The task force shall meet at least monthly or upon the call of the chair. The task force shall meet sufficiently enough to accomplish the tasks identified in this section. Meetings of the task force are subject to Minnesota Statutes, chapter 13D. The task force may meet by telephone or interactive technology consistent with Minnesota Statutes, section 13D.015.

Subd. 4. **Duties.** (a) The task force must make findings and recommendations on:

(1) transitioning to a statewide, state-funded ARMER network infrastructure and achieving interoperability standards;

(2) a dedicated revenue source to ensure the statewide ARMER infrastructure and equipment is maintained, stable, and up-to-date. The task force is encouraged to evaluate: surcharges on telecommunications, public safety related fees, federal grants and matching funds, revenue from state asset forfeitures designated for public safety purposes, and other revenue sources deemed appropriate;

(3) the roles of Minnesota Department of Transportation Office of Statewide Radio, Department of Public Safety, and Statewide Emergency Communications Board;

(4) statewide performance metrics; and

(5) any other related issues necessary to ensure a sustainable, statewide public safety communications system.

(b) The Department of Public Safety, Department of Transportation, the Statewide Emergency Communications Board, regional emergency communications or services boards, and local ARMER infrastructure owners must provide relevant data and research to the task force to facilitate the task force's work.

Subd. 5. **Report.** The task force must submit a report to the chairs, cochairs, and ranking minority members of the legislative committees and divisions with jurisdiction over ARMER funding by February 15, 2027.

Subd. 6. **Expiration.** The task force expires the day after submitting its final report under subdivision 5.

Subd. 7. **Funding.** The commissioner of public safety may request funds through the Statewide Emergency Communications Board to support the work of the task force.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

## ARTICLE 13
## HUMAN RIGHTS

Section 1. Minnesota Statutes 2024, section 363A.29, subdivision 1, is amended to read:

Subdivision 1. **Conduct of hearings.** A determination issued by the commissioner may be heard as a contested case~~, except that~~. The report of the administrative law judge shall be binding on all parties to the proceeding and if appropriate shall be implemented by an order as provided for in subdivision 3. The party contesting the determination issued by the commissioner may file a request with the commissioner to appear at a hearing on the party's own behalf or through a private attorney. The commissioner shall decide within 30 days whether to forward the request for hearing to the ~~Office~~ Court of Administrative Hearings, which shall promptly set the matter for hearing. ~~The hearing shall be conducted at a place designated by the commissioner, within the county where the unfair discriminatory practice occurred or where the respondent resides or has a principal place of business.~~ The hearing shall be conducted in accordance with sections 14.57 to 14.62, and is subject to appeal in accordance with sections 14.63 to 14.68.

APPENDIX
Article locations for S4760-3

ARTICLE 1   PUBLIC SAFETY.................................................................................. Page.Ln 2.2

ARTICLE 2   IMPAIRED DRIVING; DRIVER'S LICENSES.................................... Page.Ln 28.1

ARTICLE 3   IDENTITY THEFT; FINANCIAL CRIMES........................................ Page.Ln 32.3

ARTICLE 4   CORRECTIONS.................................................................................. Page.Ln 38.9

ARTICLE 5   DEPARTMENT OF CORRECTIONS LICENSING............................ Page.Ln 44.6

ARTICLE 6   CRIMINAL LAW................................................................................ Page.Ln 63.24

ARTICLE 7   DOMESTIC VIOLENCE..................................................................... Page.Ln 67.5

ARTICLE 8   PREDICTION  MARKETS.................................................................. Page.Ln 79.1

ARTICLE 9   CRIMINAL  HISTORY....................................................................... Page.Ln 82.26

ARTICLE 10  PROTECTIONS FOR JUDICIAL OFFICIALS................................... Page.Ln 85.8

ARTICLE 11  GRANT EXTENSIONS........................................................................ Page.Ln 87.6

ARTICLE 12  FIRST RESPONDERS......................................................................... Page.Ln 99.12

ARTICLE 13  HUMAN RIGHTS............................................................................... Page.Ln 109.13

APPENDIX
Repealed Minnesota Statutes: S4760-3

### 169A.54 DWI CONVICTIONS, ADJUDICATIONS; ADMINISTRATIVE PENALTIES.

Subd. 6. **Applicability of implied consent revocation.** (a) Any person whose license has been revoked pursuant to section 169A.52 (license revocation for test failure or refusal) or 171.177 (revocation; pursuant to a search warrant) as the result of the same incident, and who does not have a qualified prior impaired driving incident, is subject to the mandatory revocation provisions of subdivision 1, clause (1) or (2), in lieu of the mandatory revocation provisions of section 169A.52 or 171.177.

