**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**UNITED STATES OF AMERICA and**
**COMMODITY FUTURES TRADING COMMISSION,**

Plaintiffs,

v.

**STATE OF MINNESOTA, et al.,**

Defendants.

Case No. 0:26-cv-02661-KMM-DTS

---

**KALSHIEX LLC,**

Plaintiff,

v.

**KEITH ELLISON, in his official capacity as**
**Attorney General of Minnesota, et al.,**

Defendants.

Case No. 0:26-cv-02778-KMM-DTS

---

**QCX LLC, doing business as POLYMARKET US,**

Plaintiff,

v.

**KEITH ELLISON, in his official capacity as**
**Attorney General of Minnesota, et al.,**

Defendants.

RECEIVED BY MAIL

AUG 0 5 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
AUG 0 5 2026
U.S. DISTRICT COURT MPLS

1

Case No. 0:26-cv-02841-KMM-DTS

---

## MOTION AND MEMORANDUM OF LAW OF BRANDON M. HAYES FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE

Brandon M. Hayes, President of the Natural Law Institute, respectfully moves for leave to file the accompanying brief as amicus curiae addressing the threshold transactional classification governing the parties' competing claims of federal exclusivity and state regulatory authority.

The proposed brief supports neither party's complete regulatory position. It offers the Court a distinct and administrable framework for determining whether a challenged transaction constitutes a federally cognizable event derivative or an outcome-contingent wager whose monetary exposure originates through the transaction itself.

In support of this motion, Mr. Hayes submits the following memorandum of law.

---

## MEMORANDUM OF LAW

### INTRODUCTION

These related proceedings present an important dispute concerning the boundary between federal regulation under the Commodity Exchange Act and Minnesota's historic authority over gambling, public welfare, and institutional integrity.

Plaintiffs contend that the Commodity Futures Trading Commission possesses exclusive jurisdiction over the challenged transactions. Minnesota maintains that transactions prohibited by its Prediction Market Statute constitute wagers subject to state regulation.

The proposed amicus brief addresses the antecedent question necessary to resolve those competing claims:

> Whether a transaction enters the federally occupied derivatives field because it transfers, offsets, prices, manages, or allocates an independently existing financial, economic, or commercial exposure, or whether it remains an outcome-contingent wager because the participant's entire monetary exposure originates through the purchase of the position itself.

The brief refers to this distinction as the **antecedent-exposure nexus**.

2

The proposed submission will assist the Court because it isolates a threshold classification question that logically precedes preemption, supplies a limiting principle derived from the statutory text, and offers a neutral rule capable of preserving both legitimate federal derivatives authority and lawful state authority over wagering outside the federally occupied field.

## BACKGROUND OF THE PROPOSED SUBMISSION

The parties have substantially developed the dispute concerning:

- the Commodity Exchange Act's definition of "swap";
- the CFTC's exclusive jurisdiction;
- the statutory treatment of event contracts;
- federal preemption;
- Minnesota's Prediction Market Statute; and
- the State's historic authority over wagering and public integrity.

The proposed brief does not repeat those positions.

Instead, it examines the originating financial relation underlying the challenged transaction.

A qualifying derivative ordinarily operates upon a financial, economic, or commercial exposure existing independently of the agreement. It transfers, offsets, prices, manages, or allocates that antecedent exposure.

An outcome-contingent wager operates differently. It creates the participant's monetary exposure through the agreement itself and redistributes money according to an independently occurring event.

The proposed brief explains that exchange registration, clearing, liquidity, changing prices, informational output, or the use of derivative terminology cannot independently establish the statutory derivation necessary to distinguish those transaction classes.

Classification therefore must precede jurisdiction.

## INTEREST OF THE PROPOSED AMICUS

Brandon M. Hayes is President of the Natural Law Institute, an independent institution devoted to the study and development of lawful adjudicative architecture, institutional classification,

public-interest resolution, and coherent relationships among individual rights, governmental authority, market structure, and public obligation.

Mr. Hayes submits the proposed brief in his personal capacity and identifies his institutional position to disclose the analytical perspective from which the submission is offered.

Neither Mr. Hayes nor the Natural Law Institute is a party to these proceedings. Mr. Hayes has no financial interest in KalshiEX LLC, QCX LLC, Polymarket US, any competing platform, or any transaction affected by the outcome of these cases.

Amicus supports neither party's complete regulatory position.

Amicus recognizes the federal interest in preserving a uniform national system governing transactions Congress placed within the Commodity Exchange Act. Amicus also recognizes the States' historic authority over gambling, public welfare, institutional integrity, and transactions falling outside the federally occupied field.

Amicus's interest arises from the structural question preceding those competing claims of authority: whether federal exclusivity may be determined before the Court identifies the legal character of the transaction asserted to trigger that exclusivity.