(b) Paragraph (a) does not apply to:

(1) a person whose license has been revoked under subdivision 2 (driving while impaired by person under age 21); or

(2) a person whose driver's license has been revoked for, or who is charged with (i) an alcohol concentration of twice the legal limit or more as measured at the time or within two hours of the time of the offense; or (ii) a violation of section 169A.20 (driving while impaired) with an aggravating factor described in section 169A.03, subdivision 3, clause (3).

### 241.021 LICENSING AND SUPERVISION OF FACILITIES.

Subd. 1g. **Biennial assessment and audit of security practices; state correctional facilities.** (a) Beginning in 2022, the commissioner shall have the department's inspection unit conduct biennial security audits of each state correctional facility using the standards promulgated by the state correctional facilities security audit group. The unit must prepare a report for each assessment and audit and submit the report to the state correctional facilities security audit group within 30 days of completion of the audit.

(b) Corrections and detention confidential data, as defined in section 13.85, subdivision 3, and nonpublic security information, as defined in section 13.37, subdivision 1, that is contained in reports and records of the group maintain that classification, regardless of the data's classification in the hands of the person who provided the data, and are not subject to discovery or introduction into evidence in a civil or criminal action against the state arising out of the matters the group is reviewing. Information, documents, and records otherwise available from other sources are not immune from discovery or use in a civil or criminal action solely because they were acquired during the group's audit. This section does not limit a person who presented information to the group or who is a member of the group from testifying about matters within the person's knowledge. However, in a civil or criminal proceeding, a person may not be questioned about the person's good faith presentation of information to the group or opinions formed by the person as a result of the group's audits.

Subd. 1h. **State correctional facilities security audit group.** (a) Beginning in fiscal year 2022, the commissioner shall form a state correctional facilities security audit group. The group must consist of the following members:

(1) a Department of Corrections employee who is not assigned to the correctional institutions division, appointed by the commissioner;

(2) the ombudsperson for corrections or a designee;

(3) an elected sheriff or designee nominated by the Minnesota Sheriffs' Association and appointed by the commissioner;

(4) an individual with expertise in security related to infrastructure and operational logistics of correctional facilities who is not required to reside in Minnesota, appointed by the governor;

(5) the commissioner of health or a designee;

(6) the commissioner of administration or a designee;

(7) two senators, one appointed by the senate majority leader and one appointed by the minority leader; and

(8) two representatives, one appointed by the speaker of the house and one appointed by the minority leader of the house of representatives.

(b) The ombudsperson or a designee shall chair the group. The group shall establish security audit standards for state correctional facilities. In developing the standards, the group, or individual members of the group, may gather information from state correctional facilities and state correctional staff and inmates. The security audit group must periodically review the standards and modify them

1R

APPENDIX
Repealed Minnesota Statutes: S4760-3

as needed. The group must report the standards to the chairs and ranking minority members of the house of representatives and senate committees with jurisdiction over public safety policy and finance whenever the standards are updated.

(c) The group shall meet twice a year to review facility audit reports submitted to the group by the agency's inspection unit. Notwithstanding any law to the contrary, the group is entitled to review the full audit reports including nonpublic security information and corrections and detention confidential data. Within 60 days of meeting to review audit reports from the department's inspection unit, the group must make recommendations to the commissioner. Within 45 days of receiving the group's recommendations, the commissioner must reply in writing to the group's findings and recommendations. The commissioner's response must explain whether the agency will implement the group's recommendations, the timeline for implementation of the changes, and, if not, why the commissioner will not or cannot implement the group's recommendations.

(d) Beginning in 2023, the commissioner must include a written aggregate of the group's recommendations based on each security audit and assessment of a state correctional facility and the commissioner's responses to the recommendations in the biennial report required under section 241.016, subdivision 1. The commissioner shall not include corrections and detention confidential data, as defined in section 13.85, subdivision 3, and nonpublic security information, as defined in section 13.37, subdivision 1, in the commissioner's report to the legislature.

(e) The commissioner shall provide staffing and administrative support to the group.

(f) The state correctional facilities security audit group is not subject to chapter 13D.

(g) Except as otherwise provided in this paragraph, the terms, compensation, and removal of members of the group are governed by section 15.059. Members of the group serve without compensation but shall receive expense reimbursement. Notwithstanding section 15.059, subdivision 6, the group does not expire.