---

**ARGUMENT**

**I. THE COURT POSSESSES DISCRETION TO ACCEPT AN AMICUS SUBMISSION THAT WILL ASSIST ITS CONSIDERATION OF THE ISSUES**

Federal district courts possess inherent authority to permit participation by an amicus curiae where the proposed submission may assist the Court's consideration of the legal questions presented.

The traditional function of an amicus is to offer information, legal analysis, institutional perspective, or a framework not otherwise supplied by the parties. Leave is particularly appropriate where the proposed brief:

1. addresses an issue of public importance;
2. offers a distinct analytical perspective;
3. assists the Court without expanding the factual record through disputed evidence;
4. avoids unnecessary duplication; and
5. does not prejudice the parties or disrupt the orderly adjudication of the case.

The proposed submission satisfies each consideration.

It addresses the statutory boundary between federal derivatives regulation and state authority over wagering. It offers an original classification framework not dependent upon either party's complete theory. It relies upon legal analysis and the existing record. It does not seek party status, discovery, evidentiary rights, or relief personal to the proposed amicus.

## II. THE PROPOSED BRIEF WILL ASSIST THE COURT BY IDENTIFYING THE THRESHOLD QUESTION PRECEDING PREEMPTION

Preemption cannot be determined coherently until the challenged transaction is classified.

Federal exclusivity governs transactions Congress placed within the Commodity Exchange Act. Exchange registration does not independently establish that every instrument listed upon the exchange possesses the statutory character required to enter that field.

The Court must first determine:

- what the transaction is;
- what financial relation precedes it;
- what exposure it transfers or manages;
- whether that exposure exists independently of the agreement; and
- from what cognizable financial, economic, or commercial object the transaction's asserted derivative character is derived.

The proposed brief supplies a structured method for answering those questions.

Under the proposed framework:

1. A qualifying event derivative operates upon a financial, economic, or commercial exposure existing independently of the challenged agreement.
2. An outcome-contingent wager creates the participant's monetary exposure through the agreement itself.
3. Exchange registration, liquidity, clearing, changing prices, and informational output do not independently establish statutory derivation.
4. The transaction's classification must precede determination of which sovereign possesses authority over it.

This distinction gives the Court a principled means of preserving federal jurisdiction over legitimate derivatives without converting every monetized prediction concerning a worldly occurrence into a federally protected swap.

5

## III. THE PROPOSED BRIEF DEVELOPS A LIMITING PRINCIPLE PRESERVED FOR MERITS DETERMINATION

The Commodity Exchange Act's definition of "swap" includes certain agreements under which payment depends upon an event or contingency "associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii).

The phrase requires a meaningful limiting connection.

The proposed brief explains that the qualifying consequence must possess legal and economic existence apart from the monetary position created by the challenged agreement. Otherwise, the transaction could manufacture the statutory element necessary to establish its own classification.

The circular sequence would operate as follows:

1. the agreement creates the participant's financial exposure;
2. that self-created exposure supplies the asserted statutory financial consequence;
3. the resulting classification establishes exclusive federal jurisdiction; and
4. federal exclusivity forecloses examination of whether the original transaction entered the federal category lawfully.

The proposed brief identifies that sequence as **circular classification**.

The antecedent-exposure nexus prevents that result by requiring the asserted derivative to identify the preexisting financial, economic, or commercial exposure from which its derivative character arises.

## IV. THE PROPOSED BRIEF SUPPLIES A NEUTRAL AND ADMINISTRABLE TRANSACTION-SPECIFIC TEST

The proposed amicus does not contend that every event-linked agreement constitutes gambling or that every prediction-market product falls outside the Commodity Exchange Act.

Some event-linked instruments may possess a direct and cognizable relationship to antecedent financial, economic, or commercial exposure. Others may create the participant's entire monetary stake through the transaction itself.

The proposed framework asks:

1. whether the referenced event creates a cognizable financial, economic, or commercial consequence independently of the agreement;

6

2.  whether the participant bears an existing financial, commercial, proprietary, operational, or contractual interest affected by that consequence;

3.  whether the agreement transfers, offsets, prices, manages, or allocates that antecedent exposure;

4.  whether the participant could suffer economic loss apart from purchasing the agreement;

5.  whether the agreement instead creates a new monetary stake in an independently occurring event; and

6.  whether the asserted derivative character depends upon treating the transaction's self-created monetary exposure as the statutory consequence necessary to validate the transaction.

The resulting test gives operative meaning to the statutory phrase "associated with a potential financial, economic, or commercial consequence."

It preserves federal authority over qualifying event derivatives while preserving state authority over outcome-contingent wagering falling outside the federal field.