Subd. 2. **Facilities for delinquent children and youth; licenses; supervision.** Notwithstanding any provisions in sections 142B.05; 142B.10; 245A.03; 245A.04; and 256.01, subdivision 2, paragraph (a), clause (2), and chapter 245C to the contrary, but subject to the municipality notification requirements of subdivision 2a, the commissioner of corrections shall review all county, municipal, or other publicly established and operated facilities for the detention, care and training of delinquent children and youth at least once every biennium, and if such facility conforms to reasonable standards established by the commissioner or in the commissioner's judgment is making satisfactory progress toward substantial conformity therewith, and the commissioner is satisfied that the interests and well-being of children and youth received therein are protected, the commissioner shall grant a license to the county, municipality or agency thereof operating such facility. The commissioner may grant licensure up to two years. Each such facility shall cooperate with the commissioner to make available all facts regarding its operation and services as the commissioner requires to determine its conformance to standards and its competence to give the services needed and which it purports to give. Every such facility as herein described is subject to visitation and supervision by the commissioner and shall receive from the commissioner consultation as needed to strengthen services to the children and youth received therein.

Subd. 2a. **Affected municipality; notice.** The commissioner must not grant a license without giving 30 calendar days' written notice to any affected municipality or other political subdivision unless the facility has a licensed capacity of six or fewer persons and is occupied by either the licensee or the group foster home parents. The notification must be given before the license is first granted and annually after that time if annual notification is requested in writing by any affected municipality or other political subdivision. State funds must not be made available to or be spent by an agency or department of state, county, or municipal government for payment to a foster care facility licensed under subdivision 2 until the provisions of this subdivision have been complied with in full.

Subd. 2b. **Licensing; facilities; juveniles from outside state.** The commissioner may not:

(1) grant a license under this section to operate a correctional facility for the detention or confinement of juvenile offenders if the facility accepts juveniles who reside outside of Minnesota without an agreement with the entity placing the juvenile at the facility that obligates the entity to pay the educational expenses of the juvenile; or

(2) renew a license under this section to operate a correctional facility for the detention or confinement of juvenile offenders if the facility accepts juveniles who reside outside of Minnesota

APPENDIX
Repealed Minnesota Statutes: S4760-3

without an agreement with the entity placing the juvenile at the facility that obligates the entity to pay the educational expenses of the juvenile.

Subd. 3. **Revocation of license.** When after due notice and hearing the commissioner of corrections determines that any facility described in subdivision 2 does not substantially conform to the reasonable standards therein provided or is not making satisfactory progress toward substantial compliance therewith, the commissioner may, with the consent of the judge of the district court, issue an order revoking the license of that facility. After revocation of its license, that facility shall not be used for the care and training of delinquent children, or for their detention until its license is renewed.

Subd. 6. **Background studies.** (a) The commissioner of corrections is authorized to do background studies on personnel employed by any facility serving children or youth that is licensed under this section. The commissioner of corrections shall contract with the commissioner of human services to conduct background studies of individuals providing services in secure and nonsecure residential facilities and detention facilities who have direct contact, as defined under section 245C.02, subdivision 11, with persons served in the facilities. A disqualification of an individual in this section shall disqualify the individual as provided in chapter 245C.

(b) A clerk or administrator of any court, the Bureau of Criminal Apprehension, a prosecuting attorney, a county sheriff, or a chief of a local police department, shall assist in these studies by providing to the commissioner of human services, or the commissioner's representative, all criminal conviction data available from local, state, and national criminal history record repositories, including the criminal justice data communications network, pertaining to the following individuals: applicants, operators, all persons living in the household, and all staff of any facility subject to background studies under this subdivision.

(c) The Department of Human Services shall conduct the background studies required by paragraph (a) in compliance with the provisions of chapter 245C. For the purpose of this subdivision, the term "secure and nonsecure residential facility and detention facility" shall include programs licensed or certified under subdivision 2. The Department of Human Services shall provide necessary forms and instructions, shall conduct the necessary background studies of individuals, and shall provide notification of the results of the studies to the facilities, individuals, and the commissioner of corrections. Individuals shall be disqualified under the provisions of chapter 245C.

If an individual is disqualified, the Department of Human Services shall notify the facility and the individual and shall inform the individual of the right to request a reconsideration of the disqualification by submitting the request to the Department of Corrections.

(d) The commissioner of corrections shall review and decide reconsideration requests, including the granting of variances, in accordance with the procedures and criteria contained in chapter 245C. The commissioner's decision shall be provided to the individual and to the Department of Human Services. The commissioner's decision to grant or deny a reconsideration of disqualification is the final administrative agency action.

(e) Facilities described in paragraph (a) shall be responsible for cooperating with the departments in implementing the provisions of this subdivision. The responsibilities imposed on applicants and licensees under chapters 245A and 245C shall apply to these facilities.

**629.72 BAIL; DOMESTIC ABUSE; HARASSMENT; VIOLATION OF ORDER FOR PROTECTION; OR NO CONTACT ORDER.**

Subd. 3. **Release.** If the arrested person is not issued a citation by the officer in charge of the police station or the county sheriff pursuant to subdivision 1, and is not brought before a judge within the time limits prescribed by court rule, the arrested person shall be released by the arresting authorities, and a citation must be issued in lieu of continued detention.

3R