## V. THE PROPOSED BRIEF ADDRESSES PUBLIC-INTEGRITY CONSEQUENCES RELEVANT TO CLASSIFICATION

The proposed submission also addresses the structural consequences of markets that financially reward participants according to independently occurring public outcomes.

A participant may possess:

- information concerning the event;
- access to persons controlling the event;
- authority affecting the event;
- influence over public perception;
- the ability to alter the event directly; or
- the practical means to coordinate activity bearing upon the outcome.

As the value of the purchased position rises, the participant's incentive may shift from predicting the event to influencing it.

That structural convergence among observer, trader, insider, and influencer bears upon the legal character of the transaction. A market claiming informational legitimacy cannot be evaluated as a neutral measure of probability where participants may profit by causing their purchased outcome to occur.

Prices may reflect collective expectations. They may also reflect:

- undisclosed control;
- insider access;
- planned intervention;
- strategic misinformation;
- coordinated activity;
- settlement manipulation; or
- confidence that another person will alter the event.

The proposed brief explains why those characteristics are especially relevant where contracts concern elections, government decisions, legal proceedings, public statements, war, terrorism, public-health crises, disasters, death, sporting events, or other matters involving natural persons and public institutions.

This analysis bears directly upon Congress's treatment of gaming and other sensitive event contracts, the proper construction of the Commodity Exchange Act, and the boundary between federal market regulation and state police authority.

## VI. THE PROPOSED SUBMISSION WILL NOT PREJUDICE THE PARTIES

The proposed brief does not introduce private evidence, seek expansion of the record through disputed factual material, or request relief personal to the proposed amicus.

It addresses:

- statutory interpretation;
- transactional classification;
- federalism;
- market structure;
- public integrity; and
- the institutional consequences of the competing constructions.

The parties remain free to answer the amicus analysis in their authorized merits submissions or according to any schedule the Court establishes.

Granting leave will therefore expand the legal architecture available to the Court without altering any party's claims, defenses, evidentiary rights, discovery rights, or procedural posture.

## VII. THE RELATED NATURE OF THE CASES SUPPORTS CONSISTENT CONSIDERATION OF THE PROPOSED BRIEF

8

The three proceedings involve overlapping questions concerning the Commodity Exchange Act, prediction-market contracts, federal exclusivity, Minnesota's statute, and the proper classification of event-linked transactions.

The proposed brief addresses the shared threshold question rather than factual or procedural matters unique to one plaintiff.

Entry of the brief in all three related proceedings, or in the lead proceeding with cross-reference in the remaining matters, would promote consistent adjudication and avoid duplicative submissions.

Amicus therefore requests that the Court direct the appropriate docketing treatment.

---

## AUTHORSHIP AND FINANCIAL DISCLOSURE

No party or party's counsel authored the proposed brief in whole or in part.

No party, party's counsel, or person other than Mr. Hayes contributed money intended to fund the preparation or submission of the proposed brief.

Mr. Hayes has no parent corporation, and no publicly held corporation owns any interest in the proposed amicus submission.

---

## MEET-AND-CONFER STATEMENT

Pursuant to Local Rule 7.1(a), Mr. Hayes transmitted the proposed amicus materials to counsel for the parties on **July 28, 2026**, and requested that each represented alignment state whether it consents to, opposes, or takes no position on the requested leave.

As of the filing of this motion, no party has responded to the conferral request or stated a position regarding the requested leave.

Mr. Hayes has made a good-faith effort to confer with counsel concerning the proposed filing and will accurately report any later responses if directed by the Court.

---

## CONCLUSION

9

The proposed brief presents a distinct threshold framework capable of assisting the Court's final determination of the statutory and jurisdictional boundary presented in these related proceedings.

The submission supports neither party's complete regulatory position. It supplies a limiting principle that preserves federal authority over qualifying event derivatives, preserves state authority over outcome-contingent wagering outside the federal field, and prevents the statutory category of "swap" from becoming self-generating.

Mr. Hayes therefore respectfully requests that the Court:

1. grant him leave to appear for the limited purpose of filing the proposed brief as amicus curiae;
2. direct the Clerk to accept the accompanying **Brief of Brandon M. Hayes, President of the Natural Law Institute, as Amicus Curiae Addressing the Threshold Transactional Classification Governing Federal Preemption**;
3. direct whether the motion and brief should be filed in each related case or entered in one case and cross-referenced in the others;
4. permit the parties to respond through their otherwise authorized merits submissions or according to any schedule established by the Court; and
5. grant such further procedural relief as will facilitate consideration of the proposed brief.

Respectfully submitted,

**BRANDON M. HAYES**
President, Natural Law Institute
Proposed Amicus Curiae, Pro Se
159 Indian Hill St.
West Newbury, Massachusetts 01985
617-438-2049
NLIstaff@naturallawinstitute.org

Dated: August 3, 2026

Brandon M. Hayes